1  MARK W. POE (BAR NO. 223714)
    mpoe@gawpoe.com
2  VICTOR MENG (BAR NO. 254102)
    vmeng@gawpoe.com
3  FLORA VIGO (BAR NO. 239643)
4   fvigo@gawpoe.com
   GAW | POE LLP
5  4 Embarcadero, Suite 1400
   San Francisco, CA  94111
6  Telephone:   415-766-7451

7

8  Attorneys for Plaintiffs
   MARCELO MUTO and NOAH BREEZE
9

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14 MARCELO MUTO, NOAH BREEZE,        Case No.: 5:22-cv-02164-SSS-KK
   and all others similarly situated,
15                                    SECOND AMENDED CLASS
                Plaintiffs,           ACTION COMPLAINT
16
        v.                            Judge:    Hon. Sunshine Suzanne
17                                              Sykes
   FENIX INTERNATIONAL LIMITED;
18 FENIX INTERNET LLC,

19              Defendants.

**JURISDICTION**

1. This Court's jurisdiction over this matter was correctly set forth in the notice of removal filed by Defendants on December 5, 2022. As explained therein, jurisdiction lies under 28 U.S.C. §§ 1332(d), 1441, and 1446.

**INTRODUCTION**

~~1.~~2. Pursuant to ~~California Code of Civil Procedure section 472(1)~~Federal Rule of Civil Procedure 15(a)(2) and California Civil Code § 1782(d), Plaintiffs Marcelo Muto and Noah Breeze hereby amend~~s~~ the class action complaint ~~he initially filed in this action on October 10, 2022~~that was removed to this Court on December 5, 2022.

~~2.~~3. California's Automatic Renewal Law (the "ARL") requires that when a business enrolls a California consumer in a service that automatically renews at the end of an initial enrollment period, the business must disclose the terms of that automatic renewal "in a clear and conspicuous manner" before the initial subscription is consummated, and thereafter send the user an acknowledgment further describing the auto-renewal terms and providing information as to how the user can readily cancel before incurring an auto-renewal charge.

~~3.~~4. Defendants own and operate the popular sexual content platform "OnlyFans," through which consumers can "subscribe" to the OnlyFans accounts of one or more among thousands of different performers, known as "content creators." Consumer subscriptions are the cornerstone of Defendants' revenue model. Yet in violation of California's ARL, by failing to clearly and conspicuously advise its customers that their initial subscription to a creator will be automatically renewed, OnlyFans tricks its customers into making recurring payments, triggering a charge to the customer's debit or credit card ranging from $4.99 to $49.99 for the following month.

~~4.~~5. Plaintiffs Marcelo Muto and Noah Breeze brings~~ this action to obtain injunctive and monetary relief for ~~himself~~ themselves and all other similarly situated OnlyFans customers in California, who entered an automatic renewal plan without receiving the pre- and post-subscription disclosures that are required by California law.

**PARTIES**

6. Plaintiff Marcelo Muto is a resident of Riverside County, California.

~~5.~~7. Plaintiff Noah Breeze is a resident of Los Angeles County, California.

~~6.~~8. Defendant Fenix International Limited ("FIL") is, on information and belief, a business entity incorporated under the laws of the United Kingdom, with its principal place of business in London. FIL is the counterparty to the Terms of Service that customers of OnlyFans.com enter when they become members of the site, and thus does business throughout the United States, including with hundreds or thousands of residents of Riverside County. On information and belief, FIL is the business entity that receives some or all of the automatic renewal fees that are paid by OnlyFans customers and that are the subject of this complaint.

~~7.~~9. Defendant Fenix Internet LLC is a Delaware limited liability company that is headquartered in Florida. On information and belief, Fenix Internet LLC is a wholly owned subsidiary of FIL, and is the company through which OnlyFan's content creators receive payment. Accordingly, Fenix Internet LLC is, or has been, continuously in possession of money wrongfully taken from Plaintiff and the class he seeks to represent, and which is to be restored to those consumers by virtue of this lawsuit.

**VENUE**

~~8.~~10. Venue is proper in this jurisdiction because Plaintiffs reside~~s~~ in Riverside and Los Angeles counties, ~~County~~ and entered into the transactions at issue in this case in ~~Riverside County~~this District.

