Jacob M. Heath (SBN 238959)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:  +1 650 614 7400
Facsimile:  +1 650 614 7401
jheath@orrick.com

Attorneys for Defendants
FENIX INTERNATIONAL LIMITED and
FENIX INTERNET LLC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELO MUTO, NOAH BREEZE, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> FENIX INTERNATIONAL LIMITED; FENIX INTERNET LLC, <br><br> Defendants. | CASE NO. 5:22-cv-02164-SSS-KK <br><br> **DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Hearing Date:  April 28, 2023 <br><br> Time:  2:00 PM <br><br> Dept:  Courtroom 2 <br><br> Judge:  Hon. Sunshine S. Sykes |

## NOTICE OF MOTION AND RELIEF SOUGHT

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 28, 2023, at 2:00 PM, or as soon thereafter as is available, in the courtroom of the Honorable Sunshine S. Sykes, located at 3470 Twelfth Street, Riverside, California 92501-3801, Courtroom 2, 2nd Floor, Defendants Fenix International Limited ("FIL") and Fenix Internet LLC ("Fenix Internet") (collectively, "Defendants") will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and the doctrine of forum *non conveniens* to dismiss all claims asserted against them by Plaintiffs Marcelo Muto and Noah Breeze in Plaintiffs' Second Amended Complaint (ECF No. 14) ("SAC").

The Court should dismiss with prejudice each of Plaintiffs' claims in their entirety because:

**1.** ***Plaintiffs Must Bring this Suit in the United Kingdom:*** The forum-selection clause in the OnlyFans Terms—which Plaintiffs concede they agreed to when they created their OnlyFans accounts—requires Plaintiffs to bring this suit in the United Kingdom (where OnlyFans is operated) and thus mandates dismissal of this action pursuant to the doctrine of *forum non conveniens*.

**2.** ***The Court Lacks Personal Jurisdiction over both FIL and Fenix Internet:*** Neither FIL (a United Kingdom domiciled company) nor Fenix Internet ( a Delaware domiciled company) is subject to personal jurisdiction in California, as neither undertook acts related to this suit that were purposefully directed at this forum;

the only relevant California-based connection is Plaintiffs' own decision to access the OnlyFans website from this state.

**3.** ***Plaintiffs Lack Standing to Bring their Claims:*** Plaintiffs understood the automatic renewal terms of their OnlyFans subscriptions. Indeed, they regularly exercised their rights to subscribe to and subsequently cancel dozens of OnlyFans subscriptions prior to their renewal date (and often, almost right away). In some instances, they even later re-subscribed to the same content before again cancelling prior to the renewal date. Therefore, none of FIL's or Fenix Internet's alleged legal violations actually caused them any injury, so they cannot establish either constitutional or statutory standing.

**4.** ***Plaintiffs Fail to State a Cause of Action Against Fenix Internet:*** Plaintiffs do not plead any facts showing that Fenix Internet has violated any of the statutes that the SAC attempts to assert.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Declaration of Lee Taylor, Declaration of Antony White KC, the complete files and records in this action, any reply papers Defendants may file, any matters of which the Court may take judicial notice, any such materials or arguments as may be presented to the Court in conjunction with hearing on this motion, and any other matter that the Court may properly consider.

This Motion was made following multiple conferences pursuant to L.R. 7-3. On November 21, 2022, Defendants sent a letter to Plaintiffs setting forth in detail the substance of Defendants' contemplated motion to dismiss. The parties had a follow up conference via email on January 10, 2023, relating to the SAC and the substance of

Defendants' contemplated motion to dismiss.  The parties then had another follow-up conference via telephone on March 7, 2023.

Dated:  March 10, 2023

JACOB M. HEATH
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:_____/s/ Jacob M. Heath_____

JACOB M. HEATH
Attorneys for Defendants
FENIX INTERNATIONAL LIMITED
and
FENIX INTERNET LLC

# TABLE OF CONTENTS

NOTICE OF MOTION AND RELIEF SOUGHT..................................................I

TABLE OF AUTHORITIES.............................................................................V

I.   INTRODUCTION ...................................................................................- 1 -

II.  FACTUAL BACKGROUND....................................................................- 2 -

     A.  FIL, Fenix Internet, and OnlyFans ..................................................- 2 -

     B.  The OnlyFans Terms of Service and Forum Selection Clause ...........- 3 -

     C.  Plaintiffs' Allegations.....................................................................- 6 -

III. LEGAL ARGUMENT .............................................................................- 7 -

     A.  Plaintiffs' Claims Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*.....................................................................................- 7 -

     1.   The Parties Agreed to a Mandatory Forum-Selection Clause That Covers Plaintiffs' Claims................................................................. - 9 -

     2.   The Forum-Selection Clause is Enforceable. ............................. - 11 -

     B.  The SAC Should Be Dismissed for Lack of Personal Jurisdiction...- 15 -

     1.   Neither FIL nor Fenix Internet is Subject to General Jurisdiction in California. - 16 -

     2.   Neither FIL nor Fenix Internet is Subject to Specific Jurisdiction in California. .................................................................................... - 17 -

     C.  The SAC Must Be Dismissed for Lack of Constitutional or Statutory Standing. - 20 -

     D.  Plaintiffs' Claims Against Fenix Internet Must Be Dismissed for Failure to State a Claim. .........................................................................................- 23 -

IV.  CONCLUSION.....................................................................................- 24 -

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ................................................................ 21, 23, 24

*Ariix, LLC v. NutriSearch Corp.*,
  2022 WL 837072 (S.D. Cal. 2022) ....................................................... 23

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................. 11, 12

*BNSF Ry. Co. v. Tyrrell*,
  137 S. Ct. 1549 (2017) ........................................................ 20

*Bostick v. Gen. Motors, LLC*,
  2020 WL 13283478 (C.D. Cal. 2020) ................................................ 8

*Brooks v. Sotheby's*,
  2013 WL 3339356 (N.D. Cal. 2013) ....................................... 11, 12, 13

*Bundy v. Nirvana LLC*,
  2021 WL 5822127 (C.D. Cal. 2021) ..................................... 12

*Caces-Tiamson v. Equifax*,
  2020 WL 1322889 (N.D. Cal. 2020) ................................... 21, 22, 23

*California Hosp. Ass'n v. Maxwell-Jolly*,
  2010 WL 11526908 (C.D. Cal. 2010) ................................. 26

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) ............................................. 20, 21

