# Exhibit C

*Status:* This is the original version (as it was originally made).

## STATUTORY INSTRUMENTS

# 2013 No. 3134

# CONSUMER PROTECTION

## The Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013

| | |
|---|---|
| *Made* - - - - | *11th December 2013* |
| *Laid before Parliament* | *13th December 2013* |
| *Coming into force* - - | *13th June 2014* |

The Secretary of State, as a Minister designated for the purposes of section 2(2) of the European Communities Act 1972(**1**) in relation to matters relating to consumer protection(**2**), makes the following Regulations in exercise of the powers conferred by section 2(2) of that Act.

## PART 1

### General

**Citation and commencement**

**1.**—(1)  These Regulations may be cited as the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013 and come into force on 13th June 2014.

(2)  These Regulations apply in relation to contracts entered into on or after that date.

**Regulations superseded**

**2.**  The following do not apply in relation to contracts entered into on or after 13th June 2014—

(a)  the Consumer Protection (Distance Selling) Regulations 2000(**3**);

(b)  the Cancellation of Contracts made in a Consumer's Home or Place of Work etc Regulations 2008(**4**).

---

(**1**)  1972 c. 68.
(**2**)  Article 2 of, and the Schedule to, The European Communities (Designation) (No. 3) Order 1993 (S.I. 1993/2661).
(**3**)  S.I. 2000/2334.
(**4**)  S.I. 2008/1816.

*Document Generated: 2022-08-21*

*Status:  This is the original version (as it was originally made).*

**Review**

**3.**—(1)  The Secretary of State must before the end of each review period—

(a)  carry out a review of these Regulations,

(b)  set out the conclusions of the review in a report, and

(c)  publish the report.

(2)  In carrying out the review, the Secretary of State must, so far as is reasonable, have regard to what is done in other member States to implement Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights, amending Council Directive 93/13/EEC and Directive 1999/44/EC of the European Parliament and of the Council and repealing Council Directive 85/577/EC and Directive 97/7/EC of the European Parliament and of the Council(**5**).

(3)  The report must in particular—

(a)  set out the objectives intended to be achieved by these Regulations,

(b)  assess the extent to which those objectives have been achieved, and

(c)  assess whether those objectives remain appropriate and, if so, the extent to which they could be achieved in a way that imposes less regulation.

(4)  A review period is—

(a)  the period of 5 years beginning with the day on which these Regulations come into force, and

(b)  each successive period of 5 years.

**"Consumer" and "trader"**

**4.**  In these Regulations—

"consumer" means an individual acting for purposes which are wholly or mainly outside that individual's trade, business, craft or profession;

"trader" means a person acting for purposes relating to that person's trade, business, craft or profession, whether acting personally or through another person acting in the trader's name or on the trader's behalf.

**Other definitions**

**5.**  In these Regulations—

"business" includes the activities of any government department or local or public authority;

"business premises" in relation to a trader means—

(a)  any immovable retail premises where the activity of the trader is carried out on a permanent basis, or

(b)  any movable retail premises where the activity of the trader is carried out on a usual basis;

"CMA" means the Competition and Markets Authority(**6**);

"commercial guarantee", in relation to a contract, means any undertaking by the trader or producer to the consumer (in addition to the trader's duty to supply goods that are in conformity with the contract) to reimburse the price paid or to replace, repair or service goods in any way if they do not meet the specifications or any other requirements not related to conformity set

---

(**5**)  OJ No L 304, 22.11.2011, p.64.
(**6**)  The Competition and Markets Authority was established by section 25 of the Enterprise and Regulatory Reform Act 2013 (c. 24)

*Document Generated: 2022-08-21*

**Status:** *This is the original version (as it was originally made).*

out in the guarantee statement or in the relevant advertising available at the time of the contract or before it is entered into;

"court"—

(a)    in relation to England and Wales, means the county court or the High Court,

(b)    in relation to Northern Ireland, means a county court or the High Court, and

(c)    in relation to Scotland means the sheriff court or the Court of Session;

"delivery" means voluntary transfer of possession from one person to another;

"digital content" means data which are produced and supplied in digital form;

"distance contract" means a contract concluded between a trader and a consumer under an organised distance sales or service-provision scheme without the simultaneous physical presence of the trader and the consumer, with the exclusive use of one or more means of distance communication up to and including the time at which the contract is concluded;

"district heating" means the supply of heat (in the form of steam or hot water or otherwise) from a central source of production through a transmission and distribution system to heat more than one building;

"durable medium" means paper or email, or any other medium that—

(a)    allows information to be addressed personally to the recipient,

(b)    enables the recipient to store the information in a way accessible for future reference for a period that is long enough for the purposes of the information, and

(c)    allows the unchanged reproduction of the information stored;

"functionality" in relation to digital content includes region coding, restrictions incorporated for the purposes of digital rights management, and other technical restrictions;

"goods" means any tangible moveable items, but that includes water, gas and electricity if and only if they are put up for sale in a limited volume or a set quantity;

"off-premises contract" means a contract between a trader and a consumer which is any of these—

(a)    a contract concluded in the simultaneous physical presence of the trader and the consumer, in a place which is not the business premises of the trader;

(b)    a contract for which an offer was made by the consumer in the simultaneous physical presence of the trader and the consumer, in a place which is not the business premises of the trader;

(c)    a contract concluded on the business premises of the trader or through any means of distance communication immediately after the consumer was personally and individually addressed in a place which is not the business premises of the trader in the simultaneous physical presence of the trader and the consumer;

(d)    a contract concluded during an excursion organised by the trader with the aim or effect of promoting and selling goods or services to the consumer;

"on-premises contract" means a contract between a trader and a consumer which is neither a distance contract nor an off-premises contract;

"public auction" means a method of sale where—

(a)    goods or services are offered by a trader to consumers through a transparent, competitive bidding procedure run by an auctioneer,

(b)    the consumers attend or are given the possibility to attend in person, and

(c)    the successful bidder is bound to purchase the goods or services;

*Document Generated: 2022-08-21*

*Status:* This is the original version (as it was originally made).

"sales contract" means a contract under which a trader transfers or agrees to transfer the ownership of goods to a consumer and the consumer pays or agrees to pay the price, including any contract that has both goods and services as its object;

"service" includes—

(a)   the supply of water, gas or electricity if they are not put up for sale in a limited volume or a set quantity, and

(b)   the supply of district heating;

"service contract" means a contract, other than a sales contract, under which a trader supplies or agrees to supply a service to a consumer and the consumer pays or agrees to pay the price.

**Limits of application: general**

**6.**—(1)  These Regulations do not apply to a contract, to the extent that it is—

(a)   for—

(i) gambling within the meaning of the Gambling Act 2005(**7**) (which includes gaming, betting and participating in a lottery); or

(ii) in relation to Northern Ireland, for betting, gaming or participating lawfully in a lottery within the meaning of the Betting, Gaming, Lotteries and Amusements (Northern Ireland) Order 1985(**8**);

(b)   for services of a banking, credit, insurance, personal pension, investment or payment nature;

(c)   for the creation of immovable property or of rights in immovable property;

(d)   for rental of accommodation for residential purposes;

(e)   for the construction of new buildings, or the construction of substantially new buildings by the conversion of existing buildings;

(f)   for the supply of foodstuffs, beverages or other goods intended for current consumption in the household and which are supplied by a trader on frequent and regular rounds to the consumer's home, residence or workplace;

(g)   within the scope of Council Directive 90/314/EEC of 13 June 1990 on package travel, package holidays and package tours(**9**);

(h)   within the scope of Directive 2008/122/EC of the European Parliament and of the Council on the protection of consumers in respect of certain aspects of timeshare, long-term holiday product, resale and exchange contracts(**10**).

(2)  These Regulations do not apply to contracts—

(a)   concluded by means of automatic vending machines or automated commercial premises;

(b)   concluded with a telecommunications operator through a public telephone for the use of the telephone;

(c)   concluded for the use of one single connection, by telephone, internet or fax, established by a consumer;

(d)   under which goods are sold by way of execution or otherwise by authority of law.

(3)  Paragraph (1)(b) is subject to regulations 38(4) (ancillary contracts) and 40(3) (additional payments).

---

(**7**)   2005 c.19.
(**8**)   S.I. 1985/1204 (N.I. 11).
(**9**)   OJ No L 158, 23.6.1990, p.59.
(**10**)   OJ No L 33, 3.2.2009, p.10.

*Document Generated: 2022-08-21*
***Status:*** *This is the original version (as it was originally made).*

# PART 2

## Information requirements

### CHAPTER 1

#### Provision of information

**Application of Part 2**

**7.**—(1)  This Part applies to on-premises, off-premises and distance contracts, subject to paragraphs (2), (3) and (4) and regulation 6.

