Jacob M. Heath (SBN 238959)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401
jheath@orrick.com

Attorneys for Defendants
FENIX INTERNATIONAL LIMITED and
FENIX INTERNET LLC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELO MUTO, NOAH BREEZE, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FENIX INTERNATIONAL LIMITED; FENIX INTERNET LLC,<br><br>Defendants. | CASE NO. 5:22-cv-02164-SSS-KK<br><br>**DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Hearing Date: April 28, 2023<br>Time: 2:00 PM<br>Dept: Courtroom 2<br>Judge: Hon. Sunshine S. Sykes |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................- 1 -

II.  LEGAL ARGUMENT ..........................................................................- 2 -

      A.    Plaintiffs' Claims Should Be Dismissed For *Forum Non Conveniens*..............................................................................- 2 -

      B.    The SAC Should Be Dismissed For Lack of Personal Jurisdiction................................................................................- 7 -

      C.    The SAC Must Be Dismissed For Lack Of Standing.......................- 9 -

      D.    Plaintiffs' Claims Against Fenix Internet Must Be Dismissed For Failure To State A Claim. .......................................................- 10 -

III. CONCLUSION ....................................................................................- 10 -

CERTIFICATE OF COMPLIANCE ................................................................- 12 -


Case 5:22-cv-02164-SSS-DTB   Document 21   Filed 04/14/23   Page 3 of 17   Page ID #:463

# TABLE OF AUTHORITIES

**Federal Cases**

*Austin v. Budget Rental Car, Inc.*,
  2020 WL 8614183 (N.D. Cal. 2020) .......................................................................... 10

*Balboa Capital Corp. v. Shaya Med. P.C. Inc.*,
  2021 WL 6104011 (C.D. Cal. 2021) ............................................................................ 5

*Cabot Creekside 8 LLC v. Cabot Inv. Properties, LLC*,
  2011 WL 13223878 (C.D. Cal. 2011) ...................................................................... 5, 6

*California Hosp. Ass'n v. Maxwell-Jolly*,
  2010 WL 11526908 (C.D. Cal. 2010) .......................................................................... 9

*Cholakyan v. Mercedes-Benz USA, LLC*,
  2012 WL 12861143 (C.D. Cal. 2012) .......................................................................... 9

*In re Cnty. of Orange*,
  784 F.3d 520 (9th Cir. 2015) .................................................................................... 6, 7

*Cole-Parmer Instrument Co. LLC v. Prof'l Labs., Inc.*,
  2021 WL 3053201 (N.D. Cal. 2021) ............................................................................ 8

*U.S. ex rel. Collins Plumbing, Inc. v. Turner-Penick Joint Venture*,
  2013 WL 5462278 (S.D. Cal. 2013) ............................................................................. 6

*Compound Sols., Inc. v. CoreFX Ingredients, LLC*,
  2020 WL 3639663 (S.D. Cal. 2020) ............................................................................. 4

*Derosa v. Thor Motor Coach, Inc.*,
  2020 WL 6647734 (C.D. Cal. 2020) ............................................................................ 4

*Doe 1 v. AOL LLC*,
  552 F.3d 1077 (9th Cir. 2009) ...................................................................................... 2

*Hallsted v. JPMorgan Chase & Co.*,
  2017 WL 8186687 (C.D. Cal. 2017) ............................................................................ 7

*It's Just Lunch Int'l LLC v. Island Park Enter. Group, Inc.*,
  2009 WL 10671493 (C.D. Cal. 2009) ...................................................................... 6, 7

*Matus v. Premium Nutraceuticals, LLC*,
  2016 WL 3078745 (C.D. Cal. 2016) ................................................................... 8

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ........................................................................... 9

*Ogdon v. Grand Canyon Univ., Inc.*,
  2022 WL 846973 (E.D. Cal. 2022) ................................................................... 8

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ........................................................................... 5

*Price v. Facebook, Inc.*,
  2020 WL 6573279 (N.D. Cal. 2020) ................................................................. 2

*Schell v. Volkswagen AG*,
  2022 WL 187841 (9th Cir. 2022) ...................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................. 8

*Tillman v. L.A. Cnty. Dist. Attorney's Office*,
  2023 WL 2628684 (C.D. Cal. 2023) ................................................................ 10