**APPLICABLE LAW**

~~9.~~11. In 2009, the California Legislature passed Senate Bill 340, which took effect on December l, 2010 as Business & Professions Code section 17600 *et seq.*, commonly known as the Automatic Renewal Law or "ARL." The ARL was passed because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly

request or know they were agreeing to. Consumers report they believed they were making a one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to.

10.12. The Assembly Committee on the Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal.

11.13. The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a. Fail to present the automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card as part of the automatic renewal plan or arrangement, (4) the length of the automatic renewal term or that the service is continuous; and (5) the

1  minimum purchase obligation, if any.
2      b. Charge the consumer's credit or debit card for an automatic renewal or
3  continuous service without first obtaining the consumer's affirmative consent to the
4  agreement containing the automatic renewal offer terms, including the terms of an
5  automatic renewal offer or continuous service offer that is made at a promotional or
6  discounted price for a limited period of time.
7      c. Fail to provide an acknowledgment that includes the automatic renewal
8  terms, cancellation policy, and information regarding how to cancel in a manner that is
9  capable of being retained by the consumer.  Section 17602(b) requires that the
10 acknowledgment specified in § 17602(a)(3) include a toll-free telephone number,
11 electronic mail address, or another "cost-effective, timely, and easy-to-use" mechanism
12 for cancellation.
13     ~~12.~~14. If a business sends any goods, wares, merchandise, or products to a
14 consumer under a purported automatic renewal or continuous service arrangement without
15 first obtaining the consumer's affirmative consent to an agreement containing the "clear
16 and conspicuous" disclosures as specified in the ARL, the goods, wares, merchandise,
17 and/or products are deemed to be an unconditional gift to the consumer, who may use or
18 dispose of them without any obligation whatsoever.  While the ARL does not include a
19 private right of action, a violation nevertheless gives rise to restitution and injunctive
20 relief under the False Advertising Law and Unfair Competition Law.

### FACTUAL ALLEGATIONS

22     ~~13.~~15. Every subscription to a creator's content on OnlyFans violates the ARL in
23 numerous ways, but primarily by:
24         (1) failing to "present the automatic renewal offer terms . . . in a clear and
25         conspicuous manner" before payment is made, in violation of section
26         17602(a)(1);
27         (2) charging the consumer's credit or debit card "without first obtaining the
28         consumer's affirmative consent to the agreement containing the automatic

- 4 -

|   |   |
|---|---|
| 1 | renewal offer terms" in violation of section 17602(a)(2); and |
| 2 | (3) failing to "provide an acknowledgment that includes the automatic |
| 3 | renewal offer terms . . . cancellation policy, and information regarding how |
| 4 | to cancel" in violation of section 17602(a)(3). |
| 5 | ~~14.~~16. The foregoing violations are all made obvious through an illustration of an |
| 6 | exemplary enrollment to the OnlyFans account of the popular Kardashian-adjacent |
| 7 | celebrity and OnlyFans content creator known as "Blac Chyna," who is reported to have |
| 8 | been the top-earning creator on OnlyFans for 2021, generating revenue for Defendants of |
| 9 | $20 million per month. |
| 10 | ~~15.~~17. A user joins OnlyFans by navigating to OnlyFans.com and clicking a |
| 11 | hyperlink titled "Sign up for OnlyFans." The user then creates an account by choosing a |
| 12 | user name, and inputting their email address and choosing a password. After receiving an |
| 13 | email at that address to "verify your email address," the user is taken to a "Home" screen |
| 14 | with a menu on the left, a middle section with a selection of "posts" made by users and |
| 15 | creators, a search tool for finding creators, and a list of "suggestions" on the right, |
| 16 | highlighting certain content creators whose profiles the user can scroll through. |

1    16.18. When a user searches and then navigates to the profile page for Blac Chyna,
2    for example, they are presented with the following screen:



17    17.19. Upon clicking the "SUBSCRIBE" button, the user is advised of certain
18   "benefits" from the subscription and is asked to add a payment card:

1  18.20. The user then inputs their credit card information, and receives an on-screen confirmation that "You will be charged $19.99," with no suggestion that the charge will be recurring:

19.21. After clicking the "PAY" link on that screen the user is returned to the creator's profile page, where a box in the middle of the page notes that the user is "SUBSCRIBED" in bold blue font, and with only a one-word indication (in smaller, lower-case, light gray font) that the subscription "Renews," and with the renewal date indicated in similarly small, light-gray font:



20.22. As shown, the creator's profile page does not include any indication as to how one can "unsubscribe," or otherwise cancel future monthly payments.