*Compound Sols., Inc. v. CoreFX Ingredients, LLC*,
  2020 WL 3639663 (S.D. Cal. 2020) .................................. 17, 18

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................ 20, 21

*Derosa v. Thor Motor Coach, Inc.*,
  2020 WL 6647734 (C.D. Cal. 2020) .............................. 18

*Doe v. SuccessfulMatch.com*,
  70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................... 25

*Dole Food Co. v. Watts*,
  303 F.3d 1104 (9th Cir. 2002) ...................................................... 22

*Elliot v. Cessna Aircraft Co*.,
  2021 WL 2153820 (C.D. Cal. 2021) .............................................. 23

*Frisby v. Thor Motor Coach, Inc.*,
  2023 WL 1420434 (C.D. Cal. 2023) .............................................. 19

*Graduation Sols. LLC v. Luya Enter. Inc.*,
  2020 WL 9936697 (C.D. Cal. 2020) ................................................ 8

*Imageline, Inc. v. Hendricks*,
  2009 WL 10286181 (C.D. Cal. 2009) ............................................ 23

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................... 19

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp*.,
  119 F.3d 1070 (3d Cir. 1997) ........................................................ 14

*Kabbash v. Jewelry Channel, Inc. USA*,
  2016 WL 9132930 (C.D. Cal. 2016) .............................................. 18

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .................................................. 8, 26

*LaCross v. Knight Transp., Inc.*,
  95 F. Supp. 3d 1199 (C.D. Cal. 2015) ........................................... 12

*M/S Bremen v. Zapata Off-Shore Co*.,
  407 U.S. 1 (1972) ........................................................................... 15

*Manetti–Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) ........................................................ 14

*Martinez v. Aero Caribbean*,
  764 F.3d 1062 (9th Cir. 2014) ...................................................... 20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ...................................................... 21

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011)...................................................................... 8

*Miller v. Hearst Commc'ns, Inc.*,
    2012 WL 3205241 (C.D. Cal. 2012)........................................................... 17

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020)................................................................... 25

*Muniz v. Fenix Int'l Ltd.*,
    2021 WL 3417581 (N.D. Ga. 2021) ......................................... 13, 15, 17, 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
    338 F. Supp. 3d 1118 (S.D. Cal. 2018) ..................................................... 22

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006)................................................................... 20

*Petersen v. Boeing Co.*,
    715 F.3d 276 (9th Cir. 2013)..................................................................... 15

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015)................................................................... 21

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998)................................................................... 16

*Sandler v. iStockphoto LP*,
    2016 WL 871626 (C.D. Cal. 2016)........................................................... 19

*Sawyer v. Bill Me Later, Inc.*,
    2011 WL 7718723 (C.D. Cal. 2011)..................................................... 14, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)........................................................... 19, 20, 22

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999)..................................................................... 16

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .............................................................................. 25

*Van Patten v. Vertical Fitness Grp., LLC*,
    847 F.3d 1037 (9th Cir. 2017)................................................................... 25

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................. 22, 23, 24

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ..................................................... *passim*

**Statutes**

Cal. Civ. Code § 1751 ............................................................. 18

California Consumer Legal Remedies Act, Civ. Code § 1750 .............................. 11

California's False Advertising Law, Bus. & Prof. Code § 17500 ......................... 11

Song-Beverly Act ................................................................. 18

**Other Authorities**

Article III ................................................................... 8, 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs are two users of the content sharing, social media website OnlyFans.com ("OnlyFans"), which is owned and operated by Defendant Fenix International Limited ("FIL").  Although Plaintiffs had previously purchased and then cancelled (before the renewal date) more than two dozen separate OnlyFans subscriptions, they now claim they were deceived when two subscriptions they *failed to* cancel were renewed.  Specifically, Plaintiffs claim that (notwithstanding their lengthy subscription and cancellation history) they purportedly had no idea that failing to cancel these subscriptions would result in them renewing for another month.  On that basis, Plaintiffs seek to maintain this putative class action against FIL, a company established and based in the United Kingdom that operates OnlyFans, and Fenix Internet LLC ("Fenix Internet"), a Delaware company that provides support services for FIL unrelated to the claims in this action.

Plaintiffs' claims fail for three reasons.  *First*, this case must be ***dismissed under the doctrine of forum non conveniens***.  Plaintiffs' action flouts the contractual agreement they made, when signing up for OnlyFans, to bring all suits relating to their use of OnlyFans exclusively in the United Kingdom (where OnlyFans is operated). *Second*, there is ***no personal jurisdiction*** over FIL or Fenix Internet in California.  The SAC attempts to hale two out-of-state defendants into California court, not because either has purposefully directed any relevant action at California, but solely because *Plaintiffs* chose to access OnlyFans from California.  But only a *defendant's* forum contacts—not a plaintiff's—can provide a basis for personal jurisdiction.  *Third*,

***Plaintiffs lack standing*** to pursue the claims in this action.  Plaintiffs' respective account and transaction histories on OnlyFans demonstrate that—well before they purchased the subscriptions at issue here—Plaintiffs had a clear understanding that OnlyFans subscriptions would automatically renew if not cancelled.  Accordingly, OnlyFans' supposed failure to communicate that fact did not cause Plaintiffs any injury.

In any event, even if California were an appropriate forum, this Court has personal jurisdiction, and Plaintiffs had standing, the action would still—at a minimum—have to be dismissed as to Fenix Internet, which does not operate OnlyFans, and so is not responsible for any disclosures or representations regarding subscription renewal that appear on the website (and which form the basis for Plaintiffs' claims).  Indeed, the SAC does not even attempt to allege that Fenix Internet took any act to violate the law; all it says is that Fenix Internet "is, or has been, continuously in possession of money wrongfully taken from Plaintiff."  SAC ¶ 9.  Merely possessing Plaintiffs' money, however, is not a violation of any of the statutes cited in Plaintiffs' SAC and is not a basis for maintaining this lawsuit against Fenix Internet.

Plaintiffs' lawsuit should thus be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    FIL, Fenix Internet, and OnlyFans

FIL is a company incorporated and registered in England and Wales, with its headquarters in London.  Taylor Decl. ¶ 3.  FIL owns and operates the popular international content sharing and social media website, OnlyFans.  *Id.*  OnlyFans is a leading global platform that allows users (i.e., "Fans") from around the world to subscribe to and engage with content (such as videos, music, and photographs)

produced by content creators ("Creators") located around the world.  *See id.* ¶ 6.
Individuals who sign up for a Fan account on OnlyFans are given the opportunity to
subscribe to their favorite Creators, giving them access to exclusive content and
opportunities to interact directly with the Creators.