(2) This Part does not apply to contracts to the extent that they are—

    (a) for the supply of a medicinal product by administration by a prescriber, or under a prescription or directions given by a prescriber;

    (b) for the supply of a product by a health care professional or a person included in a relevant list, under arrangements for the supply of services as part of the health service, where the product is one that, at least in some circumstances is available under such arrangements free or on prescription.

(3) This Part, except for regulation 14(1) to (5), does not apply to contracts to the extent that they are for passenger transport services.

(4) This Part does not apply to off-premises contracts under which the payment to be made by the consumer is not more than £42.

(5) In paragraph (2)—

"health care professional" and "prescriber" have the meaning given by regulation 2(1) of the National Health Service (Pharmaceutical and Local Pharmaceutical Services) Regulations 2013(**11**);

"health service" means—

    (a)    the health service as defined by section 275(1) of the National Health Service Act 2006(**12**) or section 206(1) of the National Health Service (Wales) Act 2006(**13**),

    (b)    the health service as defined by section 108(1) of the National Health Service (Scotland) Act 1978(**14**), or

    (c)    any of the health services under section 2(1)(a) of the Health and Social Care (Reform) Act (Northern Ireland) 2009(**15**);

"medicinal product" has the meaning given by regulation 2(1) of the Human Medicines Regulations 2012(**16**);

"relevant list" means—

    (d)    a relevant list for the purposes of the National Health Service (Pharmaceutical and Local Pharmaceutical Services) Regulations 2013(**17**), or

    (e)    a list maintained under those Regulations.

---

(**11**) S.I. 2013/349.
(**12**) 2006 c.41.
(**13**) 2006 c.42.
(**14**) 1978 c.29.
(**15**) 2006 c.41 (N.I): section 1 was substituted by section 1 of the Health and Social Care Act 2012 (c.7).
(**16**) S.I. 2012/1916.
(**17**) S.I. 2013/349.

*Document Generated: 2022-08-21*

*Status:* This is the original version (as it was originally made).

### Making information etc available to a consumer

**8.** For the purposes of this Part, something is made available to a consumer only if the consumer can reasonably be expected to know how to access it.

### Information to be provided before making an on-premises contract

**9.**—(1)  Before the consumer is bound by an on-premises contract, the trader must give or make available to the consumer the information described in Schedule 1 in a clear and comprehensible manner, if that information is not already apparent from the context.

(2)  Paragraph (1) does not apply to a contract which involves a day-to-day transaction and is performed immediately at the time when the contract is entered into.

(3)  Any information that the trader gives the consumer as required by this regulation is to be treated as included as a term of the contract.

(4)  A change to any of that information, made before entering into the contract or later, is not effective unless expressly agreed between the consumer and the trader.

### Information to be provided before making an off-premises contract

**10.**—(1)  Before the consumer is bound by an off-premises contract, the trader—

  (a)  must give the consumer the information listed in Schedule 2 in a clear and comprehensible manner, and

  (b)  if a right to cancel exists, must give the consumer a cancellation form as set out in part B of Schedule 3.

(2)  The information and any cancellation form must be given on paper or, if the consumer agrees, on another durable medium and must be legible.

(3)  The information referred to in paragraphs (l), (m) and (n) of Schedule 2 may be provided by means of the model instructions on cancellation set out in part A of Schedule 3; and a trader who has supplied those instructions to the consumer, correctly filled in, is to be treated as having complied with paragraph (1) in respect of those paragraphs.

(4)  If the trader has not complied with paragraph (1) in respect of paragraph (g), (h) or (m) of Schedule 2, the consumer is not to bear the charges or costs referred to in those paragraphs.

(5)  Any information that the trader gives the consumer as required by this regulation is to be treated as included as a term of the contract.

(6)  A change to any of that information, made before entering into the contract or later, is not effective unless expressly agreed between the consumer and the trader.

(7)  This regulation is subject to regulation 11.

### Provision of information in connection with repair or maintenance contracts

**11.**—(1)  If the conditions in paragraphs (2), (3) and (4) are met, regulation 10(1) does not apply to an off-premises contract where—

  (a)  the contract is a service contract,

  (b)  the consumer has explicitly requested the trader to supply the service for the purpose of carrying out repairs or maintenance,

  (c)  the obligations of the trader and the consumer under the contract are to be performed immediately, and

  (d)  the payment to be made by the consumer is not more than £170.

*Document Generated: 2022-08-21*

***Status:*** *This is the original version (as it was originally made).*

(2)  The first condition is that, before the consumer is bound by the contract, the trader gives or makes available to the consumer on paper or, if the consumer expressly agrees, on another durable medium—

(a)  the information referred to in paragraphs (b) to (d), (f) and (g) of Schedule 2,

(b)  an estimate of the total price, where it cannot reasonably be calculated in advance, and

(c)  where a right to cancel exists, a cancellation form as set out in part B of Schedule 3.

(3)  The second condition is that, before the consumer is bound by the contract, the trader gives or makes available to the consumer the information referred to in paragraphs (a), (l) and (o) of Schedule 2, either on paper or another durable medium or otherwise if the consumer expressly agrees.

(4)  The third condition is that the confirmation of the contract provided in accordance with regulation 12 contains the information required by regulation 10(1).

(5)  For the right to cancel where this regulation applies, see in particular—

(a)  regulation 28(1)(e) and (2) (cases where cancellation excluded: visit requested for urgent work);

(b)  regulation 36 (form of consumer's request, and consequences).

**Provision of copy or confirmation of off-premises contracts**

**12.**—(1)  In the case of an off-premises contract, the trader must give the consumer—

(a)  a copy of the signed contract, or

(b)  confirmation of the contract.

(2)  The confirmation must include all the information referred to in Schedule 2 unless the trader has already provided that information to the consumer on a durable medium prior to the conclusion of the off-premises contract.

(3)  The copy or confirmation must be provided on paper or, if the consumer agrees, on another durable medium.

(4)  The copy or confirmation must be provided within a reasonable time after the conclusion of the contract, but in any event—

(a)  not later than the time of the delivery of any goods supplied under the contract, and

(b)  before performance begins of any service supplied under the contract.

(5)  If the contract is for the supply of digital content not on a tangible medium and the consumer has given the consent and acknowledgement referred to in regulation 37(1)(a) and (b), the copy or confirmation must include confirmation of the consent and acknowledgement.

**Information to be provided before making a distance contract**

**13.**—(1)  Before the consumer is bound by a distance contract, the trader—

(a)  must give or make available to the consumer the information listed in Schedule 2 in a clear and comprehensible manner, and in a way appropriate to the means of distance communication used, and

(b)  if a right to cancel exists, must give or make available to the consumer a cancellation form as set out in part B of Schedule 3.

(2)  In so far as the information is provided on a durable medium, it must be legible.

(3)  The information referred to in paragraphs (l), (m) and (n) of Schedule 2 may be provided by means of the model instructions on cancellation set out in part A of Schedule 3; and a trader who has

*Document Generated: 2022-08-21*
***Status:*** *This is the original version (as it was originally made).*

supplied those instructions to the consumer, correctly filled in, is to be treated as having complied with paragraph (1) in respect of those paragraphs.

(4) Where a distance contract is concluded through a means of distance communication which allows limited space or time to display the information—

  (a) the information listed in paragraphs (a), (b), (f), (g), (h), (l) and (s) of Schedule 2 must be provided on that means of communication in accordance with paragraphs (1) and (2), but

  (b) the other information required by paragraph (1) may be provided in another appropriate way.

(5) If the trader has not complied with paragraph (1) in respect of paragraph (g), (h) or (m) of Schedule 2, the consumer is not to bear the charges or costs referred to in those paragraphs.

(6) Any information that the trader gives the consumer as required by this regulation is to be treated as included as a term of the contract.

(7) A change to any of that information, made before entering into the contract or later, is not effective unless expressly agreed between the consumer and the trader.

### Requirements for distance contracts concluded by electronic means

**14.**—(1) This regulation applies where a distance contract is concluded by electronic means.

(2) If the contract places the consumer under an obligation to pay, the trader must make the consumer aware in a clear and prominent manner, and directly before the consumer places the order, of the information listed in paragraphs (a), (f), (g), (h), (s) and (t) of Schedule 2.

(3) The trader must ensure that the consumer, when placing the order, explicitly acknowledges that the order implies an obligation to pay.

(4) If placing an order entails activating a button or a similar function, the trader must ensure that the button or similar function is labelled in an easily legible manner only with the words 'order with obligation to pay' or a corresponding unambiguous formulation indicating that placing the order entails an obligation to pay the trader.

(5) If the trader has not complied with paragraphs (3) and (4), the consumer is not bound by the contract or order.

(6) The trader must ensure that any trading website through which the contract is concluded indicates clearly and legibly, at the latest at the beginning of the ordering process, whether any delivery restrictions apply and which means of payment are accepted.