*U.S. Sec. Holdings, Inc. v. Andrews*,
  2021 WL 6104394 (C.D. Cal. 2021) .................................................................. 7

**State Cases**

*America Online, Inc. v. Superior Court of Alameda County (Mendoza)*,
  90 Cal. App. 4th 1 (2001) ................................................................................... 2

*Walnut Producers of California v. Diamond Foods, Inc.*,
  187 Cal. App. 4th 634 (2010) ......................................................................... 2, 3

**Foreign Cases**

*Commission Recovery Ltd. v. Marks & Clerk LLP*,
  [2023] EWHC 398 (Comm) ............................................................................... 3

**State Statutes**

California Automatic Renewal Law ("ARL") .......................................................... 3, 4

DEFENDANTS'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

California's False Advertising Law ("FAL") ....................................................... 1, 4, 8, 9

California's Unfair Competition Law ("UCL") .................................................... 1, 4, 8, 9

Consumer Legal Remedies Act ................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 10

## I. INTRODUCTION

At every turn, Plaintiffs' Opposition flouts well-established law.

*First*, Plaintiffs insist that they need not honor their contractual promise to bring their claims in the United Kingdom (where Fenix International ("FIL") operates OnlyFans) because that would require them to give up supposedly unwaivable California rights to proceed in a "U.S.-style class action[]" and to a jury trial. As discussed below, the caselaw squarely rejects both claims.

*Second*, Plaintiffs argue that Defendants are subject to personal jurisdiction because—although neither *purposefully directed* acts at California—both *purposefully availed* themselves of its laws. The caselaw rejects that argument too, holding that the Court must apply a *purposeful direction* analysis for alleged violations of the California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act.

*Third*, Plaintiffs do not dispute that their OnlyFans transaction histories show that they lack standing to pursue the claims in this action, but instead maintain that this Court may not consider those case-dispositive histories because they are "extrinsic" to Plaintiffs' SAC. Opp. 18. Again, the caselaw says otherwise, holding that a defendant may rely on extrinsic evidence to support its attack on standing via a motion to dismiss.

*Finally*, Plaintiffs argue that—without having pled any facts showing that Fenix Internet, specifically, had any involvement in the violations alleged in the SAC—Fenix Internet must nevertheless remain in this action because "[a]ll three of the SAC's causes of action allege conduct by 'Defendants,'" collectively. Opp. 21. The caselaw holds the opposite: pleading as to "Defendants" collectively is insufficient.

The SAC thus fails, repeatedly, as a matter of law, and should be dismissed.

## II. LEGAL ARGUMENT

### A. Plaintiffs' Claims Should Be Dismissed For *Forum Non Conveniens*.

Plaintiffs do not dispute that they agreed to a binding forum-selection clause requiring this suit to be brought in England or Wales. Instead, they insist that clause is unenforceable, because it (1) violates California public policy and (2) is both procedurally and substantively unconscionable. Neither argument withstands scrutiny.

#### 1. *Enforcement of the forum-selection clause would not violate any public policy against class action waivers.*

Plaintiffs contend that the forum-selection clause would deprive them of their supposedly unwaivable *procedural* right to proceed in a "U.S.-style class action[]." Opp. 5. But there is no such categorical right, *see Walnut Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 652 (2010) ("[A] class action waiver is not void as against public policy" if it "does not affect an unwaivable *statutory* right." (emphasis added)), and California courts have enforced forum-selection clauses in putative class actions, *see, e.g., Price v. Facebook, Inc.*, 2020 WL 6573279, at *1 (N.D. Cal. 2020) (enforcing forum-selection clause choosing U.K. courts). Plaintiffs cite no case invaliding a forum-selection clause only for selecting a jurisdiction without "U.S.-style class actions."