21.23. Upon making payment, the user will sometimes receive a confirmation email at the address they used in the sign-up process. That bare-bones confirmation email does not provide any information or reminder that the charge will be recurring or automatically renew, nor does it provide any information as to how the user can "unsubscribe," Defendants' cancellation policy, or any of the other information required by section 17602(a)(3):



22.24. In other circumstances, the details of which are unknown to Plaintiffs prior to taking discovery in this matter, the user receives no acknowledgement whatsoever after making payment, as exemplified by the instance where one pays $6.99 to follow the creator known as @annie_kay.

23.25. Furthermore, nowhere in the foregoing enrollment process to a particular creator's account do Defendants "first obtain[ ] the consumer's affirmative consent to the agreement containing the automatic renewal offer terms," which is in further violation of section 17602(a)(2). In particular, on the webpage in the sign-up process where a user selects a username and inputs his or her email address and selects a password, Defendants include (in light grey and light blue, extremely small text) a notification that "By signing

1  up you agree to our Terms of Service and Privacy Policy," with hyperlinks to those
2  documents, as seen in the following screenshot:



15  ~~24.~~26. Clicking on the "Terms of Service" link takes a user to a separate webpage
16  that consists of a 36-page set of "terms." Nowhere in that document are the terms of
17  Defendants' automatic renewal offer set forth clearly and conspicuously either, in further
18  violation of ARL section 17602. Rather, the automatic renewal explanation is buried in
19  section 8.h of that document, on its fifteenth page, where it is presented in a way that is
20  indistinguishable from any other term in the agreement.
21  ~~25.~~27. All of these violations of the ARL occur systematically, in that each user
22  who subscribes to each content creator's account receives the exact same legally
23  inadequate disclosures on the front end of the transaction, and the exact same inadequate
24  "acknowledgement" (or lack of any acknowledgement whatsoever) on the back end of the
25  transaction.
26  ~~26.~~28. Plaintiff Marcelo Muto was subject to this same pattern of violation of the
27  ARL when he subscribed to follow the account of an OnlyFans creator called
28  "@taste.of.heaven" in February 2021. Mr. Muto paid the initial subscription fee to that

- 9 -

account, and in doing so failed to receive an adequate set of disclosures at the time of that transaction to clearly and conspicuously advise him that his card would be automatically billed upon expiration of his initial enrollment period. Similarly, upon information and belief Mr. Muto did not receive any post-transaction acknowledgement advising him of the matters set forth in section 17602(a)(3), but if he did, that acknowledgement would have consisted of nothing beyond the Blac Chyna confirmation email excerpted above.

27. 29. Mr. Muto was thereafter charged a $29.99 automatic renewal fee on or about March 14, 2021. Only when Mr. Muto thereupon contacted Defendants to complain about the charge—advising that "I was charged 30 dollars unintentionally"—did Defendants respond through a customer service representative called "Evans" with the explanation:

> Hi there,
>
> Thanks for reaching out.
>
> The auto-renewal for the subscription to @taste.of.heaven was not disabled before the next billing date. The auto-renew feature was enabled from the start, I am sorry you did not notice this at first.
>
> You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and make sure that Auto-Renew for your subscription is disabled: https://onlyfans.com/my/subscriptions/
>
> If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date - it means that Auto-Renew is already disabled.
>
> Users can unsubscribe anytime, but there are no refunds as all subscriptions are final and non-refundable. Please see more details at this page: https://onlyfans.com/terms
>
> Feel free to let us know if we can help you with anything else in the future.
>
> Evans

30. In other words, Defendants fully acknowledged the likelihood that Mr. Muto "did not notice this at first," (*i.e.*, that "[t]he auto-renew feature was enabled"), but

1  nevertheless advised that "there are no refunds as all subscriptions are final."  Had Mr.
2  Muto received the clear and conspicuous disclosures required by the ARL at the time he
3  initially subscribed to @taste.of.heaven, and the post-subscription acknowledgment
4  required by section 17602(a)(3) with details on the auto-renewal offer and a readily
5  accessible means of canceling, he would have canceled his subscription prior to the
6  renewal date, and would not have lost $29.99 to Defendants.