Fenix Internet is a separate company that is organized under the laws of
Delaware, with its registered office in Delaware.[1]  Taylor Decl. ¶ 4.  Fenix Internet does
not operate OnlyFans; instead, it assists FIL in processing payments.  *Id.* ¶¶ 5-7.
Specifically, Fenix Internet collects payments from third-party processors and
distributes the money it collects (through other third-party providers) to Creators, as
directed by FIL.  *Id.* ¶ 6.

Neither FIL nor Fenix Internet is registered to do business in California.  Taylor
Decl. ¶ 12.  Neither has any offices or employees in California.  *Id.* ¶ 8.  Neither
engages in marketing, sales, or commercial activity targeted specifically at California
residents.  *Id.* ¶ 10.  Neither pays income or other taxes in the State.  *Id.* ¶ 11.

**B.     The OnlyFans Terms of Service and Forum-Selection Clause**

When individuals—including Plaintiffs—sign up for a Fan account on OnlyFans,
they must agree to the OnlyFans Terms of Service ("Terms").  SAC ¶ 8.  They do so by
clicking a button immediately next to text stating:  "By signing up you agree to our
Terms of Service …"  SAC ¶ 25.  That same disclosure includes a hyperlink (denoted in
bold and in bright blue font) to the Terms, which immediately inform a reader that "**BY**

---

[1] In their SAC, Plaintiffs allege that Fenix Internet's principal place of business is in Florida.  SAC ¶ 9.  But regardless of whether it is in Florida or Delaware, it is undisputed that Fenix Internet's principal place of business is *not* in California.

1   **USING OUR WEBSITE YOU AGREE TO THESE TERMS – PLEASE READ**

2   **THEM CAREFULLY**."  Taylor Decl., Ex. B (emphasis in original); SAC ¶¶ 25-26.

3   Plaintiffs concede that individuals agree to the Terms when they sign up for a Fan

4   account on OnlyFans.  SAC ¶ 8.

5         The Terms include a forum-selection clause that requires OnlyFans users to file

6   all claims in the United Kingdom (specifically, the courts of England and Wales), where

7   FIL is incorporated and headquartered.  The forum-selection clause that Plaintiffs

8   agreed to when they signed up for their accounts was conspicuously labeled with bold

9   text, which calls out to the user that in agreeing to the Terms, they are agreeing to bring

10  "any dispute …  concerning OnlyFans … exclusively in the courts of England and

11  Wales."  Taylor Decl., Ex. A at Section 18.[2]  As part of the Terms, Plaintiffs also agreed

12  that OnlyFans may make changes to the Terms and site at its sole discretion, and that

13  "[b]y continuing to use OnlyFans after such notice, you agree to these Terms as

14  modified."  Taylor Decl., Ex. A at Section 1.4.

15        In December 2021, OnlyFans updated its Terms, which included a clarification to

16  the governing law section that a user "will also be able to rely on mandatory rules of the

17  law of the country where you live."  Taylor Decl., Ex. B at Section 16a.  The Terms

18  continued to maintain a mandatory forum-selection clause that provided that:

19

20

21  [2] In ruling on a motion to dismiss for lack of personal jurisdiction, for *forum non conveniens*, or for lack of standing, this Court may consider matters outside of the pleadings.  *See, e.g.*, *Bostick v. Gen.*

22  *Motors, LLC*, 2020 WL 13283478, at *2 (C.D. Cal. 2020) (personal jurisdiction); *Graduation Sols. LLC v. Luya Enter. Inc.*, 2020 WL 9936697, at *1 (C.D. Cal. 2020) (*forum non conveniens*); *Maya v.*

23  *Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (standing).  Further, the Court may consider the Terms of Service because they are expressly referenced in the SAC.  *See* SAC ¶¶ 25-26; *see also, e.g.*,

24  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

TERMS OF SERVICE

16. Terms relating to disputes – the law which applies to your agreement with us and where disputes and claims concerning your use of OnlyFans (including those arising from or relating to your agreement with us) can be brought:

    a. For consumers (Fans):

        ■ Consumers - Law:

            • If you are a consumer, your agreement with us is governed by English law and English law will apply to (i) any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans, and (ii) any claim that we have against you that arises out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims). You will also be able to rely on mandatory rules of the law of the country where you live.

        ■ Consumers - where claims must be brought:

            • If you are a consumer resident in the United Kingdom or the European Union, any claim which you have or which we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) may be brought in the courts of England and Wales or the courts of the country where you live.

            • If you are a consumer resident _outside_ of the United Kingdom or the European Union, any claim which you have or which we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) must be brought in the courts of England and Wales.

Taylor Decl., Ex. B at Section 16a. All users, including Plaintiffs, were provided notice about the update on November 14, 2021, a month before it took effect. Additionally, the first time that any user, including Plaintiffs, logged into their OnlyFans account on or after December 15, 2021, they were presented with the following alert immediately after logging into their account:



Taylor Decl. ¶ 21. Users had to click "ACCEPT" to continue using OnlyFans and could not have continued to use their OnlyFans account without first agreeing to the updated Terms. *See id.* ¶ 22. Plaintiff Muto affirmatively accepted the December 15, 2021, amendments on December 25, 2021, while Plaintiff Breeze accepted the December 15, 2021, amendments on December 21, 2021. *Id.* ¶¶ 23-24, Ex. C & D. Both Plaintiffs continued to use their OnlyFans accounts after accepting the December 15, 2021, amendments. *Id.* ¶ 25.