### Telephone calls to conclude a distance contract

**15.** If the trader makes a telephone call to the consumer with a view to concluding a distance contract, the trader must, at the beginning of the conversation with the consumer, disclose—

  (a) the trader's identity,

  (b) where applicable, the identity of the person on whose behalf the trader makes the call, and

  (c) the commercial purpose of the call.

### Confirmation of distance contracts

**16.**—(1) In the case of a distance contract the trader must give the consumer confirmation of the contract on a durable medium.

(2) The confirmation must include all the information referred to in Schedule 2 unless the trader has already provided that information to the consumer on a durable medium prior to the conclusion of the distance contract.

*Document Generated: 2022-08-21*
**Status:** *This is the original version (as it was originally made).*

(3)  If the contract is for the supply of digital content not on a tangible medium and the consumer has given the consent and acknowledgment referred to in regulation 37(1)(a) and (b), the confirmation must include confirmation of the consent and acknowledgement.

(4)  The confirmation must be provided within a reasonable time after the conclusion of the contract, but in any event—

  (a)  not later than the time of delivery of any goods supplied under the contract, and

  (b)  before performance begins of any service supplied under the contract.

(5) For the purposes of paragraph (4), the confirmation is treated as provided as soon as the trader has sent it or done what is necessary to make it available to the consumer.

### Burden of proof in relation to off-premises and distance contracts

**17.**—(1)  In case of dispute about the trader's compliance with any provision of regulations 10 to 16, it is for the trader to show that the provision was complied with.

(2)  That does not apply to proceedings—

  (a)  for an offence under regulation 19, or

  (b)  relating to compliance with an injunction, interdict or order under regulation 45.

### Effect on contract of failure to provide information

**18.**  Every contract to which this Part applies is to be treated as including a term that the trader has complied with the provisions of—

  (a)  regulations 9 to 14, and

  (b)  regulation 16.

## CHAPTER 2

### Offences

### Offence relating to the failure to give notice of the right to cancel

**19.**—(1)  A trader is guilty of an offence if the trader enters into an off-premises contract to which regulation 10 applies but fails to give the consumer the information listed in paragraph (l), (m) or (n) of Schedule 2 in accordance with that regulation.

(2)  A person who is guilty of an offence under paragraph (1) is liable on summary conviction to a fine not exceeding level 5 on the standard scale.

### Defence of due diligence

**20.**—(1)  In any proceedings against a person (A) for an offence under regulation 19 it is a defence for A to prove—

  (a)  that the commission of the offence was due to—

    (i) the act or default of another, or

    (ii) reliance on information given by another, and

  (b)  that A took all reasonable precautions and exercised all due diligence to avoid the commission of such an offence by A or any person under A's control.

(2)  A person is not entitled to rely on the defence provided by paragraph (1) without leave of the court unless—

*Document Generated: 2022-08-21*

**Status:** *This is the original version (as it was originally made).*

    (a)  that person has served on the prosecutor a notice in writing giving such information as was in that person's possession identifying or assisting in the identification of the other person; and

    (b)  the notice is served on the prosecutor not less than 7 days before the hearing of the proceedings or, in Scotland, 7 days before the intermediate diet or 14 days before the trial diet, whichever is earlier.

**Liability of persons other than the principal offender**

**21.**  Where the commission by a person of an offence under regulation 19 is due to the act or default of another person, that other person is guilty of the offence and may be proceeded against and punished whether or not proceedings are taken against the first person.

**Offences committed by bodies of persons**

**22.**—(1)  Where an offence under regulation 19 committed by a body corporate is proved—

    (a)  to have been committed with the consent or connivance of an officer of the body corporate or

    (b)  to be attributable to any neglect on the part of an officer of the body corporate,

the officer, as well as the body corporate, is guilty of the offence and liable to be proceeded against and punished accordingly.

(2)  In paragraph (1) a reference to an officer of a body corporate includes a reference to—

    (a)  a director, manager, secretary or other similar officer; and

    (b)  a person purporting to act as a director, manager, secretary or other similar officer.

(3)  Where an offence under regulation 19 committed in Scotland by a Scottish partnership is proved—

    (a)  to have been committed with the consent or connivance of a partner, or

    (b)  to be attributable to any neglect on the part of a partner,

that partner, as well as the partnership shall be guilty of the offence and liable to be proceeded against and punished accordingly.

(4)  In paragraph (3) a reference to a partner includes a person purporting to act as a partner.

**Duty to enforce**

**23.**—(1)  Subject to paragraphs (2) and (3)—

    (a)  it is the duty of every weights and measures authority in Great Britain to enforce regulation 19 within its area; and

    (b)  it is the duty of the Department of Enterprise, Trade and Investment in Northern Ireland to enforce regulation 19 within Northern Ireland.

(2)  No proceedings for an offence under regulation 19 may be instituted in England and Wales except by or on behalf of an enforcement authority.

(3)  Nothing in paragraph (1) authorises any weights and measures authority to bring proceedings in Scotland for an offence.

**Powers of investigation**

**24.**—(1)  If a duly authorised officer of an enforcement authority has reasonable grounds for suspecting that an offence has been committed under regulation 19, the officer may require a person

*Document Generated: 2022-08-21*
**Status:**  *This is the original version (as it was originally made).*

carrying on or employed in a business to produce any document relating to the business, and take copies of it or any entry in it for the purposes of ascertaining whether such an offence has been committed.

(2)  If the officer has reasonable grounds for believing that any documents may be required as evidence in proceedings for such an offence, the officer may seize and detain them and shall, if the officer does so, inform the person from whom they are seized.

(3)  In this regulation "document" includes information recorded in any form.

(4)  The reference in paragraph (1) to production of documents is, in the case of a document which contains information recorded otherwise than in a legible form, a reference to the production of a copy of the information in a legible form.

(5)  An officer seeking to exercise a power under this regulation must do so only at a reasonable hour and on production of the officer's identification and authority.

(6)  Nothing in this regulation requires a person to produce or provide, or authorises a person to inspect or take possession of, anything in respect of which a claim to legal professional privilege (in Scotland, to confidentiality of communications) could be maintained in legal proceedings.

### Obstruction of authorised officers

**25.**—(1)  A person commits an offence if that person—

    (a) intentionally obstructs an officer of an enforcement authority acting in pursuance of functions under regulation 24;

    (b) fails without reasonable cause to comply with any requirement properly made by such an officer under regulation 24; or

    (c) fails without reasonable cause to give such an officer any other assistance or information which the officer may reasonably require for the purpose of the performance of functions under regulation 24.

(2)  A person giving any information which is required from that person under paragraph (1)(c) is guilty of an offence if, in doing so, the person makes any statement knowing it to be false in a material particular.

(3)  A person guilty of an offence under paragraph (1) or (2) is liable on summary conviction to a fine not exceeding level 3 on the standard scale.

### Freedom from self-incrimination

**26.**  Nothing in regulation 24 or 25 is to be construed as requiring a person to answer any question or give any information if to do so might incriminate that person.

# PART 3

## Right to cancel

### Application of Part 3

**27.**—(1)  This Part applies to distance and off-premises contracts between a trader and a consumer, subject to paragraphs (2) and (3) and regulations 6 and 28.

(2)  This Part does not apply to contracts to the extent that they are—

    (a) for the supply of a medicinal product by administration by a prescriber, or under a prescription or directions given by a prescriber;

*Document Generated: 2022-08-21*

*Status:  This is the original version (as it was originally made).*

(b)  for the supply of a product by a health care professional or a person included in a relevant list, under arrangements for the supply of services as part of the health service, where the product is one that, at least in some circumstances is available under such arrangements free or on prescription;

(c)  for passenger transport services.

(3)  This Part does not apply to off-premises contracts under which the payment to be made by the consumer is not more than £42.

(4)  In paragraph (2)(a) and (b), expressions defined in regulation 7(5) have the meaning given there.

**Limits of application: circumstances excluding cancellation**

**28.**—(1)  This Part does not apply as regards the following—

(a)  the supply of—

(i)  goods, or

(ii)  services, other than supply of water, gas, electricity or district heating,

for which the price is dependent on fluctuations in the financial market which cannot be controlled by the trader and which may occur within the cancellation period;

(b)  the supply of goods that are made to the consumer's specifications or are clearly personalised;

(c)  the supply of goods which are liable to deteriorate or expire rapidly;

(d)  the supply of alcoholic beverages, where—

(i)  their price has been agreed at the time of the conclusion of the sales contract,

(ii)  delivery of them can only take place after 30 days, and

(iii)  their value is dependent on fluctuations in the market which cannot be controlled by the trader;

(e)  contracts where the consumer has specifically requested a visit from the trader for the purpose of carrying out urgent repairs or maintenance;

(f)  the supply of a newspaper, periodical or magazine with the exception of subscription contracts for the supply of such publications;

(g)  contracts concluded at a public auction;

(h)  the supply of accommodation, transport of goods, vehicle rental services, catering or services related to leisure activities, if the contract provides for a specific date or period of performance.