Instead, Plaintiffs rely on two cases that involved forum-selection clauses that would *both* "waive [plaintiffs'] rights to a class action" *and* waive unwaivable "statutory remedies provided by the CLRA." *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009); *America Online, Inc. v. Superior Court of Alameda County (Mendoza)*, 90 Cal. App. 4th 1, 15 (2001). In other words, *AOL* and *Mendoza* are exactly the kinds of cases discussed in the prior paragraph—where the "class action waiver" *does* "affect an unwaivable statutory right" (there, under the CLRA), and so is unenforceable for *that*

reason. *Diamond Foods*, 187 Cal. App. 4th at 652. This case, however, is materially different, as enforcement of the forum-selection clause ***would not*** result in the waiver of any unwaivable statutory right. *See* MTD § IV.A.2.c; *infra* § II.A.1.b. Even if the forum-selection clause *would* prevent Plaintiffs from proceeding via class action (which, as explained below, it does not), it would still be enforceable under California law.

But Plaintiffs' argument is doubly wrong because, as explained by Antony White KC (a highly experienced barrister-at-law in England and Wales since 1983), if Plaintiffs file their case in England or Wales they *will* have numerous "procedural routes" for pursuing a "collective" action there, including "a so-called 'top-down' award." White Decl. ¶ 46. Plaintiffs insist—based on their own reading of English law without a supporting declaration—that that a "top-down" approach would be unavailable here, because "thousands of class members were each over-charged different amounts." Opp. 6. The courts of England and Wales have said otherwise, holding that even if the "amounts" of damages "may differ," so long as they "can be ascertained"—as is true here—this variability "do[es] not affect suitability for representative proceedings." *Commission Recovery Ltd. v. Marks & Clerk LLP*, [2023] EWHC 398 (Comm).

### 2. Enforcement of the forum-selection clause would not require waiver of any unwaivable statutory right.

Plaintiffs fare no better claiming that the forum-selection clause would waive unwaivable rights under either the CLRA or the Automatic Renewal Law ("ARL"). Opp. 7-8. With regard to their CLRA claim, Plaintiffs do not—and cannot—dispute that if they are able to bring their CLRA claim in English or Welsh courts, then the CLRA provides no basis for refusing to enforce the forum-selection clause as a matter of public policy. Opp. 7. Instead, Plaintiffs simply quibble with whether Defendants actually "'agree[d]'

that the CLRA is 'a mandatory rule of law in California'" such "that an English court would agree to apply" the CLRA "to Plaintiffs' claims." Opp. 7. As stated in the Motion to Dismiss, Defendants *have unambiguously agreed* that Plaintiffs can pursue their CLRA claim in English or Welsh courts. MTD at 14. To eliminate any doubt: Defendants stipulate that if Plaintiffs refile this case in England or Wales, as they contractually agreed to do, Plaintiffs may pursue their CLRA claim there as a mandatory rule of law under the choice-of-law provision. Where, as here, a defendant "stipulat[es] that [an unwaivable claim] will apply in the transferee court," there is no "risk of diminishing Plaintiff's statutory rights under California law." *Derosa v. Thor Motor Coach, Inc.*, 2020 WL 6647734, at *4 (C.D. Cal. 2020).

With regard to their ARL claim, Plaintiffs acknowledge that "the ARL does not include a private right of action," but is instead enforced by bringing claims "under the False Advertising Law [FAL] and Unfair Competition Law [UCL]." SAC ¶ 14. As Defendants have already demonstrated—and Plaintiffs do not dispute—courts have plainly held that the FAL and UCL do *not* create any "unwaivable right." *Compound Sols., Inc. v. CoreFX Ingredients, LLC*, 2020 WL 3639663, at *5 (S.D. Cal. 2020). It therefore follows that the ARL, which is incorporated into those two statutes, does not either, and Plaintiffs cite no authority to the contrary.[1]

### 3. The Forum-Selection Clause Is Not Unconscionable.

Plaintiffs' assertion that the forum-selection clause should be invalidated as

---

[1] In any event, even if the Court disagrees and concludes that the ARL does create "unwaivable" rights like the CRLA, it still would not provide a basis for refusing to enforce the forum-selection clause, for the same reason as discussed regarding the CLRA claim. Again, to remove any doubt, Defendants hereby stipulate that if this Court concludes that the ARL creates unwaivable rights, it will be applied by English or Welsh courts pursuant to the OnlyFans Terms.

unconscionable similarly fails. Plaintiffs concede that "[u]nder California law, a contract provision is unenforceable if it is **both** procedurally and substantively unconscionable." Opp. 8 (emphasis added). Plaintiffs insist, however, that both of those conditions are met here because they could not "eliminate the forum selection and choice of law clauses [from the OnlyFans Terms] through negotiation," Opp. 9, and because the "vast majority of Civil cases tried in [U.K.] court[s] do not have a jury," Opp. 10. The law does not support either argument—much less both.