      31.    Plaintiff Noah Breeze was subject to this same pattern of violation of the ARL when he subscribed to follow the account of an OnlyFans creator called "@cheriedeville."  Mr. Breeze paid the initial subscription fee to that account, and in doing so failed to receive an adequate set of disclosures at the time of that transaction to clearly and conspicuously advise him that his card would be automatically billed upon expiration of his initial enrollment period.  Similarly, upon information and belief Mr. Muto did not receive any post-transaction acknowledgement advising him of the matters set forth in section 17602(a)(3), but if he did, that acknowledgement would have consisted of nothing beyond the Blac Chyna confirmation email excerpted above.

      32.    Mr. Muto was thereafter charged a $14.99 automatic renewal fee on or about January 24, 2022.  Only when Mr. Muto thereupon contacted Defendants to complain about the charge—advising that "I have no active subscriptions and just saw this on my credit card statement"—did Defendants respond through a customer service representative called "Dwayne" with the explanation:

> Hi there,
>
> Thank you for using OnlyFans.
>
> According to our system, your account associated with the email address noahbreeze@gmail.com was charged $14.99 on Jan 24, 2022 for the subscription renewal to the user @cheriedeville. The auto-renew feature is enabled by default. You have been notified about upcoming renewals via feed hints.
>
> You may cancel your subscription at any time, which will allow you to access the user's profile until the end of the existing billing period, where you will lose access to the content and will not be re-billed. Navigate to this page and

- 11 -

make sure that Auto-Renew for your subscription is disabled: https://onlyfans.com/my/subscriptions/active

If you see a Subscribed button and the renewal date for the corresponding subscription - it is set for Auto-Renew. And if you see the Renew button and the expiration date- it means that Auto-Renew is already disabled.  Simply click on the corresponding button to change the Auto-Renew status.

Users can disable their subscriptions anytime, but all payments on our platform are final and non-refundable. Please see more details on this page: https://onlyfans.com/terms.

Check out some useful info here and feel free to let us know anytime you need help.

Dwayne

OnlyFans

28.33. In other words, Defendants fully acknowledged that "[t]he auto-renew feature is enabled by default," and that the primary notice of such a renewal that Mr. Breeze received were "hints" he supposedly received in his "feed."  As with Mr. Muto, Defendants advised Mr. Breeze that "all payments on our platform are final and non-refundable."  Had Mr. Breeze received the clear and conspicuous disclosures required by the ARL at the time he initially subscribed to @cheriedeville, and the post-subscription acknowledgment required by section 17602(a)(3) with details on the auto-renewal offer and a readily accessible means of canceling, he would have canceled his subscription prior to the renewal date, and would not have lost $14.99 to Defendants.  Mr. Breeze believes that he paid additional automatic renewal fees for subscriptions to other creators, but at this time has not been able to identify them.

**CLASS ALLEGATIONS**

29.34. Mr. Muto's and Mr. Breeze's experiences with Defendants' deceptive automatic renewal scheme is are far from unique.  Indeed, every California consumer who subscribed to every creator account within the relevant statute of limitations period failed to receive the disclosures that California law requires in exactly the same way that Mr. Muto and Mr. Breeze failed to receive them.  Because all of those automatic renewal fees assessed against California consumers were "unlawful," B&P Code § 17602(a), Mr.

Muto, Mr. Breeze, and all members of the class ~~he~~ they seek~~s~~ to represent are entitled to restitution of the fees they paid, in every successive month for which they were assessed.

~~30.~~35. Mr. Muto and Mr. Breeze bring~~s~~ this lawsuit as a class action under Code of Civil Procedure § 382 on behalf of the following Class:

> All individuals in California who subscribed to the accounts of one or more OnlyFans creators in the four years preceding the filing of this complaint, and who were subsequently assessed an automatic renewal fee associated with those account(s), where the charge for that fee was not charged back to Defendants. Excluded from the Class are all employees of Defendants, and the judicial officers to whom this case is assigned.

Plaintiff~~s~~ reserve~~s~~ the right to amend this class definition as necessary and appropriate prior to moving for class certification.

~~31.~~36. The proposed class is so numerous that joinder of all class members would be impracticable. Upon information and belief, Plaintiffs ~~Mr. Muto~~ allege~~s~~ that the class includes at least 10,000 members. The class members are all ascertainable from records in possession of Defendants, specifically Defendants' customer and billing records. Furthermore, Defendants' actions against class members are generally applicable to every member of the proposed class, thereby making appropriate restitution and further injunctive relief appropriate as to the entire proposed class.