1     Additionally, the Terms provide details—again, labeled clearly and in bold

2  ("**Subscriptions and purchases by Fans**")—about how OnlyFans subscriptions

3  work.  Taylor Decl., Ex. B at Section 8 (emphasis in original).  Specifically, the

4  Terms explain that in general "all Subscriptions to a Creator's profile will

5  automatically renew at the end of the relevant subscription period."  *Id.*  But they

6  also note that users have full control over this.  Specifically, if a user wishes to

7  opt out of automatic renewals, they can "turn[] off the 'Auto-Renew' switch

8  located on the relevant Creator's profile.  This means that if you want to stop

9  subscribing to a Creator's profile and paying continuing monthly subscription

10  charges, you will need to turn off the 'Auto-Renew' switch located on the

11  relevant Creator's profile."  *Id.*  To eliminate any doubt, the Terms then continue

12  to explain that "[i]f you cancel a Subscription you will continue to be permitted

13  to view the relevant Creator's Content until the end of the subscription period in

14  which you cancelled, after which no further payments will be taken from your

15  payment card in respect of subscriptions to that Creator's profile (unless you

16  choose to pay for a new Subscription to that Creator's profile), and you will no

17  longer be able to view the relevant Creator's Content."  *Id.*

18     **C.    Plaintiffs' Allegations**

19     Plaintiffs created Fan accounts on OnlyFans and agreed to the Terms through the

20  process described above.[3]  *See* SAC ¶ 8.  Through those Fan accounts, they

21  purchased—and then cancelled, ***before*** the renewal date—38 subscriptions to multiple

22  _____

23  [3] Plaintiff Muto joined OnlyFans as a Fan on December 12, 2019; Plaintiff Breeze joined OnlyFans as
   a Fan on February 10, 2020, and subsequently was approved for a Creator account on March 30, 2020.

24  Taylor Decl., ¶¶ 16-17.

1  OnlyFans Creators.  *See* Taylor Decl. ¶¶ 32-42.

2          Notwithstanding (a) their contractual promise to bring any suit relating to their

3  use of OnlyFans in England or Wales; (b) the clear explanation of OnlyFans'

4  subscription renewals; and (c) Plaintiffs' own familiarity with OnlyFans' subscription,

5  renewal, and cancellation process, Plaintiffs filed this putative class action lawsuit in

6  California court.  Plaintiffs assert that OnlyFans' automatic subscription renewal was

7  not adequately disclosed to them, causing them to incur unwanted renewal charges.

8  Specifically, Plaintiffs claim that OnlyFans' supposedly inadequate disclosures amount

9  to violations of California's False Advertising Law, Bus. & Prof. Code § 17500 *et seq.*

10  ("FAL"), the California Consumer Legal Remedies Act, Civ. Code § 1750 *et seq.*

11  ("CLRA"), and the California Unfair Competition Law, Bus. & Prof. Code § 17200 *et*

12  *seq.* ("UCL").

13  **III.   LEGAL ARGUMENT**

14          **A.   Plaintiffs' Claims Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*.**

15          The Court should dismiss the SAC in its entirety because Plaintiffs have agreed

16  that any claim they have arising out of or in connection with their use of OnlyFans,

17  including non-contractual disputes, must be brought in the courts of England and

18  Wales.  The law is clear that where "the parties have agreed to a valid forum-selection

19  clause, a district court should ordinarily transfer the case to the forum specified in that

20  clause."  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir.

21  2018).  However, where (as here) the selected venue is in a foreign country, federal

22  courts must dismiss the action for improper venue under the doctrine of *forum non*

23  *conveniens.  See Brooks v. Sotheby's*, 2013 WL 3339356, at *6 (N.D. Cal. 2013); *see*

24

*also Yei A. Sun*, 901 F.3d at 1087.

An ordinary *forum non conveniens* analysis asks whether "the convenience of the parties and various public-interest considerations" weigh "on balance" in favor of a different forum. *Yei A. Sun*, 901 F.3d at 1087 & n.3. But where (as here) there is a valid forum-selection clause, the analysis is different—and the determination is weighted heavily in favor of dismissal. *Id.* That is because the parties' contractual agreement to litigate in a particular forum means that a plaintiff's later choice of a different forum "merits no weight," *id.* at 1087, and the court must treat the parties' private interests as weighing "entirely in favor of" the forum selected in the clause. *Id.* at 1088.[4] Additionally, courts have explained that, for similar reasons, the public-interest "will rarely defeat a transfer motion." *Id*.[5] A forum-selection clause will thus "control except in unusual cases." *Id*. (quoting *Atl. Marine*, 571 U.S. at 64)

As a result, when dismissing in light of a forum-selection clause, a court need answer only two questions: (1) did the parties agree to a mandatory forum-selection clause that covers the claims at issue; and (2) if so, has the plaintiff shown extraordinary

---

[4] For similar reasons, "a plaintiff's financial ability to bear the costs of inconvenience of litigation in [the selected forum]" are irrelevant to the analysis, because they are "factors that the Supreme Court … deemed private interests that the Court may not consider" when evaluating the enforceability of a forum-selection clause. *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1205 (C.D. Cal. 2015).

[5] In any event, to the extent the public interest factors—such as "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law," *Yei A. Sun*, 901 F.3d at 1088—are relevant here, they militate in favor of enforcing the forum-selection clause, as the United Kingdom is clearly an adequate alternative forum, is the home of the primary defendant FIL, and will likely result in a speedier resolution of this action. *See, e.g.*, *Bundy v. Nirvana LLC*, 2021 WL 5822127, at *4-*6 (C.D. Cal. 2021) (dismissing action on *forum non conveniens* grounds because, *inter alia*, "the U.K. is an adequate alternative forum," "a trial would likely be speedier in the U.K.," and the U.K. "has a strong interest because this suit involves a U.K. citizen").

circumstances that could justify disregarding that clause?  *See Brooks*, 2013 WL 3339356, at \*6 ("Mandatory forum-selection clauses are to be 'strictly enforced' unless the plaintiff can meet his burden of showing its enforcement would be unreasonable.").  Here, the answers favor dismissal.  *See Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581, at \*1 (N.D. Ga. 2021) (dismissing case for *forum non conveniens* based on forum-selection clause in the OnlyFans Terms of Service).

### 1. The Parties Agreed to a Mandatory Forum-Selection Clause That Covers Plaintiffs' Claims.

There is no dispute that Plaintiffs agreed to a mandatory forum-selection clause that covers all the claims they seek to bring here.  Plaintiffs' SAC concedes that when Plaintiffs signed up for a Fan account on OnlyFans.com, they entered into the OnlyFans "Terms of Service" with FIL.  SAC ¶ 8.  Those agreed-upon Terms included the forum-selection clause.  Taylor Decl., Ex. A at Section 18.

The forum-selection clause states both that its terms are mandatory and that it encompasses the Plaintiffs' claims at issue in this litigation.  First, a forum-selection clause is mandatory if it "contain[s] language that clearly designates a forum as the exclusive one."  *Brooks*, 2013 WL 3339356, at \*6.  The agreed-upon forum-selection clause here contains such language:  "[A]ny claim which you have … arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) ***must*** be brought in the courts of England and Wales."  Taylor Decl., Ex. B at Section 16a (emphasis added).  As another court recently held, this language in the OnlyFans forum-selection clause "dictates an exclusive forum for litigation under the contract," and is "mandatory, rather than permissive."  *Muniz*, 2021 WL 3417581, at \*3.