(2)  Sub-paragraph (e) of paragraph (1) does not prevent this Part applying to a contract for—

(a)  services in addition to the urgent repairs or maintenance requested, or

(b)  goods other than replacement parts necessarily used in making the repairs or carrying out the maintenance,

if the trader supplies them on the occasion of a visit such as is mentioned in that sub-paragraph.

(3)  The rights conferred by this Part cease to be available in the following circumstances—

(a)  in the case of a contract for the supply of sealed goods which are not suitable for return due to health protection or hygiene reasons, if they become unsealed after delivery;

(b)  in the case of a contract for the supply of sealed audio or sealed video recordings or sealed computer software, if the goods become unsealed after delivery;

*Document Generated: 2022-08-21*

**Status:** *This is the original version (as it was originally made).*

    (c) in the case of any sales contract, if the goods become mixed inseparably (according to their nature) with other items after delivery.

**Right to cancel**

**29.**—(1) The consumer may cancel a distance or off-premises contract at any time in the cancellation period without giving any reason, and without incurring any liability except under these provisions—

    (a) regulation 34(3) (where enhanced delivery chosen by consumer);

    (b) regulation 34(9) (where value of goods diminished by consumer handling);

    (c) regulation 35(5) (where goods returned by consumer);

    (d) regulation 36(4) (where consumer requests early supply of service).

(2) The cancellation period begins when the contract is entered into and ends in accordance with regulation 30 or 31.

(3) Paragraph (1) does not affect the consumer's right to withdraw an offer made by the consumer to enter into a distance or off-premises contract, at any time before the contract is entered into, without giving any reason and without incurring any liability.

**Normal cancellation period**

**30.**—(1) The cancellation period ends as follows, unless regulation 31 applies.

(2) If the contract is—

    (a) a service contract, or

    (b) a contract for the supply of digital content which is not supplied on a tangible medium,

the cancellation period ends at the end of 14 days after the day on which the contract is entered into.

(3) If the contract is a sales contract and none of paragraphs (4) to (6) applies, the cancellation period ends at the end of 14 days after the day on which the goods come into the physical possession of—

    (a) the consumer, or

    (b) a person, other than the carrier, identified by the consumer to take possession of them.

(4) If the contract is a sales contract under which multiple goods are ordered by the consumer in one order but some are delivered on different days, the cancellation period ends at the end of 14 days after the day on which the last of the goods come into the physical possession of—

    (a) the consumer, or

    (b) a person, other than the carrier, identified by the consumer to take possession of them.

(5) If the contract is a sales contract under which goods consisting of multiple lots or pieces of something are delivered on different days, the cancellation period ends at the end of 14 days after the day on which the last of the lots or pieces come into the physical possession of—

    (a) the consumer, or

    (b) a person, other than the carrier, identified by the consumer to take possession of them.

(6) If the contract is a sales contract for regular delivery of goods during a defined period of more than one day, the cancellation period ends at the end of 14 days after the day on which the first of the goods come into the physical possession of—

    (a) the consumer, or

    (b) a person, other than the carrier, identified by the consumer to take possession of them.

*Document Generated: 2022-08-21*

**Status:**  *This is the original version (as it was originally made).*

**Cancellation period extended for breach of information requirement**

**31.**—(1)  This regulation applies if the trader does not provide the consumer with the information on the right to cancel required by paragraph (l) of Schedule 2, in accordance with Part 2.

(2)  If the trader provides the consumer with that information in the period of 12 months beginning with the first day of the 14 days mentioned in regulation 30(2) to (6), but otherwise in accordance with Part 2, the cancellation period ends at the end of 14 days after the consumer receives the information.

(3)  Otherwise the cancellation period ends at the end of 12 months after the day on which it would have ended under regulation 30.

**Exercise of the right to withdraw or cancel**

**32.**—(1)  To withdraw an offer to enter into a distance or off-premises contract, the consumer must inform the trader of the decision to withdraw it.

(2)  To cancel a contract under regulation 29(1), the consumer must inform the trader of the decision to cancel it.

(3)  To inform the trader under paragraph (2) the consumer may either—

    (a)  use a form following the model cancellation form in part B of Schedule 3, or

    (b)  make any other clear statement setting out the decision to cancel the contract.

(4)  If the trader gives the consumer the option of filling in and submitting such a form or other statement on the trader's website—

    (a)  the consumer need not use it, but

    (b)  if the consumer does, the trader must communicate to the consumer an acknowledgement of receipt of the cancellation on a durable medium without delay.

(5)  Where the consumer informs the trader under paragraph (2) by sending a communication, the consumer is to be treated as having cancelled the contract in the cancellation period if the communication is sent before the end of the period.

(6)  In case of dispute it is for the consumer to show that the contract was cancelled in the cancellation period in accordance with this regulation.

**Effect of withdrawal or cancellation**

**33.**—(1)  If a contract is cancelled under regulation 29(1)—

    (a)  the cancellation ends the obligations of the parties to perform the contract, and

    (b)  regulations 34 to 38 apply.

(2)  Regulations 34 and 38 also apply if the consumer withdraws an offer to enter into a distance or off-premises contract.

**Reimbursement by trader in the event of withdrawal or cancellation**

**34.**—(1)  The trader must reimburse all payments, other than payments for delivery, received from the consumer, subject to paragraph (10).

(2)  The trader must reimburse any payment for delivery received from the consumer, unless the consumer expressly chose a kind of delivery costing more than the least expensive common and generally acceptable kind of delivery offered by the trader.

(3)  In that case, the trader must reimburse any payment for delivery received from the consumer up to the amount the consumer would have paid if the consumer had chosen the least expensive common and generally acceptable kind of delivery offered by the trader.

*Document Generated: 2022-08-21*

**Status:** *This is the original version (as it was originally made).*

(4) Reimbursement must be without undue delay, and in any event not later than the time specified in paragraph (5) or (6).

(5) If the contract is a sales contract and the trader has not offered to collect the goods, the time is the end of 14 days after—

    (a) the day on which the trader receives the goods back, or

    (b) if earlier, the day on which the consumer supplies evidence of having sent the goods back.

(6) Otherwise, the time is the end of 14 days after the day on which the trader is informed of the consumer's decision to withdraw the offer or cancel the contract, in accordance with regulation 44.

(7) The trader must make the reimbursement using the same means of payment as the consumer used for the initial transaction, unless the consumer has expressly agreed otherwise.

(8) The trader must not impose any fee on the consumer in respect of the reimbursement.

(9) If (in the case of a sales contract) the value of the goods is diminished by any amount as a result of handling of the goods by the consumer beyond what is necessary to establish the nature, characteristics and functioning of the goods, the trader may recover that amount from the consumer, up to the contract price.

(10) An amount that may be recovered under paragraph (9)—

    (a) may be deducted from the amount to be reimbursed under paragraph (1);

    (b) otherwise, must be paid by the consumer to the trader.

(11) Paragraph (9) does not apply if the trader has failed to provide the consumer with the information on the right to cancel required by paragraph (l) of Schedule 2, in accordance with Part 2.

(12) For the purposes of paragraph (9) handling is beyond what is necessary to establish the nature, characteristics and functioning of the goods if, in particular, it goes beyond the sort of handling that might reasonably be allowed in a shop.

(13) Where the provisions of this regulation apply to cancellation of a contract, the contract is to be treated as including those provisions as terms.

### Return of goods in the event of cancellation

**35.**—(1) Where a sales contract is cancelled under regulation 29(1), it is the trader's responsibility to collect the goods if—

    (a) the trader has offered to collect them, or

    (b) in the case of an off-premises contract, the goods were delivered to the consumer's home when the contract was entered into and could not, by their nature, normally be returned by post.

(2) If it is not the trader's responsibility under paragraph (1) to collect the goods, the consumer must—

    (a) send them back, or

    (b) hand them over to the trader or to a person authorised by the trader to receive them.

(3) The address to which goods must be sent under paragraph (2)(a) is—

    (a) any address specified by the trader for sending the goods back;

    (b) if no address is specified for that purpose, any address specified by the trader for the consumer to contact the trader;

    (c) if no address is specified for either of those purposes, any place of business of the trader.

*Document Generated: 2022-08-21*

*Status:* This is the original version (as it was originally made).

(4)  The consumer must send off the goods under paragraph (2)(a), or hand them over under paragraph (2)(b), without undue delay and in any event not later than 14 days after the day on which the consumer informs the trader as required by regulation 32(2).