Plaintiffs maintain that the forum-selection clause is procedurally unconscionable because the OnlyFans Terms are a contract of adhesion, i.e., "presented to all users on a take-it-or-leave-it basis," with no ability for a user to "eliminate the forum selection and choice of law clauses through negotiation." Opp. 9. But, as Plaintiffs admit, "[b]y their nature, internet contracts almost always fall into the category of adhesion contracts." Opp. 9. And so, by their own admission, Plaintiffs' argument would declare essentially *every* internet contract procedurally unconscionable. Courts, however, say otherwise, holding that "[t]he fact that a contract is adhesive" is just the beginning, "not [the] end [of] the inquiry regarding procedural unconscionability." *Cabot Creekside 8 LLC v. Cabot Inv. Properties, LLC*, 2011 WL 13223878, at *10 (C.D. Cal. 2011); *see also, e.g.*, *Balboa Capital Corp. v. Shaya Med. P.C. Inc.*, 2021 WL 6104011, at *3 (C.D. Cal. 2021). In fact, Plaintiffs rely primarily on a case which undermines their own position, stating that "the adhesive nature of a contract, without more, would give rise to a low degree of procedural unconscionability at most." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261-62 (9th Cir. 2017); *see also id.* at 1261 ("[T]he California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable.").

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

- 5 -

Given the "minimal evidence of procedural unconscionability," the forum-selection clause can be avoided "only on a showing of significant substantive unconscionability." *Cabot Creekside 8 LLC*, 2011 WL 13223878, at *12. Plaintiffs assert that the forum-selection clause is "substantively unconscionable" because its enforcement would require Plaintiffs "to waive their right to a jury trial," since jury trials are less common in the United Kingdom than in California. Opp. 10. As an initial matter, Plaintiffs cite no authority holding that a forum-selection clause may be treated as a jury trial waiver—or more to the point here, invalidated altogether—simply because it elects a jurisdiction whose jury trial right is narrower than California's. Indeed, given that California's jury trial right is "more protective" than even the "federal … standard," Plaintiffs' argument would invalidate *any* forum-selection clause choosing *any* federal court—in any court at all in the many states whose jury trial rights follow the federal model. *In re Cnty. of Orange*, 784 F.3d 520, 532 (9th Cir. 2015), *cited at* Opp. 11. For this reason alone, Plaintiffs' substantive unconscionability argument fails.

Even if the forum-selection clause were treated as a "contractual jury trial waiver," Plaintiffs' argument would still contradict the caselaw. As Plaintiffs admit, "[s]ubstantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or clause," and "[t]he key factor is lack of mutuality." Opp. 10. A waiver of a right to a jury trial that applies equally to both parties, *see* Taylor Decl. Ex. B, § 16a (forum-selection clause applying to "any claim which you have or which we have"), is perfectly mutual. *See, e.g.*, *It's Just Lunch Int'l LLC v. Island Park Enter. Group, Inc.*, 2009 WL 10671493, at *5 (C.D. Cal. 2009). Accordingly, courts repeatedly have held that a "jury waiver clause in [a] contract is not substantively unconscionable." *U.S. ex rel. Collins*

*Plumbing, Inc. v. Turner-Penick Joint Venture*, 2013 WL 5462278, at *8 (S.D. Cal. 2013); *see also, e.g.*, *It's Just Lunch Int'l LLC*, 2009 WL 10671493, at *5 ("[T]here is insufficient substantive unconscionability to conclude th[at] jury trial waivers are unconscionable."); *Hallsted v. JPMorgan Chase & Co.*, 2017 WL 8186687, at *5 (C.D. Cal. 2017) (holding contract provision "is not substantively unconscionable for impliedly waiving the right to a jury trial").