~~32.~~37. The questions of law and fact that are determinative of ~~Mr. Muto's~~Plaintiffs' allegations are shared by all members of the class, and greatly predominate over any individual issues. Common questions include, without limitation: (1) whether Defendants present all statutorily-mandated automatic renewal offer terms in a manner that is clear and conspicuous within the meaning of California law and in visual proximity to a request for consent to the offer; (2) whether Defendants provide the post-transaction acknowledgement disclosures required by section 17602(a)(3) of the ARL; (3) Defendants' policies, practices and procedures for obtaining affirmative consent from their California customers before charging their credit or debit card; and (4) the appropriate remedies for Defendants' conduct.

1  33.38. Mr. Muto's Plaintiffs' claims are typical of the claims of the class members
2  in that he they received the exact same inadequate pre-transaction disclosures as received
3  by all members of the class, and similarly received an inadequate post-transaction
4  "acknowledgement" that included the contents required by section 17602(a)(3). Mr.
5  Muto's Plaintiffs' claims are further typical in that his their cards wasere charged for an
6  automatic renewal fee without Defendants having first obtained his their affirmative
7  consent to an agreement containing clear and conspicuous disclosure of all automatic
8  renewal offer terms. Mr. Muto Plaintiffs furthermore haves no interests that are adverse to
9  those of the absent class members, and he they havehas committed to fairly and
10 adequately protect the interests of those class members.

11  34.39. A class action is superior to other methods for resolving this controversy.
12 Because the amount of restitution to which each Class member may be entitled is low in
13 comparison to the expense and burden of individual litigation, it would be impracticable
14 for Class members to redress the wrongs done to them without a class action forum.
15 Furthermore, on information and belief, Class members do not know that their statutory
16 rights have been violated, so they would be unlikely to pursue single-party remedies on
17 their own behalf absent a class action. Class certification would also conserve judicial
18 resources and avoid the possibility of inconsistent judgments.

**FIRST CAUSE OF ACTION**

**(False Advertising in Violation of the California Automatic Renewal Law, B&P Code §§ 17535; 17600 *et seq.*)**

22  35.40. Plaintiffs hereby incorporates the allegations of all preceding paragraphs as
23 though fully set forth herein.
24  36.41. Defendants enrolled Plaintiffs and an untold number of California
25 consumers who comprise the class alleged herein, into an automatic renewal program that
26 violates the ARL by, among other things, (a) failing to present automatic renewal offer
27 terms in a clear and conspicuous manner before a subscription or purchasing agreement is
28 fulfilled and in visual proximity to the offer; (b) charging the consumer's credit card or

1 debit card for an automatic renewal fee without first obtaining the consumer's affirmative
2 consent to an agreement containing clear and conspicuous disclosure of all automatic
3 renewal offer terms; and (c) failing to provide an acknowledgment that includes clear and
4 conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and
5 information regarding how to cancel in a manner that is capable of being retained by the
6 consumer and that provides a mechanism for cancellation that is cost-effective, timely,
7 and easy to use, all in violation of § 17602(a) and (b).

8 37.42. Defendants' violations of the ARL are in turn a violation of California's False Advertising Law, Business & Professions Code section 17500 *et seq.* Under section 17535 of the False Advertising Law, Plaintiffs and members of the class are entitled to an injunction prohibiting further violations of the ARL, and restoring to Plaintiffs and members of the class the money that Defendants acquired from them by means of the ARL violations described herein.

### SECOND CAUSE OF ACTION

**(Violation of the California Consumer Legal Remedies Act, Civ. Code § 1750 *et seq.*)**

38.43. Plaintiffs hereby incorporates the allegations of all preceding paragraphs as though fully set forth herein.

39.44. Plaintiffs and all members of the class are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffs sought or acquired Defendants' goods and/or services for personal purposes.

40.45. Defendants' membership program pertains to "services" within the meaning of Civil Code § 1761(a) and (b).

41.46. The payments that Plaintiffs and members of the class made to Defendants are "transactions" within the meaning of Civil Code section 1761(e).

42.47. Defendants have violated Civil Code § 1770, subdivisions (a)(5), (9), and (14), by representing that Defendants' goods or services have characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; and representing that a transaction confers or involves rights, remedies, or obligations that it

1  does not have or involve, or that are prohibited by law.