1       Moreover, the clause applies to any claim "arising out of or in connection" with

2  Plaintiffs' agreement with FIL or "use of OnlyFans," and thus encompasses their claims

3  here.  Taylor Decl., Ex. B at Section 16a.  As the Ninth Circuit has explained, when a

4  forum-selection clause uses this type of broad language, it applies to "any disputes that

5  reference the agreement or have some 'logical or causal connection' to the agreement."

6  *Yei A. Sun*, 901 F.3d at 1086 (quoting *John Wyeth & Bro. v. CIGNA Int'l Corp.*, 119

7  F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.)).  Here, Plaintiffs' claims have a "logical or

8  causal connection" to the Terms.  Indeed, the subscriptions about which they are suing

9  "could not have been made without" the Terms.  *Id.* at 1086-87.  Additionally,

10  Plaintiffs' claims, all of which concern their OnlyFans subscriptions, have a direct

11  "connection" to their "use of OnlyFans."  Taylor Decl., Ex. B at Section 16a.  What is

12  more, Plaintiffs' lawsuit directly implicates the Terms, as the gist of their claims is that

13  the disclosures regarding automatic renewals contained in those Terms (which they

14  concede they agreed to) were insufficient.

15       Just as important, because Plaintiffs' claims against both Fenix Internet and FIL

16  are related to Plaintiffs' use of OnlyFans, it is immaterial that only FIL, not Fenix

17  Internet, is a party to the Terms.  The Ninth Circuit has made clear that "parties and

18  non-parties" alike "should benefit from … forum selection clauses."  *Sawyer v. Bill Me*

19  *Later, Inc.*, 2011 WL 7718723, at *4 (C.D. Cal. 2011) (quoting *Manetti–Farrow, Inc. v.*

20  *Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).  As a result, the only relevant

21  question is whether "the alleged conduct of the non-part[y]" is "closely related to the

22  contractual relationship"—if it is, then it is entitled to enforce the contract's forum-

23  selection clause, no different than a party.  *Id.*  That is exactly the case here, as

24

DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC'S MOTION TO DISMISS

Plaintiffs' claims against Fenix Internet—no different from their claims against FIL—are fundamentally grounded in the OnlyFans Terms (both because they could not have arisen without the Terms, and because they turn on whether the disclosures in the Terms were adequate). Accordingly, "the forum selection clause applies to all defendants." *Id.*

### 2. The Forum-Selection Clause is Enforceable.

Having contractually agreed to bring their claims elsewhere, Plaintiffs can only avoid dismissal if they show "extraordinary circumstances unrelated to the convenience of the parties." *Yei A. Sun*, 901 F.3d at 1088. To meet this exacting standard, Plaintiffs must make a "strong showing" that: (1) the forum-selection clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court." *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)). Plaintiffs cannot establish any of these factors.

#### a) The forum-selection clause was not induced by fraud and was reasonably communicated to Plaintiffs.

Another court already has held that the OnlyFans forum-selection clause was "not a product of fraud or overreaching." *Muniz*, 2021 WL 3417581, at *3-*4. This Court should rule in the same way, because Plaintiffs here cannot "show that the 'inclusion of that clause in the contract was the product of fraud or coercion.'" *Petersen v. Boeing Co.*, 715 F.3d 276, 282 (9th Cir. 2013). There is neither an allegation in the SAC—nor any evidence—of fraud, coercion, or even an intent to

mislead.  To the contrary, Plaintiffs specifically acknowledge in the SAC that, as users of OnlyFans, they voluntarily entered into the Terms when they decided to sign up for Fan accounts on OnlyFans.  *See* SAC ¶ 8.  Because Plaintiffs voluntarily entered into and agreed to the Terms when they signed up for their OnlyFans accounts, Plaintiffs cannot establish that the forum-selection clause was induced by fraud or overreaching.

### b)  Enforcement of the forum-selection clause would not deprive Plaintiffs of their day in court.

To avoid enforcement of the forum-selection clause on the ground that it would deprive them of their day in court, Plaintiffs must show that "the contractually selected forum affords [them] no remedies whatsoever."  *Yei A. Sun*, 901 F.3d at 1092.  That is because a forum-selection clause is "a contractual obligation" whereby Plaintiffs each individually agreed willingly to bring suit only in a certain forum, and so there is "no injustice" for holding a plaintiff to that promise.  *Id*. at 1091.  Accordingly, "if there exists a basically fair court system in th[e] [selected] forum that would allow the plaintiff to seek some relief," the clause must be enforced.  *Id*. at 1092.

Here, relief is available to Plaintiffs in English or Welsh courts regardless of whether the English court applies California law (*e.g.*, the FAL, CLRA and/or UCL) or the equivalent English causes of actions.  White Decl. ¶ 25.  What is more, as explained below, if the Court determines that any of Plaintiffs' claims are mandatory under California law (irrespective of choice of law provisions), then the Terms allow Plaintiffs to maintain those claims in English or Welsh courts, too.  *See infra* § III.B.2.c; *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1292, 1296 (9th Cir. 1998) (enforcing forum-selection clause requiring the parties to adjudicate any disputes in "the courts of England" where plaintiffs could still pursue relief for fraud, breach of fiduciary duty, or

negligent misrepresentation under British law); *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999) (enforcing a forum-selection clause because the plaintiffs would have some "reasonable recourse" in the foreign forum, even though they could not bring some of the claims available under U.S. laws).  Because Plaintiffs have at least *some* relief available in the English and Welsh courts where they agreed to file this suit, this Court need not decide to what extent the causes of action available there mimic the California laws that Plaintiffs invoke here.  The fact that any relief is available in the selected forum is all that is necessary for this Court to enforce the forum-selection clause.  *See Muniz*, 2021 WL 3417581, at *4 (holding that because any difficulties of litigating in Britain were "clearly foreseeable at the time of contracting," requiring plaintiff to litigate in the British forum selected by the OnlyFans Terms would not deprive her of her day in court).