(5)  The consumer must bear the direct cost of returning goods under paragraph (2), unless—

    (a)  the trader has agreed to bear those costs, or

    (b)  the trader failed to provide the consumer with the information about the consumer bearing those costs, required by paragraph (m) of Schedule 2, in accordance with Part 2.

(6)  The contract is to be treated as including a term that the trader must bear the direct cost of the consumer returning goods under paragraph (2) where paragraph (5)(b) applies.

(7)  The consumer is not required to bear any other cost of returning goods under paragraph (2).

(8)  The consumer is not required to bear any cost of collecting goods under paragraph (1) unless the consumer agreed to bear them.

**Supply of service in cancellation period**

**36.**—(1)  The trader must not begin the supply of a service before the end of the cancellation period provided for in regulation 30(1) unless the consumer—

    (a)  has made an express request, and

    (b)  in the case of an off-premises contract, has made the request on a durable medium.

(2)  In the case of a service other than supply of water, gas, electricity or district heating, the consumer ceases to have the right to cancel a service contract under regulation 29(1) if the service has been fully performed, and performance of the service began—

    (a)  after a request by the consumer in accordance with paragraph (1), and

    (b)  with the acknowledgement that the consumer would lose that right once the contract had been fully performed by the trader.

(3)  Paragraphs (4) to (6) apply where a contract is cancelled under regulation 29(1) and a service has been supplied in the cancellation period.

(4)  Where the service is supplied in response to a request in accordance with paragraph (1), the consumer must (subject to paragraph (6)) pay to the trader an amount—

    (a)  for the supply of the service for the period for which it is supplied, ending with the time when the trader is informed of the consumer's decision to cancel the contract, in accordance with regulation 32(2), and

    (b)  which is in proportion to what has been supplied, in comparison with the full coverage of the contract.

(5)  The amount is to be calculated—

    (a)  on the basis of the total price agreed in the contract, or

    (b)  if the total price is excessive, on the basis of the market value of the service that has been supplied, calculated by comparing prices for equivalent services supplied by other traders.

(6)  The consumer bears no cost for supply of the service, in full or in part, in the cancellation period, if—

    (a)  the trader has failed to provide the consumer with the information on the right to cancel required by paragraph (l) of Schedule 2, or the information on payment of that cost required by paragraph (n) of that Schedule, in accordance with Part 2, or

    (b)  the service is not supplied in response to a request in accordance with paragraph (1).

*Document Generated: 2022-08-21*
***Status:*** *This is the original version (as it was originally made).*

**Supply of digital content in cancellation period**

**37.**—(1)  Under a contract for the supply of digital content not on a tangible medium, the trader must not begin supply of the digital content before the end of the cancellation period provided for in regulation 30(1), unless—

(a)  the consumer has given express consent, and

(b)  the consumer has acknowledged that the right to cancel the contract under regulation 29(1) will be lost.

(2)  The consumer ceases to have the right to cancel such a contract under regulation 29(1) if, before the end of the cancellation period, supply of the digital content has begun after the consumer has given the consent and acknowledgement required by paragraph (1).

(3)  Paragraph (4) applies where a contract is cancelled under regulation 29(1) and digital content has been supplied, not on a tangible medium, in the cancellation period.

(4)  The consumer bears no cost for supply of the digital content, in full or in part, in the cancellation period, if—

(a)  the consumer has not given prior express consent to the beginning of the performance of the digital content before the end of the 14-day period referred to in regulation 30,

(b)  the consumer gave that consent but did not acknowledge when giving it that the right to cancel would be lost, or

(c)  the trader failed to provide confirmation required by regulation 12(5) or 16(3).

**Effects of withdrawal or cancellation on ancillary contracts**

**38.**—(1)  If a consumer withdraws an offer to enter into a distance or off-premises contract, or cancels such a contract under regulation 29(1), any ancillary contracts are automatically terminated, without any costs for the consumer, other than any costs under these provisions—

(a)  regulation 34(3) (where enhanced delivery chosen by consumer);

(b)  regulation 34(9) (where value of goods diminished by consumer handling);

(c)  regulation 35(5) (where goods returned by consumer);

(d)  regulation 36(4) (where consumer requests early supply of service).

(2)  When a trader is informed by a consumer under regulation 32(1) or (2) of a decision to withdraw an offer or cancel a contract, the trader must inform any other trader with whom the consumer has an ancillary contract that is terminated by paragraph (1).

(3)  An "ancillary contract", in relation to a distance or off-premises contract (the "main contract"), means a contract by which the consumer acquires goods or services related to the main contract, where those goods or services are provided—

(a)  by the trader, or

(b)  by a third party on the basis of an arrangement between the third party and the trader.

(4)  Regulation 6(1)(b) (exclusion of financial services contracts) does not limit the contracts that are ancillary contracts for the purposes of this regulation.

*Status:* This is the original version (as it was originally made).

# PART 4

## Protection from inertia selling and additional charges

**Inertia selling**

**39.** Before regulation 28 of the Consumer Protection from Unfair Trading Regulations 2008(**18**). (and in Part 5 of those Regulations) insert—

> "**Inertia selling**
>
> **27A.**—(1)  This regulation applies where a trader engages in the unfair commercial practice described in paragraph 29 of Schedule 1 (inertia selling).
>
> (2)  The consumer is exempted from any obligation to provide consideration for the products supplied by the trader.
>
> (3)  The absence of a response from the consumer following the supply does not constitute consent to the provision of consideration for, or the return or safekeeping of, the products.
>
> (4)  In the case of an unsolicited supply of goods, the consumer may, as between the consumer and the trader, use, deal with or dispose of the goods as if they were an unconditional gift to the consumer.".

**Additional payments under a contract**

**40.**—(1)  Under a contract between a trader and a consumer, no payment is payable in addition to the remuneration agreed for the trader's main obligation unless, before the consumer became bound by the contract, the trader obtained the consumer's express consent.

(2)  There is no express consent (if there would otherwise be) for the purposes of this paragraph if consent is inferred from the consumer not changing a default option (such as a pre-ticked box on a website).

(3)  This regulation does not apply if the trader's main obligation is to supply services within regulation 6(1)(b), but in any other case it applies even if an additional payment is for such services.

(4)  Where a trader receives an additional payment which, under this regulation, is not payable under a contract, the contract is to be treated as providing for the trader to reimburse the payment to the consumer.

**Help-line charges over basic rate**

**41.**—(1)  Where a trader operates a telephone line for the purpose of consumers contacting the trader by telephone in relation to contracts entered into with the trader, a consumer contacting the trader must not be bound to pay more than the basic rate.

(2)  If in those circumstances a consumer who contacts a trader in relation to a contract is bound to pay more than the basic rate, the contract is to be treated as providing for the trader to pay to the consumer any amount by which the charge paid by the consumer for the call is more than the basic rate.

---

(**18**)  S.I. 2008/1277.

*Document Generated: 2022-08-21*

*Status:* This is the original version (as it was originally made).

# PART 5

## Delivery and risk

**Time for delivery of goods**

**42.**—(1)  This regulation applies to any sales contract.

(2)  Unless the trader and the consumer have agreed otherwise, the contract is to be treated as including a term that the trader must deliver the goods to the consumer.

(3)  Unless there is an agreed time or period, the contract is to be treated as including a term that the trader must deliver the goods—

  (a)  without undue delay, and

  (b)  in any event, not more than 30 days after the day on which the contract is entered into.

(4)  In this regulation—

  (a)  an "agreed" time or period means a time or period agreed by the trader and the consumer for delivery of the goods, but

  (b)  if there is an obligation to deliver the goods at the time the contract is entered into, that time counts as the "agreed" time.

(5)  Paragraphs (6) and (7) apply if the trader does not deliver the goods in accordance with paragraph (3) or at the agreed time or within the agreed period.

(6)  If the circumstances are that—

  (a)  the trader has refused to deliver the goods,

  (b)  delivery of the goods at the agreed time or within the agreed period is essential taking into account all the relevant circumstances at the time the contract was entered into, or

  (c)  the consumer told the trader before the contract was entered into that delivery in accordance with paragraph (3), or at the agreed time or within the agreed period, was essential,

then the consumer may treat the contract as at an end.

(7)  In any other circumstances, the consumer may specify a period that is appropriate in the circumstances and require the trader to deliver the goods before the end of that period.

(8)  If the consumer specifies a period under paragraph (7) but the goods are not delivered within that period, then the consumer may treat the contract as at an end.

(9)  If the consumer treats the contract as at an end under paragraph (6) or (8), the trader must without undue delay reimburse all payments made under the contract.

(10)  If paragraph (6) or (8) applies but the consumer does not treat the contract as at an end—

  (a)  that does not prevent the consumer from cancelling the order for any of the goods or rejecting goods that have been delivered, and

  (b)  the trader must without undue delay reimburse all payments made under the contract in respect of any goods for which the consumer cancels the order or which the consumer rejects.