Plaintiffs rely on one case, *In re County of Orange*, that does not hold otherwise. Indeed, it is not a case about unconscionability at all—which is why the terms "unconscionable" and "unconscionability" never appear in the opinion. *See* 784 F.3d at 524. Rather, *County of Orange* concerns "interpretation of [a] jury waiver provision"— in a contract that, by its own terms, "was governed by California law." *U.S. Sec. Holdings, Inc. v. Andrews*, 2021 WL 6104394, at *4 (C.D. Cal. 2021) (citing *County of Orange*, 784 F.3d at 528, 532). Indeed, that the "contract [wa]s governed by California law" was the starting point of *County of Orange*'s entire analysis. *See* 784 F.3d 532. Therefore, "*County of Orange* is [thus] inapposite" and "inapplicable" where (as here) the contract has an "express … choice of law provision" that selects a non-California source of law. *U.S. Sec. Holdings*, 2021 WL 6104394, at *4; *see* Taylor Decl. Ex. C, § 16a ("[Y]our agreement with us is governed by English law."). Plaintiffs are thus left without any support for the claim that the forum-selection clause is substantively unconscionable.

**B.     The SAC Should Be Dismissed For Lack of Personal Jurisdiction.**

Plaintiffs do not dispute that this Court lacks general jurisdiction over both FIL and Fenix Internet, and that, with regard to specific jurisdiction, "the SAC fails to allege facts showing that FIL or Fenix Internet *purposefully directed* suit-related acts at California."

*See* Opp. 12. Instead, Plaintiffs argue that "the jurisdictional question is not whether Defendants 'purposefully directed' any activities at California, but whether they 'purposefully availed' themselves of the privilege of conducting activities in California." Opp. 13. But courts have rejected exactly that argument, holding that, while the "purposeful availment" standard applies "in suits sounding in contract," the "purposeful direction" standard applies "in suits sounding in tort." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004), *quoted at* Opp. 12-13.

In this regard, courts have made clear that all three of Plaintiffs' claims here—under the UCL, the CLRA, and the FAL—sound in tort, such that the purposeful direction analysis applies, even if the claims arise from a relationship governed by contract. *See, e.g.*, *Matus v. Premium Nutraceuticals, LLC*, 2016 WL 3078745, at *3 (C.D. Cal. 2016), *aff'd*, 715 Fed. Appx. 662 (9th Cir. 2018); *Ogdon v. Grand Canyon Univ., Inc.*, 2022 WL 846973, at *3, *6, *11 & n.5 (E.D. Cal. 2022) (applying purposeful direction standard to UCL, CLRA, and FAL claims arising out of a contract).[2] *Matus*'s analysis reads verbatim onto this case: "Plaintiff alleges violations of the Consumers Legal Remedies Act [CLRA], violations of the California's False Advertising Law [FAL], [and] violations of the California Business and Professions Code §§ 17200 *et seq.* [UCL] …. Therefore, the court will apply a purposeful direction analysis." *Id.* Plaintiffs cite no case assessing

---

[2] The caselaw similarly refutes Plaintiffs' suggestion that the "purposeful availment" standard must apply because "the claims at issue in this case all arise from and are fundamentally grounded in the OnlyFans Terms." Opp. 13. Tort claims that arise from a relationship governed by contract still "sound in tort," and thus are still governed by the "purposeful direction" standard. *See, e.g.*, *Ogdon*, 2022 WL 846973, at *3, *6, *11 & n.5 (applying purposeful direction standard to case bringing UCL, CLRA, and FAL claims, notwithstanding that claims arose out of defendants' failure to deliver on representations they made to induce plaintiff to "accept" their "enrollment offer"); *Cole-Parmer Instrument Co. LLC v. Prof'l Labs., Inc.*, 2021 WL 3053201, at *2, *7 (N.D. Cal. 2021) (Koh, J.) (applying purposeful direction standard to case bringing UCL claim regarding products defendant sold to plaintiff pursuant to an "agree[ment]" between them).

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

- 8 -

specific jurisdiction in a case raising UCL, CLRA, and FAL claims by applying the "purposeful availment," rather than the "purposeful direction," standard. Because Plaintiffs do not dispute that dismissal is required here if the "purposeful direction" standard applies, the SAC must be dismissed for this independent reason.