2  48. Unless enjoined and restrained by this Court, Defendants will continue to
3  commit the violations alleged herein.  Pursuant to Civil Code § 1780(a)(2), on behalf of
4  the Class and also for the benefit of the general public of the State of California, Plaintiffs
5  seeks an injunction prohibiting Defendants from continuing their unlawful practices as
6  alleged herein.

7  49. Pursuant to Civil Code § 1782, more than 30 days prior to this filing Mr.
8  Muto (through his counsel) notified each Defendant of the acts and practices complained
9  of herein, and specified how they violate the CLRA.  In those letters Mr. Muto further
10 demanded that Defendants rectify the issue by ceasing its unlawful practices, and making
11 restitution to all identifiable consumers in California.

12 43.50. Defendants declined to provide the relief requested in Mr. Muto's CLRA
13 demand letter.  Accordingly, Plaintiffs further demand the damages and other relief that
14 they are entitled to pursuant to Civil Code § 1780(a).

15                          **THIRD CAUSE OF ACTION**
16           **(Violation of the California Unfair Competition Law, B&P Code § 17200 *et seq.*)**

17 44.51. Plaintiffs hereby incorporates the allegations of all preceding paragraphs as
18 though fully set forth herein.

19 45.52. The Unfair Competition Law defines unfair competition as including any
20 unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or
21 misleading advertising; and any act of false advertising under § 17500.

22 46.53. In the course of conducting business in California within the applicable
23 limitations period, Defendants committed unlawful, unfair, and/or fraudulent business
24 practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter
25 alia and without limitation:  (a) failing to present automatic renewal offer terms in a clear
26 and conspicuous manner before a subscription or purchasing agreement is fulfilled and in
27 visual proximity to the offer; (b) charging the consumer's credit card or debit card for an
28 automatic renewal fee without first obtaining the consumer's affirmative consent to an

1 agreement containing clear and conspicuous disclosure of the automatic renewal offer
2 terms; and (c) failing to provide an acknowledgment that includes clear and conspicuous
3 disclosure of all automatic renewal offer terms, the cancellation policy, and information
4 regarding how to cancel in a manner that is capable of being retained by the consumer and
5 that provides a mechanism for cancellation that is cost-effective, timely, and easy to use,
6 all in violation of § 17602(a) and (b).

7 47.54. Defendants' acts, omissions, nondisclosures, and statements as alleged
8 herein were and are false, misleading, and/or likely to deceive the consuming public.

9 48.55. Plaintiffs and all members of the class have lost money as a result of
10 Defendants' unlawful acts of unfair competition, in that Plaintiffs would not have incurred
11 the automatic renewal fees associated with the accounts of the creators known as
12 @taste.of.heaven and @cheriedeville had Defendants fully, clearly, and conspicuously
13 apprised him them of the terms of the automatic renewal offer described herein.

14 49.56. Pursuant to § 17203, Plaintiffs and the members of the class are entitled to
15 restitution of all amounts paid to Defendants in connection with an automatic renewal
16 membership program in the four years preceding the filing of this Complaint and
17 continuing until Defendants' acts of unfair competition cease.

18 50.57. Unless enjoined and restrained by this Court, Defendants will continue to
19 commit the violations alleged herein. Pursuant to § 17203, on behalf of the class, and for
20 the benefit of the general public of the State of California, Plaintiffs seeks an injunction
21 prohibiting Defendants from continuing their unlawful practices as alleged herein.

22                                                **PRAYER**
23        Plaintiffs pray for judgment on behalf of himself and all members of the class
24 alleged herein, against Defendants, as follows:
25        1.    For restitution of the amounts unlawfully charged to the credit and debit
26 cards of Plaintiffs and members of the class in violation of the ARL;
27        1.2.  For damages pursuant to Civil Code § 1780(a);
28        2.3.  For injunctive relief against further violations of the ARL by Defendants;

1         3.4.    For reasonable attorneys' fees pursuant to Code of Civil Procedure § 1021.5
2  and Civil Code § 1780(e);
3         4.5.    For costs of suit;
4         5.6.    For prejudgment interest; and
5         6.7.    For such other relief as the Court deems just and proper.

Dated: ~~October 24~~January 17, 2022       GAW | POE LLP

                                            By:   s/ ~~Mark Poe~~
                                                       MARK POE
                                                       Attorneys for Plaintiffs