### c) Enforcement of the forum-selection clause would not contravene a strong public policy.

To show that a forum-selection clause is unenforceable for reasons of public policy, Plaintiffs must show that "enforcement would result in the waiver of an unwaivable right."  *Compound Sols., Inc. v. CoreFX Ingredients, LLC*, 2020 WL 3639663, at *5 (S.D. Cal. 2020).  Specifically, Plaintiffs must show that (1) the forum-selection clause—"operat[ing] in tandem" with the choice-of-law provisions—will functionally act "as a prospective waiver" of at least one of their claims and (2) that state law "prohibits … waiver of" such a claim.  *Miller v. Hearst Commc'ns, Inc.*, 2012 WL 3205241, at *2 (C.D. Cal. 2012).  Plaintiffs cannot do so.

Here, Plaintiffs seek remedies under only three causes of action: (1) the FAL; (2) the CLRA; and (3) the UCL.  *See* SAC ¶¶ 40-57.  Two of those—the FAL and the

UCL—do not create any "unwaivable right." *Compound Sols.*, 2020 WL 3639663, at *5. Thus, enforcement of the forum-selection clause as to those claims *cannot* implicate a "strong public policy," *Yei A. Sun*, 901 F.3d at 1088, that would justify Plaintiffs' request for judicial invalidation of a contractual term.

While the CLRA claim does create an "unwaivable right," *Compound Sols.*, 2020 WL 3639663, at *5; *see* Cal. Civ. Code § 1751, that is just the beginning, not the end, of the analysis. The forum-selection clause can be invalidated only if its enforcement (in conjunction with the choice-of-law provision) will "result in the waiver of [this] unwaivable right." *Compound Sols.*, 2020 WL 3639663, at *5. Here, it would not, because the applicable choice-of-law provision states that an OnlyFans subscriber will always "be able to rely on mandatory rules of the law of the country where you live." Taylor Decl., Ex. B at Section 16a. The Terms thus guarantee Plaintiffs the right to pursue any non-waivable claims—including their CLRA claim—once the action is properly filed in the correct forum. Put simply, when Plaintiffs bring their claims in England or Wales—where they are required to—the Terms guarantee that they can pursue any non-waivable claims in the English or Welsh court. *See Kabbash v. Jewelry Channel, Inc. USA*, 2016 WL 9132930, at *4 (C.D. Cal. 2016) (because courts in the selected forum "could very well find that California law should apply" under the choice-of-law provision, "enforcement of the [forum-selection and choice-of-law] clauses would not effectuate a waiver of Plaintiffs' rights under the CLRA").

Accordingly, enforcing the forum-selection clause with respect to the CLRA claim does not "contravene a strong public policy." *Yei A. Sun*, 901 F.3d at 1088; *see also Derosa v. Thor Motor Coach, Inc.*, 2020 WL 6647734, at *4 (C.D. Cal. 2020)

("Even if Plaintiff's statutory rights under the Song-Beverly Act cannot be waived … Defendant's stipulation that the Song-Beverly Act will apply in the transferee court removes the risk of diminishing Plaintiff's statutory rights under California law."); *Frisby v. Thor Motor Coach, Inc.*, 2023 WL 1420434, at *4 (C.D. Cal. 2023) (collecting cases).

In the words of another court that considered—and enforced—a forum-selection clause in the OnlyFans Terms:  "English law will likely afford Plaintiff[s] a remedy for each of [their] claims if they are successful," and the "English and Welsh courts provide an adequate forum," so there are no grounds for avoiding the forum-selection clause on grounds of public policy.  *Muniz*, 2021 WL 3417581, at *5.

As a result, Plaintiffs cannot carry their burden under any of the three tests for invalidating a forum-selection clause.  This Court should dismiss this action for *forum non conveniens*.  *See, e.g.*, *Sandler v. iStockphoto LP*, 2016 WL 871626, at *3-4 (C.D. Cal. 2016).

**B.      The SAC Should Be Dismissed for Lack of Personal Jurisdiction.**

Even if the Court were to find that Plaintiffs can circumvent the forum-selection clause and bring their suit here, the Court should still dismiss the Complaint for lack of personal jurisdiction over the Defendants.  Due process provides that a court may not exercise personal jurisdiction over nonresident defendants (here, FIL and Fenix Internet) unless each defendant has sufficient "minimum contacts" with the forum state (here, California) that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Personal jurisdiction may be "general or all-purpose

jurisdiction" or only "specific or conduct-linked." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  With either type, though, Plaintiffs bear the burden of establishing that the court may lawfully exercise personal jurisdiction.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Here, Plaintiffs have failed to carry that burden.

### 1.    Neither FIL nor Fenix Internet is Subject to General Jurisdiction in California.

The "paradigm forum[s]" for the exercise of general jurisdiction over a corporation are "the place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 137.  General jurisdiction outside of those forums is available "[o]nly in an 'exceptional case,'" *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), where the defendant's contacts are so "continuous and systematic" as to "approximate physical presence in the forum state," *Schwarzenegger*, 374 F.3d at 801.  That standard is "exacting," and for good reason:  A finding of personal jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011).

California is not the "paradigm forum" for general jurisdiction over either FIL or Fenix Internet, as both companies' respective places of incorporation and principal places of business are elsewhere.  *See* Taylor Decl. ¶¶ 3-4.  Nor is there any sound argument that this is the exceptional case where FIL or Fenix Internet is "so heavily engaged in activity in [California] [so] as to render [them] essentially at home." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017).  To the contrary, FIL and Fenix Internet have minimal connections to California.  The two companies have "no offices or staff in California, [are] not registered to do business in the state, ha[ve] no registered agent for

service of process, and pay[] no state [income] taxes." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (finding no general jurisdiction for that reason); *CollegeSource*, 653 F.3d at 1074 (finding no general jurisdiction where defendant had no offices or staff in forum state); *see* Taylor Decl. ¶¶ 8, 11-12.  Rather, the "vast majority of [both companies'] employees and business activities are located" elsewhere.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (finding no general jurisdiction for that reason); *see* Taylor Decl. ¶ 8.  FIL's and Fenix Internet's contacts with California thus "fall well short of the requisite showing for general jurisdiction." *Mavrix*, 647 F.3d at 1225.[6]

### 2.   Neither FIL nor Fenix Internet is Subject to Specific Jurisdiction in California.

Specific jurisdiction exists over a defendant only when:  (1) the defendant "purposefully direct[s] his activities toward the forum"; (2) the plaintiff's claims "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) the court's exercise of jurisdiction would "comport with fair play and substantial justice, i.e., it [would] be reasonable." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Id*.  A plaintiff "bears the burden to establish the first two prongs." *Id*..  If a plaintiff does so, "the burden then shifts to

---

[6] The SAC's vague allegations that FIL "does business throughout the United States, including with hundreds or thousands of residents of Riverside County," SAC ¶ 8, are immaterial.  "'[D]oing business' has long been abandoned as the test for general jurisdiction." *Ranza*, 793 F.3d at 1070. The Supreme Court has squarely "rejected the proposition that there is general jurisdiction over a corporation 'in every State in which a corporation "engages in a substantial, continuous, and systematic course of business."'" *Caces-Tiamson v.  Equifax*, 2020 WL 1322889, at *2 (N.D. Cal. 2020) (quoting *Daimler*, 571 U.S. at 137).