(11)  If any of the goods form a commercial unit, then the consumer cannot reject or cancel the order for some of those goods without also rejecting or cancelling the order for the rest of them.

(12)  A unit is a "commercial unit" if division of the unit would materially impair the value of the goods or the character of the unit.

(13)  This regulation does not prevent the consumer seeking other remedies where it is open to the consumer to do so.

*Document Generated: 2022-08-21*

**Status:** *This is the original version (as it was originally made).*

**Passing of risk**

**43.**—(1)  A sales contract is to be treated as including the following provisions as terms.

(2)  The goods remain at the trader's risk until they come into the physical possession of—

    (a)  the consumer, or

    (b)  a person identified by the consumer to take possession of the goods.

(3)  Paragraph (2) does not apply if the goods are delivered to a carrier who—

    (a)  is commissioned by the consumer to deliver the goods, and

    (b)  is not a carrier the trader named as an option for the consumer.

(4)  In that case the goods are at the consumer's risk on and after delivery to the carrier.

(5)  Paragraph (4) does not affect any liability of the carrier to the consumer in respect of the goods.

# PART 6

## Enforcement

**Complaints**

**44.**—(1)  It is the duty of an enforcement authority to consider any complaint made to it about a contravention of these Regulations, unless—

    (a)  the complaint appears to the authority to be frivolous or vexatious, or

    (b)  another enforcement authority has notified the CMA that it agrees to consider the complaint.

(2)  If an enforcement authority has notified the CMA as mentioned in paragraph (1)(b), that authority is under a duty to consider the complaint.

(3)  The following are enforcement authorities for the purposes of these Regulations—

    (a)  every local weights and measures authority in Great Britain;

    (b)  the Department of Enterprise, Trade and Investment in Northern Ireland.

**Orders to secure compliance**

**45.**—(1)  An enforcement authority may apply for an injunction, or in Scotland an interdict or order of specific implement, against any person who appears to the authority to be responsible for a contravention of these Regulations.

(2)  The court on an application under this regulation may grant an injunction, interdict or order on such terms as it thinks fit to secure compliance with these Regulations.

**Notification of undertakings and orders to the CMA**

**46.**  An enforcement authority must notify the CMA—

    (a)  of any undertaking given to it by or on behalf of any person who appears to it to be responsible for a contravention of these Regulations;

    (b)  of the outcome of any application made by it under regulation 45, and of the terms of any undertaking given to the court or of any order made by the court;

    (c)  of the outcome of any application made by it to enforce a previous order of the court.

*Document Generated: 2022-08-21*

**Status:**  *This is the original version (as it was originally made).*

# PART 7

## Consequential amendments

**Consequential amendments**

**47.**  Schedule 4 makes amendments that are consequential on these Regulations.

*Jo Swinson*
Parliamentary Under-Secretary of State for
Employment Relations and Consumer Affairs
Department for Business, Innovation and Skills

11th December 2013

*Document Generated: 2022-08-21*
**Status:**  *This is the original version (as it was originally made).*

SCHEDULE 1 <span style="float:right">Regulation 9(1)</span>

Information relating to on-premises contracts

The information referred to in regulation 9(1) is—

    (a)  the main characteristics of the goods or services, to the extent appropriate to the medium of communication and to the goods or services;

    (b)  the identity of the trader (such as the trader's trading name), the geographical address at which the trader is established and the trader's telephone number;

    (c)  the total price of the goods or services inclusive of taxes, or where the nature of the goods or services is such that the price cannot reasonably be calculated in advance, the manner in which the price is to be calculated;

    (d)  where applicable, all additional delivery charges or, where those charges cannot reasonably be calculated in advance, the fact that such additional charges may be payable;

    (e)  where applicable, the arrangements for payment, delivery, performance, and the time by which the trader undertakes to deliver the goods or to perform the service;

    (f)  where applicable, the trader's complaint handling policy;

    (g)  in the case of a sales contract, a reminder that the trader is under a legal duty to supply goods that are in conformity with the contract;

    (h)  where applicable, the existence and the conditions of after-sales services and commercial guarantees;

    (i)  the duration of the contract, where applicable, or, if the contract is of indeterminate duration or is to be extended automatically, the conditions for terminating the contract;

    (j)  where applicable, the functionality, including applicable technical protection measures, of digital content;

    (k)  where applicable, any relevant compatibility of digital content with hardware and software that the trader is aware of or can reasonably be expected to have been aware of.

SCHEDULE 2 <span style="float:right">Regulations 10(1) and 13(1)</span>

Information relating to distance and off-premises contracts

The information referred to in regulations 10(1) and 13(1) is (subject to the note at the end of this Schedule)—

    (a)  the main characteristics of the goods or services, to the extent appropriate to the medium of communication and to the goods or services;

    (b)  the identity of the trader (such as the trader's trading name);

    (c)  the geographical address at which the trader is established and, where available, the trader's telephone number, fax number and e-mail address, to enable the consumer to contact the trader quickly and communicate efficiently;

    (d)  where the trader is acting on behalf of another trader, the geographical address and identity of that other trader;

    (e)  if different from the address provided in accordance with paragraph (c), the geographical address of the place of business of the trader, and, where the trader acts on behalf of another trader, the geographical address of the place of business of that other trader, where the consumer can address any complaints;

*Document Generated: 2022-08-21*
**Status:**  *This is the original version (as it was originally made).*

(f)   the total price of the goods or services inclusive of taxes, or where the nature of the goods or services is such that the price cannot reasonably be calculated in advance, the manner in which the price is to be calculated,

(g)   where applicable, all additional delivery charges and any other costs or, where those charges cannot reasonably be calculated in advance, the fact that such additional charges may be payable;

(h)   in the case of a contract of indeterminate duration or a contract containing a subscription, the total costs per billing period or (where such contracts are charged at a fixed rate) the total monthly costs;

(i)   the cost of using the means of distance communication for the conclusion of the contract where that cost is calculated other than at the basic rate;

(j)   the arrangements for payment, delivery, performance, and the time by which the trader undertakes to deliver the goods or to perform the services;

(k)   where applicable, the trader's complaint handling policy;

(l)   where a right to cancel exists, the conditions, time limit and procedures for exercising that right in accordance with regulations 27 to 38;

(m)   where applicable, that the consumer will have to bear the cost of returning the goods in case of cancellation and, for distance contracts, if the goods, by their nature, cannot normally be returned by post, the cost of returning the goods;

(n)   that, if the consumer exercises the right to cancel after having made a request in accordance with regulation 36(1), the consumer is to be liable to pay the trader reasonable costs in accordance with regulation 36(4);

(o)   where under regulation 28, 36 or 37 there is no right to cancel or the right to cancel may be lost, the information that the consumer will not benefit from a right to cancel, or the circumstances under which the consumer loses the right to cancel;

(p)   in the case of a sales contract, a reminder that the trader is under a legal duty to supply goods that are in conformity with the contract;

(q)   where applicable, the existence and the conditions of after-sale customer assistance, after-sales services and commercial guarantees;

(r)   the existence of relevant codes of conduct, as defined in regulation 5(3)(b) of the Consumer Protection from Unfair Trading Regulations 2008, and how copies of them can be obtained, where applicable;

(s)   the duration of the contract, where applicable, or, if the contract is of indeterminate duration or is to be extended automatically, the conditions for terminating the contract;

(t)   where applicable, the minimum duration of the consumer's obligations under the contract;

(u)   where applicable, the existence and the conditions of deposits or other financial guarantees to be paid or provided by the consumer at the request of the trader;

(v)   where applicable, the functionality, including applicable technical protection measures, of digital content;

(w)   where applicable, any relevant compatibility of digital content with hardware and software that the trader is aware of or can reasonably be expected to have been aware of;

(x)   where applicable, the possibility of having recourse to an out-of-court complaint and redress mechanism, to which the trader is subject, and the methods for having access to it.

Note: In the case of a public auction, the information listed in paragraphs (b) to (e) may be replaced with the equivalent details for the auctioneer.

*Document Generated: 2022-08-21*
**Status:** *This is the original version (as it was originally made).*

SCHEDULE 3                               Regulations 10 and 13

Information about the exercise of the right to cancel

## A. Model instructions for cancellation

*Right to cancel*

You have the right to cancel this contract within 14 days without giving any reason.

The cancellation period will expire after 14 days from the day [See Note 1].

To exercise the right to cancel, you must inform us [See Note 2] of your decision to cancel this contract by a clear statement (e.g. a letter sent by post, fax or e-mail). You may use the attached model cancellation form, but it is not obligatory. [See Note 3]

To meet the cancellation deadline, it is sufficient for you to send your communication concerning your exercise of the right to cancel before the cancellation period has expired.