### C. The SAC Must Be Dismissed For Lack Of Standing.

Plaintiffs do not seriously dispute that their OnlyFans transaction histories defeat their ability to show standing, arguing instead that Defendants cannot challenge standing by introducing extrinsic evidence on their motion to dismiss. Opp. 18. Contrary to Plaintiffs' assertion, it is black-letter law that a "standing" challenge raised in "a motion to dismiss under Fed. R. Civ. P. 12(b)(1)" may be "based on extrinsic evidence, apart from the pleadings," and that in such cases "the court may resolve factual disputes in order to determine whether it has jurisdiction." *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 2010 WL 11526908, at *2 (C.D. Cal. 2010); *see also, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 2012 WL 12861143, at *18 (C.D. Cal. 2012) ("[A] defendant [may] rel[y] on extrinsic evidence to support its attack on standing …. [in a] motion to dismiss.").[3] Plaintiffs' only argument for why their claims do not fail for lack of standing is thus plainly wrong. Accordingly, Plaintiffs cannot show that they suffered any injury caused by Defendants' supposed failure to convey information to them, and the SAC must be dismissed on this basis, as well.[4]

---

[3] Those same decisions explain how Plaintiffs misread *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011), as courts will only accept as true all material allegations of the complaint when the motion to dismiss mounts a facial, as opposed to factual, challenge to standing. *Cal. Hosp. Ass'n*, 2010 WL 11526908, at *2; *see also Schell v. Volkswagen AG*, 2022 WL 187841, at *1 (9th Cir. 2022).

[4] Plaintiffs suggest in passing that their history of purchasing and "cancelling subscriptions to other Creators" may only reveal "that Plaintiffs did not like the content of those Creators." Opp. 20. But the

### D. Plaintiffs' Claims Against Fenix Internet Must Be Dismissed For Failure To State A Claim.

Plaintiffs do not dispute that all of their claims turn solely on representations that were made (or omitted) on the OnlyFans website. *E.g.*, SAC ¶¶ 41, 47, 53; *see also* Opp. 20-21. Nor do they dispute that the only substantive allegation they make as to Fenix Internet specifically is that it "is, or has been, continuously in possession of money wrongfully taken from Plaintiff"—which has nothing to do with representations on OnlyFans, and is not a violation of any law. *See* SAC ¶ 9; Opp. 20-21.

Instead, Plaintiffs' argue solely that because "[a]ll three of the SAC's causes of action allege conduct by 'Defendants,'" collectively, it is enough for their claims against Fenix Internet to survive. Opp. 21. On the contrary, courts have been clear that where "defendants are separate corporate entities[] and perform separate roles," generally pleading as to "Defendants" as a collective "is insufficient to state a claim for relief." *Austin v. Budget Rental Car, Inc.*, 2020 WL 8614183, at *2 (N.D. Cal. 2020); *see also, e.g.*, *Tillman v. L.A. Cnty. Dist. Attorney's Office*, 2023 WL 2628684, at *3 (C.D. Cal. 2023). Accordingly, Plaintiffs' admission that their argument here depends on allegations about "Defendants" collectively does not save, but rather dooms, their claims against Fenix Internet.

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' SAC with prejudice.

---

transaction histories themselves show that Plaintiff not only cancelled multiple subscriptions but subsequently *repurchased* subscriptions to those same Creators—exactly the opposite one would expect if Plaintiffs, in fact, "did not like the content." Plaintiff Muto did this on multiple occasions, with at least four separate Creators, and Plaintiff Breeze engaged in this behavior with the very Creator whose subscription he complains about in the SAC. Taylor Decl. ¶¶ 33, 38 & Exs. E & F.

| | | |
|---|---|---|
| Dated: | April 14, 2023 | Respectfully Submitted,<br><br>**ORRICK HERRINGTON & SUTCLIFFE LLP**<br><br>By: */s/ Jacob M. Heath*<br>JACOB M. HEATH (SBN 238959)<br>jheath@orrick.com<br>1000 Marsh Road<br>Menlo Park, CA  94025-1015<br>Tel:   +1 650 614 7400<br>Fax:   +1 650 614 7401<br><br>*Attorneys for Defendants Fenix International Limited and Fenix Internet LLC* |

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

- 11 -

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,144 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 14, 2023

Respectfully Submitted,

**ORRICK HERRINGTON & SUTCLIFFE LLP**

By: */s/ Jacob M. Heath*
JACOB M. HEATH (SBN 238959)