1    the defendant to 'present a compelling case' that the exercise of jurisdiction would not

2    be reasonable." *Schwarzenegger*, 374 F.3d at 802.

3         Here, Plaintiffs do not survive the first step because the SAC fails to allege facts

4    showing that FIL or Fenix Internet purposefully directed suit-related acts at California.

5    To show that a defendant purposefully directed acts at a state, the Plaintiff must show

6    that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum

7    state, (3) causing harm that the defendant knows is likely to be suffered in the forum

8    state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

9         **FIL**.  As to FIL, the SAC's basic theory seems to be that personal jurisdiction

10   exists because *Plaintiffs* were in California when they used OnlyFans.  SAC ¶ 41.  But

11   as the Supreme Court has emphasized, a finding of purposeful direction "must arise out

12   of contacts that the *defendant himself creates* with the forum State."  *Walden v. Fiore*,

13   571 U.S. 277, 284 (2014) (emphasis added).  Accordingly, allegations that Plaintiffs

14   suffered injury in California as a result of Defendants' actions or omissions are

15   insufficient to support specific jurisdiction.  *See Caces-Tiamson*, 2020 WL 1322889, at

16   *3; *see also In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1161

17   (S.D. Cal. 2018) ("As the Supreme Court made clear in *Walden v. Fiore*, something

18   more is required than 'imposition of an injury … to be suffered by the plaintiff while

19   she is residing in the forum state.'").  Put simply, *Plaintiffs'* choice to access OnlyFans

20   from California does not demonstrate that *FIL* directed acts at the state.  *See, e.g.*, *In re*

21   *Packaged Seafood Prods.*, 338 F. Supp. 3d at 1161.

22        Nor, for similar reasons, is it sufficient that FIL "does business … with hundreds

23   or thousands of [*other*] residents" of California.  SAC ¶ 8.  Courts have made clear that

24

a finding of purposeful direction cannot "be based on the mere fact that [a company] provides services to customers nationwide, including but not limited to California"—yet that is all Plaintiffs allege.  *Caces-Tiamson*, 2020 WL 132889, at *3; *see also, e.g.*, *Ariix, LLC v. NutriSearch Corp.*, 2022 WL 837072, at *3 (S.D. Cal. 2022).  That is because, again, the purposeful direction inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285; *see also Caces-Tiamson*, 2020 WL 132889 at *3.  And, again, the mere fact that some (or even many) individuals make the choice to access a globally accessible website from a particular state does not demonstrate that the *defendant* purposefully targeted that state.

Applying those principles, the Ninth Circuit has rejected a jurisdictional theory materially indistinguishable from Plaintiffs', holding that a foreign defendant who operated an adult-content website available worldwide did not expressly aim acts at California just because many—in that case, 20%—of the site's visitors happened to reside there.  *See AMA*, 970 F.3d at 1210-11.  That is because the question is not whether the website's *users* resided in the forum, but whether the website *itself* had a "forum-specific focus."  *Id.* at 1210; *see also, e.g., Elliot v. Cessna Aircraft Co*., 2021 WL 2153820, at *3 (C.D. Cal. 2021) ("[O]perating a universally accessible website alone is generally insufficient to satisfy the express aiming requirement."); *Imageline, Inc. v. Hendricks*, 2009 WL 10286181, at *5 (C.D. Cal. 2009) (similar).  *AMA* further held that merely offering "adult content" that consumers can access from the United States fails to show such a focus, because the "market for [such] content is global." *AMA*, 970 F.3d at 1210-11.  The same conclusion follows here:  The SAC does not

allege that OnlyFans has a "California focus"—nor can it.  So, there can be no personal jurisdiction here (regardless of whether Plaintiffs or others choose to access OnlyFans here).

**Fenix Internet**.  As to Fenix Internet, the SAC's theory of jurisdiction hinges on its allegation that Fenix Internet "is, or has been, continuously in possession of money wrongfully taken from Plaintiff."  SAC ¶ 9.  Even on its own terms, that allegation fails to show any relationship between Fenix Internet and *California.*  At most, it shows a relationship between Fenix Internet and Plaintiffs—which the Supreme Court has held is insufficient to establish personal jurisdiction.  *See Walden*, 571 U.S. at 285.  In fact, Fenix Internet has not taken—and does not take—any relevant actions specifically directed to California at all.  It only performs payment processing and provides administrative support services for FIL.  Taylor Decl. ¶ 7.  Specifically, at FIL's direction, Fenix Internet collects from third-party processors payments made by Fans and distributes the money it collects through other third-party processors to Creators in the United States.  Taylor Decl. ¶ 6.  Accordingly, there is no basis for holding that Fenix Internet is subject to specific jurisdiction here.

### C.    The SAC Must Be Dismissed for Lack of Constitutional or Statutory Standing.

Article III standing requires a plaintiff to show (among other things) that "he suffered an injury … [that] was likely caused by the defendant."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  So does statutory standing under the UCL, FAL, and CLRA.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1049 (9th Cir. 2017) ("[P]laintiffs seeking relief under California's [UCL] and/or [FAL] must … show that th[eir] economic injury was the result of, i.e., *caused by*, the unfair

1  business practice or false advertising that is the gravamen of the claim.”); *Doe v.*

2  *SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (to “bring a claim

3  under the CLRA” the plaintiff must show “she suffered any damage *as a result of* a

4  proscribed practice under the CLRA” (emphasis added)).