*Effects of cancellation*

If you cancel this contract, we will reimburse to you all payments received from you, including th costs of delivery (except for the supplementary costs arising if you chose a type of delivery other than the least expensive type of standard delivery offered by us).
We may make a deduction from the reimbursement for loss in value of any goods supplied, if the loss is the result of unnecessary handling by you.
We will make the reimbursement without undue delay, and not later than—
(a) 14 days after the day we receive back from you any goods supplied, or
(b) (if earlier) 14 days after the day you provide evidence that you have returned the goods, or
(c) if there were no goods supplied,14 days after the day on which we are informed about your decision to cancel this contract.
We will make the reimbursement using the same means of payment as you used for the initial transaction, unless you have expressly agreed otherwise; in any event, you will not incur any fees as a result of the reimbursement. [See Note 4].

[See Note 5]

[See Note 6]

**Notes on instructions for completion:**

1.   Insert one of the following texts between inverted commas:

   (a)   in the case of a service contract or a contract for the supply of digital content which is not supplied on a tangible medium: "of the conclusion of the contract.";
   (b)   in the case of a sales contract: "on which you acquire, or a third party other than the carrier and indicated by you acquires, physical possession of the goods.";
   (c)   in the case of a contract relating to multiple goods ordered by the consumer in one order and delivered separately: "on which you acquire, or a third party other than the carrier and indicated by you acquires, physical possession of the last good.";
   (d)   in the case of a contract relating to delivery of a good consisting of multiple lots or pieces: "on which you acquire, or a third party other than the carrier and indicated by you acquires, physical possession of the last lot or piece.";

*Document Generated: 2022-08-21*
***Status:*** *This is the original version (as it was originally made).*

(e)  in the case of a contract for regular delivery of goods during a defined period of time: "on which you acquire, or a third party other than the carrier and indicated by you acquires, physical possession of the first good.".

2.  Insert your name, geographical address and, where available, your telephone number, fax number and e-mail address.

3.  If you give the option to the consumer to electronically fill in and submit information about the consumer's cancellation from the contract on your website, insert the following: "You can also electronically fill in and submit the model cancellation form or any other clear statement on our website [insert Internet address]. If you use this option, we will communicate to you an acknowledgement of receipt of such a cancellation on a durable medium (e.g. by e-mail) without delay.".

4.  In the case of sales contracts in which you have not offered to collect the goods in the event of cancellation insert the following: "We may withhold reimbursement until we have received the goods back or you have supplied evidence of having sent back the goods, whichever is the earliest.".

5.  If the consumer has received goods in connection with the contract

    (a)  insert:

        —"We will collect the goods."; or,

        —"You shall send back the goods or hand them over to us or … [insert the name and geographical address, where applicable, of the person authorised by you to receive the goods], without undue delay and in any event not later than 14 days from the day on which you communicate your cancellation from this contract to us. The deadline is met if you send back the goods before the period of 14 days has expired."

    (b)  insert:

        —"We will bear the cost of returning the goods.";

        —"You will have to bear the direct cost of returning the goods.";

        —If, in a distance contract, you do not offer to bear the cost of returning the goods and the goods, by their nature, cannot normally be returned by post: "You will have to bear the direct cost of returning the goods, … EUR [insert the amount]."; or if the cost of returning the goods cannot reasonably be calculated in advance: "You will have to bear the direct cost of returning the goods. The cost is estimated at a maximum of approximately … EUR [insert the amount]."; or

        —If, in an off-premises contract, the goods, by their nature, cannot normally be returned by post and have been delivered to the consumer's home at the time of the conclusion of the contract: "We will collect the goods at our own expense."; and,

    (c)  insert

        "You are only liable for any diminished value of the goods resulting from the handling other than what is necessary to establish the nature, characteristics and functioning of the goods."

6.  In the case of a service contract insert the following: "If you requested to begin the performance of services during the cancellation period, you shall pay us an amount which is

*Document Generated: 2022-08-21*

**Status:**  *This is the original version (as it was originally made).*

in proportion to what has been performed until you have communicated us your cancellation from this contract, in comparison with the full coverage of the contract.".

## B. Model cancellation form

To [here the trader's name, geographical address and, where available, fax number and e-mail address are to be inserted by the trader]:

I/We [*] hereby give notice that I/We [*] cancel my/our [*] contract of sale of the following goods [*]/for the supply of the following service [*],

Ordered on [*]/received on [*],

Name of consumer(s),

Address of consumer(s),

Signature of consumer(s) (only if this form is notified on paper),

Date

[*] Delete as appropriate.


SCHEDULE 4                                    Regulation 47

Consequential amendments

**Unsolicited Goods and Services Act 1971**

**1.** In section 6 of the Unsolicited Goods and Services Act 1971 (interpretation)(**19**), for subsection (3) substitute—

"(3)  Nothing in section 3 or 3B affects the rights of any consumer under the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013."

**Consumer Credit Act 1974**

**2.** In section 74 of the Consumer Credit Act 1974 (entry into credit or hire agreements: exclusion of certain agreements)(**20**), for subsection (2A) substitute—

"(2A)  In the case of an agreement to which Part 2 or 3 of the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013 applies, the reference in subsection (2) to a small agreement is to be read as if in section 17(1)(a) and (b) "£42" were substituted for "£50"."

---

(**19**)  1971 c.30.
(**20**)  1974 c.39.

*Document Generated: 2022-08-21*
**Status:** *This is the original version (as it was originally made).*

### Companies Act 1985

**3.** In paragraph 26 of Schedule 15D to the Companies Act 1985 (company investigations: disclosure for purposes of enforcement authority under Regulations)(**21**), for "the Consumer Protection (Distance Selling) Regulations 2000 (SI 2000/2334)" substitute "the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013".

### Financial Services (Distance Marketing) Regulations 2004

**4.** In regulation 11(1) of the Financial Services (Distance Marketing) Regulations 2004 (exceptions to right to cancel under those regulations)(**22**), for paragraph (e) substitute—

"(e)    a credit agreement terminated under regulation 50(1) of the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013 (automatic termination of related agreements)"."

### Supply of Extended Warranties on Domestic Electrical Goods Order 2005

**5.** In article 2 of the Supply of Extended Warranties on Domestic Electrical Goods Order 2005(**23**), for the words from "distance contracts" to the end substitute "distance or off-premises contracts to which Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights, amending Council Directive 93/13/EEC and Directive 1999/44/EC of the European Parliament and of the Council and repealing Council Directive 85/577/EC and Directive 97/7/EC of the European Parliament and of the Council applies."

### Companies Act 2006

**6.** In the following provisions of the Companies Act 2006 (provisions permitting disclosure of information for purposes of enforcement authority under Regulations)(**24**), for "the Consumer Protection (Distance Selling) Regulations 2000 (SI 2000/2334)" substitute "the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013"—

(a)  Schedule 2, Part 2, paragraph 34;

(b)  in Schedule 11A, paragraph 49.

### Waste Electrical & Electrical Equipment Regulations 2006

**7.** In regulation 2 of the Waste Electrical & Electrical Equipment Regulations 2006(**25**), in the definition of "producer"—

(a)  omit the words from "in accordance with" to "distance contacts";

(b)  at the end insert—

"(and distance communication here has the same meaning as in Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights, amending Council Directive 93/13/EEC and Directive 1999/44/EC of the European Parliament and of the Council and repealing Council Directive 85/577/EC and Directive 97/7/EC of the European Parliament and of the Council;)".

---

(**21**)  1985 c.6.
(**22**)  S.I. 2004/2095.
(**23**)  S.I. 2005/37.
(**24**)  2006 c.46.
(**25**)  S.I. 2006/3289.

**Status:** *This is the original version (as it was originally made).*

### Legislative and Regulatory Reform (Regulatory Functions) Order 2007

**8.**—(1)  In the Schedule to the Legislative and Regulatory Reform (Regulatory Functions) Order 2007 (functions to which sections 21 and 22 of the Legislative and Regulatory Reform Act 2006 apply)(**26**)—

(a) in Part 3, omit "Consumer Protection (Distance Selling) Regulations 2000" and "Cancellation of Contracts made in a Consumer's Home or Place of Work etc Regulations 2008";

(b) in Part 6, omit "Consumer Protection (Distance Selling) Regulations 2000";

(c) in Parts 3 and 6, insert in the appropriate place "Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013".

### Consumer Protection from Unfair Trading Regulations 2008

**9.**  In Schedule 1 to the Consumer Protection from Unfair Trading Regulations 2008(**27**), omit paragraph 29.

### Payment Services Regulations 2009

**10.**—(1)  In regulation 62 of the Payment Services Regulations 2009 (payer's liability for unauthorised payment transaction)(**28**), for paragraph (4) substitute—

"(4)  In paragraph (3)(c)—

"distance contract" means a distance contract as defined by regulation 5 of the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013;

"excepted contract" means a contract that—

(a) falls to any extent within regulation 6(1) of those Regulations, or

(b) falls within regulation 6(2) of those Regulations."