5      Here, that causation requirement means that Plaintiffs must show “actual

6  reliance” on false or misleading statements “in order to have standing to pursue” their

7  claims under the UCL, CLRA, and FAL.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d

8  1007, 1020 (9th Cir. 2020) (UCL and FAL); *Doe*, 70 F. Supp. 3d at 1075 (CLRA).  But

9  Plaintiffs cannot show that requisite causation.  Although Plaintiffs’ SAC highlights

10  certain examples of Plaintiffs’ OnlyFans transactions in isolation, Plaintiffs’ full

11  OnlyFans transaction histories paint a very different picture and show that Plaintiffs

12  already knew of (because FIL clearly disclosed) the automatically renewing nature of

13  Plaintiffs’ OnlyFans subscriptions—which is why Plaintiffs were able to (and did)

14  actively manage their OnlyFans subscriptions and exercise their rights to cancel before

15  the renewal dates.[7]

16      The SAC’s allegations relating to Plaintiff Muto, for instance, describe only his

17  subscription to “@taste.of.heaven” in February 2021 (and his supposed failure to

18  understand that that single subscription would renew if not cancelled).  SAC ¶¶ 28-30.

19  But in the year leading up to that subscription, Plaintiff Muto subscribed to—and

20  cancelled—22 subscriptions to other Creators prior to the renewal date.  Taylor Decl.

21

22  ─────────────────────

23  [7] In considering a motion to dismiss for lack of standing, courts may consider evidence outside the
pleadings.  *See supra* n.2.  In any event, as Plaintiffs’ own SAC references their OnlyFans transaction
history, that history is incorporated by reference, to allow the Court to understand Plaintiffs’
allegations in “context.”  *See Knievel*, 393 F.3d at 1076.

24

¶¶ 32-33 & Ex. E.  What is more, Plaintiff Muto often effected these cancellations *within hours of initially subscribing*, thus making clear that at the time of purchase he not only knew that his subscriptions would renew if not cancelled and that he could cancel his subscriptions prior to the renewal date to avoid future charges, but also that even after he cancelled, he would maintain access to that Creator's content until the end of the subscription period, as disclosed in FIL's Terms of Service.

This pattern is evident throughout his subscription history, both before and after his subscription to "@taste.of.heaven."  Indeed, Plaintiff Muto cancelled his *very first Creator* subscription ("Camilla Escobar") prior to the renewal deadline, which he subscribed to years before the subscriptions at issue in his SAC (in December 2019). *Id.*  He then re-subscribed to "Camilla Escobar" three months later, again cancelling the subscription almost immediately thereafter.  *Id.* ¶ 33 & Ex. E.  Plaintiff Muto repeated this pattern of subscribing to content, cancelling the subscription before it renewed and then re-subscribing and almost immediately cancelling the subscriptions again with *three* other Creators.  *Id.*  This same pattern continued after the subscriptions at issue in the SAC, as well.  In the two months following Plaintiff Muto's decision to subscribe to "@taste.of.heaven," Plaintiff Muto subscribed to eight Creators and, in all instances, cancelled his subscription on the very same day.  *Id.* ¶ 35 & Ex. E.  Plaintiff Muto's course of conduct on OnlyFans demonstrates that from the first time he subscribed to a Creator, through his decision to describe to "@taste.of.heaven," and continuing well after, he clearly understood the renewal terms of his OnlyFans subscriptions and operated within them.  He cannot plausibly allege now that any damages he claims to have suffered from allowing his subscription to "@taste.of.heaven" to renew were

caused by alleged renewal compliance shortcomings by FIL.

Plaintiff Breeze's transaction history shows a similar course of conduct. The SAC focuses on a single renewal fee that Plaintiff Breeze incurred in relation to his subscription to "@cheriedeville" on January 24, 2022. SAC ¶¶ 31-33. What it omits, however, is that Plaintiff Breeze had previously purchased—and cancelled—a subscription to that *very same Creator*. Taylor Decl. ¶ 38 & Ex. F. In addition, Plaintiff Breeze subscribed to and then cancelled eight other subscriptions to Creators prior to the renewal date (many within minutes of first subscribing). Taylor Decl. ¶¶ 40, 42 & Ex. F. So just like Plaintiff Muto's, Plaintiff Breeze's transaction history demonstrates that he understood how OnlyFans subscription renewals—and cancellations—worked. He cannot now claim (much less demonstrate) that the $14.99 renewal charge he incurred was caused by OnlyFans' failure to adequately disclose that very same knowledge to him.

### D. Plaintiffs' Claims Against Fenix Internet Must Be Dismissed for Failure to State a Claim.

Even if the SAC survived all the legal challenges above, Plaintiffs' suit would still, at a minimum, have to be dismissed for failure to state a claim against Fenix Internet. That is because Plaintiffs do not plead any facts showing that Fenix Internet has violated any of the statutes that the SAC attempts to assert. Each of Plaintiffs' three claims—under the FAL, the CLRA, and the UCL—turns on representations that were made (or allegedly failed to be made) on the OnlyFans website. *See, e.g.*, SAC ¶¶ 41, 47, 53. As explained above, Fenix Internet does not operate OnlyFans, and is not responsible for the representations or disclosures that do or do not appear on the platform. In fact, Plaintiffs' substantive theory of Fenix Internet's supposed

involvement is simply that it "is, or has been, continuously in possession of money wrongfully taken from Plaintiff." SAC ¶ 9. But merely possessing Plaintiffs' money is not a violation of the FAL, CLRA, and UCL—and, critically, does nothing to establish that Fenix Internet is responsible for any of the actions or omissions that form the basis for Plaintiffs' claims. Accordingly, in all events, Fenix Internet must be dismissed from this action.

**IV.    CONCLUSION**

For the foregoing reasons, FIL and Fenix Internet respectfully request that this Court dismiss Plaintiffs' SAC with prejudice.

Dated:        March 10, 2023              Respectfully Submitted,

                                         **ORRICK HERRINGTON &**
                                         **SUTCLIFFE LLP**

                                         By: */s/ Jacob M. Heath*
                                         JACOB M. HEATH (SBN 238959)
                                         jheath@orrick.com
                                         1000 Marsh Road
                                         Menlo Park, CA 94025-1015
                                         Tel:   +1 650 614 7400
                                         Fax:   +1 650 614 7401

                                         *Attorneys for Defendants Fenix International*
                                         *Limited and Fenix Internet LLC*

**Certificate of Compliance Pursuant to L.R. 11-6.2**

The undersigned, counsel of record for Fenix International Limited and Fenix Internet LLC, certifies that this brief contains approximately 6,893 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jacob M. Heath*

Jacob M. Heath