### Co-ordination of Regulatory Enforcement (Regulatory Functions in Scotland and Northern Ireland) Order 2009

**11.**  In Part 2 of Schedule 1 to the Co-ordination of Regulatory Enforcement (Regulatory Functions in Scotland and Northern Ireland) Order 2009 (functions specified for the purposes of Part 2 of the Regulatory Enforcement and Sanctions Act 2008)(**29**), for "Consumer Protection (Distance Selling) Regulations 2000" substitute "Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013".

### Waste Batteries and Accumulators Regulations 2009

**12.**  In regulation 2 of the Waste Batteries and Accumulators Regulations 2009(**30**), in the definition of "producer"—

(a) omit the words from "as defined in" to "distance contacts";

(b) at the end insert—

---

(**26**)  S.I. 2007/3544.
(**27**)  S.I. 2008/1277.
(**28**)  S.I. 2009/209.
(**29**)  S.I. 2009/669.
(**30**)  2009/890.

*Document Generated: 2022-08-21*
**Status:** *This is the original version (as it was originally made).*

"(and distance communication here has the same meaning as in Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights, amending Council Directive 93/13/EEC and Directive 1999/44/EC of the European Parliament and of the Council and repealing Council Directive 85/577/EC and Directive 97/7/EC of the European Parliament and of the Council;)".

### Unsolicited Services (Trade and Business Directories) Act (Northern Ireland) 2010

**13.** In section 1(2) of the Unsolicited Services (Trade and Business Directories) Act (Northern Ireland) 2010 (control of charges for directory entries)(**31**), for "the Consumer Protection (Distance Selling) Regulations 2000 (No. 2334)" substitute "the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013".

### Postal Services Act 2011 (Disclosure of Information) Order 2012

**14.** In regulation 4 of the Postal Services Act 2011 (Disclosure of Information) Order 2012 (prescribed enactments for disclosure of information)(**32**)—

(a) omit "the Consumer Protection (Distance Selling) Regulations 2000";

(b) at the appropriate place insert "the Consumer Contracts (Information, Cancellation and Additional Charges) Regulations 2013, so far as they apply to distance contracts;".

### Consumer Rights (Payment Surcharges) Regulations 2012

**15.**—(1) The Consumer Rights (Payment Surcharges) Regulations 2012(**33**) are amended as follows.

(2) In regulation 2, for the definition of "trader" substitute—

""trader" means a person acting for purposes relating to that person's trade, business, craft or profession, whether acting personally or through another person acting in the trader's name or on the trader's behalf."

(3) In regulation 3

(a) in the appropriate place insert—

""business" includes the activities of any government department or local or public authority;".

(b) in the definition of "sales contract" for "(whether or not the contract also covers services)" substitute ", including any contract that has both goods and services as its object".

### Enterprise Act (Part 8 Domestic Infringements) Order 2013

**16.** The Enterprise Act (Part 8 Domestic Infringements) Order 2013(**34**) is revoked.

---

(**31**) 2010 c.15 (N.I.).
(**32**) 2012/1128.
(**33**) S.I. 2012/3110.
(**34**) S.I. 2013/761.

*Document Generated: 2022-08-21*

**Status:**  *This is the original version (as it was originally made).*

---

## EXPLANATORY NOTE

### *(This note is not part of the Regulations)*

These Regulations implement most provisions of Directive 2011/83/EU of the European Parliament and of the Council of 25 October 2011 on consumer rights, amending Council Directive 93/13/EEC and Directive 1999/44/EC of the European Parliament and of the Council and repealing Council Directive 85/577/EEC and Directive 97/7/EC of the European Parliament and of the Council ("the Directive"). The remaining provisions of the Directive are implemented in the Consumer Rights (Payment Surcharges) Regulations 2012 ("the Payment Surcharges Regulations") and the Enterprise Act 2002 (Part 8 EU Infringements) Order 2013. That Order provides that enforcement procedures under Part 8 of the Enterprise Act 2002 apply in relation to a breach of these Regulations and the Payment Surcharges Regulations. A Transposition Note detailing how the Directive is implemented in the UK is available from the BIS website at www.gov.uk/bis.

The Regulations apply to contracts between traders and consumers, as defined in regulation 4. Some provisions of the Regulations apply only to on-premises contracts, some only to off-premises contracts, and some only to distance contracts; these terms are defined in regulation 5. Regulations 6, 7 and 27 provide for a number of excluded contracts (such as contracts for gambling, health services and services of a banking or insurance nature) to which provisions in the Regulations do not apply.

Part 2 of the Regulations requires traders to provide information to consumers in relation to contracts concluded between them. Regulation 9 and Schedule 1 specify the information (including the main characteristics of the goods or service, the identity of the trader and the total price) which a trader must provide to a consumer before entering into an on-premises contract. Regulations 10, 13 and Schedule 2 specify the information required for an off-premises contract or a distance contract (including delivery arrangements, the trader's complaint handling policy, if there is one, and cancellation rights). Regulations 12 and 16 require the trader to provide the consumer with a copy of the signed contract or confirmation of the contract, within a reasonable time after the conclusion of the contract. Regulation 18 provides that a term is implied into the contract between the trader and the consumer that the trader has complied with the information requirements in regulations 9 to 14 and 16. Regulation 19 provides that a trader is guilty of a criminal offence if the trader enters into an off-premises contract without having provided the information on cancellation rights specified by regulation 10 and Schedule 2.

Part 3 of the Regulations contains provisions concerning a consumer's right to cancel a distance or off-premises contract without giving any reason or incurring any costs other than those specified. Regulation 29 establishes the right to cancel. Regulation 30 provides for a cancellation period of 14 days calculated from the date of conclusion of the contract or the date of delivery, according to the type of contract. Regulation 31 provides that the cancellation period may be extended by up to 12 months if the trader does not provide the consumer with the information on cancellation rights specified in Schedule 2. Regulation 34 requires the trader to pay a refund to the consumer within 14 days of being informed of the cancellation or within 14 days of the goods being returned or evidence of return being provided; the trader may deduct from the refund an amount reflecting the diminished value of the goods caused by unnecessary handling by the consumer. Regulation 35 requires the consumer to return any goods to the trader and bear the cost of doing so, unless the trader has agreed to collect the goods or bear the costs of the consumer returning them. Regulations 36 and 37 provide that the consumer loses the right to cancel where a service or digital content is supplied during the cancellation period, if the consumer acknowledged that the right would be lost in those circumstances. Regulation 38 provides that an ancillary contract is automatically terminated on cancellation of the main contract.

*Document Generated: 2022-08-21*
**Status:** *This is the original version (as it was originally made).*

Part 4 of the Regulations contains provisions concerning protection from unsolicited sales and additional charges which have not been expressly agreed in advance. Regulation 39 introduces a new provision into the Consumer Protection Unfair Trading Regulations 2008 which provides that a consumer is not required to pay for the unsolicited supply of products. Regulation 40 provides that a consumer is not required to make payments in addition to those agreed for the trader's main obligation, unless the consumer gave express consent before conclusion of the contract. Regulation 41 provides that where the trader operates a telephone line for consumers to contact them about a contract entered into with the trader, the consumer must not be bound to pay more than the basic rate for such telephone calls.

Part 5 contains provisions relating to the delivery of goods and the passing of risk from the trader to the consumer. Regulation 42 sets out provisions relating to the delivery of goods. It provides that goods must be delivered without undue delay and in any event not more than 30 days after the date the contract is entered into. This applies unless the trader and consumer have agreed different arrangements, including cases where there is an obligation to deliver the goods at the time the contract is entered into. Regulation 43 deals with the passing of risk from the trader to the consumer in relation to sales contracts.

Part 6 contains provisions concerning enforcement of the Regulations. Regulations 44 to 46 provide that local weights and measures authorities and the Department of Enterprise, Trade and Investment in Northern Ireland may consider complaints about surcharges, and may apply to a court for an injunction (or in Scotland an interdict or order of specific implement) against a trader acting in breach of the Regulations.

Regulation 47 makes a number of consequential amendments to primary and secondary legislation which are necessary as a result of these Regulations. These are set out in Schedule 4.

The Regulations extend to England and Wales, Scotland and Northern Ireland. Regulation 2 provides that the Regulations supersede the Consumer Protection (Distance Selling) Regulations 2000 and the Cancellation of Contracts made in a Consumer's Home or Place of Work etc Regulations 2008. Regulation 3 requires the Secretary of State to review the Regulations within 5 years.

An impact assessment of the effect that the instrument will have on the costs of business, the voluntary sector and the public sector is available from the BIS website at www.gov.uk/bis.