1 | JACOB M. HEATH (SBN 238959)
2 | jheath@orrick.com
  | ORRICK, HERRINGTON & SUTCLIFFE LLP
3 | 1000 Marsh Road
4 | Menlo Park, CA 94025-1015
  | Telephone:  +1 650 614 7400
5 | Facsimile:  +1 650 614 7401
6 |
7 | THOMAS FU (SBN 325209)
  | tfu@orrick.com
8 | ORRICK, HERRINGTON & SUTCLIFFE LLP
  | 355 S. Grand Ave., Suite 2700
9 | Los Angeles, CA 90071
10 | Telephone:  +1 213 629 2020
  | Facsimile:  +1 213 612 2499
11 | *Additional counsel listed on signature page*
12 |
13 | Attorneys for Defendants
  | FENIX INTERNATIONAL LIMITED and
14 | FENIX INTERNET LLC.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCELO MUTO, NOAH BREEZE, JOHN DOE 1, JOHN DOE 2, and all others similarly situated, | CASE NO. 5:22-cv-02164-SSS-KK |
| Plaintiffs, | **DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT** |
| v. | |
| FENIX INTERNATIONAL LIMITED; FENIX INTERNET LLC, | Hearing Date:  August 11, 2023 |
| Defendants. | Time:            2:00 PM |
| | Dept:            Courtroom 2 |
| | Judge:          Hon. Sunshine S. Sykes |

## <u>NOTICE OF MOTION AND RELIEF SOUGHT</u>

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 11, 2023, at 2:00 PM, or as soon thereafter as is available, in the courtroom of the Honorable Sunshine S. Sykes, located at 3470 Twelfth Street, Riverside, California 92501-3801, Courtroom 2, 2nd Floor, Defendants Fenix International Limited ("FIL") and Fenix Internet LLC ("Fenix Internet") (collectively, "Defendants") will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), and the doctrine of *forum non conveniens* to dismiss all claims asserted against them in Plaintiffs' Consolidated Class Action Complaint (ECF No. 34) ("CAC").

The Court should dismiss with prejudice each of Plaintiffs' claims in their entirety because:

**1.** ***Plaintiffs Must Bring this Suit in the United Kingdom:*** The forum-selection clause in the OnlyFans Terms of Service—which each of the Plaintiffs agreed to when they created their OnlyFans accounts—requires Plaintiffs to bring this suit in the United Kingdom (where OnlyFans is operated) and mandates dismissal of this action pursuant to the doctrine of *forum non conveniens*.

**2.** ***The Court Lacks Personal Jurisdiction over both FIL and Fenix Internet:*** Neither FIL (a United Kingdom domiciled company) nor Fenix Internet (a Delaware domiciled company) is subject to personal jurisdiction in California, as neither undertook acts related to this suit that were purposefully directed at this forum; the only possible California-based connections are Plaintiffs' decisions to access the OnlyFans website from this state which is not material to personal jurisdiction.

**3.** ***Plaintiffs Lack Standing to Bring their Claims:*** Plaintiffs' conduct demonstrated their understanding that their OnlyFans subscriptions renewed. Each named Plaintiff regularly subscribed to and subsequently cancelled dozens of OnlyFans subscriptions before their renewal date (often, almost right away). In some instances, they later re-subscribed to the same content and again cancelled before the renewal date. None of FIL's or Fenix Internet's alleged violations caused Plaintiffs injury, so they cannot establish either constitutional or statutory standing.

**4.** ***Plaintiffs Fail to State a Cause of Action Against Fenix Internet:*** Plaintiffs plead no facts showing that Fenix Internet violated any of the statutes that the CAC attempts to assert.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Declaration of Lee Taylor, Declaration of Antony White KC, the complete files and records in this action, any reply papers Defendants may file, any matters of which the Court may take judicial notice, any such materials or arguments as may be presented to the Court in conjunction with hearing on this motion, and any other matter that the Court may properly consider.

This Motion was made following the conference of counsel pursuant to L.R. 7-3, which took place via Zoom on June 15, 2023, and lasted approximately 15 minutes. Present for the conference were Jon Direnfeld (Defendants) and Mark Poe (Plaintiffs). Going into the conference, the parties' positions relating to the motion to dismiss were well-known, as counsel for Defendants and Plaintiffs Muto and Breeze had multiple meet-and-confer conferences relating to Defendants' Motion to Dismiss the Second Amended Complaint, and counsel for Defendants and Plaintiffs Muto and Breeze

1    subsequently briefed that motion to dismiss.  Given that the substantive grounds for

2    Defendants' renewed motion to dismiss remain largely unchanged, the parties spent the

3    conference discussing changes contained in the CAC.  The parties were unable to

4    resolve any issues relating to the contemplated motion to dismiss.

5

6    Dated:  June 22, 2023                    ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8                                            By:  /s/ Jacob M. Heath
                                                  JACOB M. HEATH
9                                                 THOMAS FU
                                                  JONATHAN A. DIRENFELD
10                                                Attorneys for Defendants
                                             FENIX INTERNATIONAL LIMITED and
11                                             FENIX INTERNET LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

NOTICE OF MOTION AND RELIEF SOUGHT..................................................I

TABLE OF AUTHORITIES......................................................................V

I.    INTRODUCTION ...............................................................- 1 -

II.   FACTUAL BACKGROUND...................................................- 2 -

      A.  FIL, Fenix Internet, and OnlyFans ..................................- 2 -

      B.  The OnlyFans Terms of Service and Forum-Selection Clause ...........- 3 -

      C.  Plaintiffs' Allegations...............................................- 6 -

III.  LEGAL ARGUMENT .........................................................- 7 -

      A.  Plaintiffs' Claims Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*.............................................................- 7 -

      B.  The CAC Should Be Dismissed for Lack of Personal Jurisdiction. .- 12 -

      1.    Neither FIL nor Fenix Internet is Subject to General Jurisdiction in California. - 13 -

      2.    Neither FIL nor Fenix Internet is Subject to Specific Jurisdiction in California. .................................................................- 14 -

      C.  The CAC Must Be Dismissed for Lack of Constitutional or Statutory Standing. - 18 -

      D.  Plaintiffs' Claims Against Fenix Internet Must Be Dismissed for Failure to State a Claim. ...........................................................- 22 -

IV.   CONCLUSION ...............................................................- 22 -

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020)................................................................. 14, 17

5

*Ariix, LLC v. NutriSearch Corp.*,
  2022 WL 837072 (S.D. Cal. 2022) ................................................................. 16

6

7

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ............................................................................................ 8

8

*B.D. v. Blizzard Entm't, Inc.*,
  76 Cal. App. 5th 931 (2022)............................................................................. 9

9

10

*Balboa Capital Corp. v. Shaya Med. P.C. Inc.*,
  2021 WL 6104011 (C.D. Cal. 2021) ............................................................... 9

11

12

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ....................................................................................... 13

13

14

*Bostick v. Gen. Motors, LLC*,
  2020 WL 13283478 (C.D. Cal. 2020) ............................................................. 4

15

*Brooks v. Sotheby's*,
  2013 WL 3339356 (N.D. Cal. 2013)................................................................ 7

16

17

*Cabot Creekside 8 LLC v. Cabot Inv. Properties, LLC*,
  2011 WL 13223878 (C.D. Cal. 2011)........................................................ 9, 10

18

*Caces-Tiamson v. Equifax*,
  2020 WL 1322889 (N.D. Cal. 2020)............................................................. 16

19

*Cal. Hosp. Ass'n v. Maxwell-Jolly*,
  2010 WL 11526908 (C.D. Cal. 2010)............................................................ 19

20

21

*Capriole v. Uber Techs., Inc.*,
  7 F.4th 854 (9th Cir. 2021)............................................................................ 11

22

23

*Cholakyan v. Mercedes-Benz USA, LLC*,
  2012 WL 12861143 (C.D. Cal. 2012)............................................................ 19

24

*Clifford v. Quest Software Inc.*,
    38 Cal.App.5th 745 (2019) ................................................................................ 11

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ..................................................................... 13, 14

*Compound Sols., Inc. v. CoreFX Ingredients, LLC*,
    2020 WL 3639663 (S.D. Cal. 2020) ................................................................ 8, 9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ........................................................................................... 13

*Derosa v. Thor Motor Coach, Inc.*,
    2020 WL 6647734 (C.D. Cal. 2020) ................................................................... 9

*DiCarlo v. MoneyLion, Inc.*,
    988 F.3d 1148 (9th Cir. 2021) ........................................................................... 12

*Dickey v. Ticketmaster LLC*,
    2019 WL 9096443 (C.D. Cal. 2019) .................................................................... 4

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ........................................................................... 15

*Elliot v. Cessna Aircraft Co.*,
    2021 WL 2153820 (C.D. Cal. 2021) ................................................................. 17

*Graduation Sols. LLC v. Luya Enter. Inc.*,
    2020 WL 9936697 (C.D. Cal. 2020) .................................................................... 4

*Imageline, Inc. v. Hendricks*,
    2009 WL 10286181 (C.D. Cal. 2009) ................................................................ 17

*Johnson v. Pluralsight, LLC*,
    728 Fed. Appx. 674 (9th Cir. 2018) ..................................................................... 9

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ....................................................................... 4, 19

*LaCross v. Knight Transp., Inc.*,
    95 F. Supp. 3d 1199 (C.D. Cal. 2015) ............................................................... 11

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ........................................................................... 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................. 14

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ............................................................... 4

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) ............................................................. 18

*Muniz v. Fenix Int'l Ltd.*,
  2021 WL 3417581 (N.D. Ga. 2021) ..................................................... 11

*In re Packaged Seafood Prods. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) ............................................... 16

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ............................................................. 13

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ............................................................. 10

*Ranza v. Nike, Inc.*,
  793 F.3d 1059 (9th Cir. 2015) ............................................................. 14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................... 13

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ......................................................................... 18

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ............................................................. 18

*Walden v. Fiore*,
  571 U.S. 277 (2014) ....................................................................... 16, 17

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023) ............................................................... 15

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) ..................................................... 7, 8, 11

**Statutes**

California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ............... *passim*

California Automatic Renewal Law, Bus. & Prof. Code § 17600 .................................... 8

**Other Authorities**

Article III ................................................................................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs are four users of the content sharing, social media website OnlyFans.com ("OnlyFans"), which is owned and operated by Defendant Fenix International Limited ("FIL").  Although Plaintiffs previously purchased then cancelled ninety five separate OnlyFans subscriptions (before the renewal date), they now claim they were deceived when four subscriptions they *chose not to cancel* were renewed. Specifically, Plaintiffs claim that (notwithstanding their lengthy subscription and successful cancellation history on OnlyFans.com) on these occasions they had no idea that failing to cancel these subscriptions on OnlyFans.com would result in the subscriptions renewing for another month.  This is Plaintiffs' basis on which they seek to maintain this putative class action against FIL, a company established and based in the United Kingdom that operates OnlyFans, and Fenix Internet LLC ("Fenix Internet"), a Delaware company that provides support services for FIL unrelated to the claims in this action.

Plaintiffs' claims fail for three reasons.  *First*, this case must be **dismissed under the doctrine of forum non conveniens**.  Plaintiffs' action flouts the contractual agreement they made, when signing up for OnlyFans, to bring all suits relating to their use of OnlyFans exclusively in the United Kingdom (where OnlyFans is domiciled). *Second*, there is **no personal jurisdiction** over FIL or Fenix Internet in California.  The CAC attempts to hale two out-of-state defendants into California court, not because either has purposefully directed any relevant action at California, but solely because *Plaintiffs* chose to access OnlyFans from California.  But only a *defendant's* forum

contacts—not a plaintiff's—can provide a basis for personal jurisdiction. ***Third***, ***Plaintiffs lack standing*** to pursue the claims in this action. Plaintiffs' respective account and transaction histories on OnlyFans demonstrate that Plaintiffs understood that OnlyFans subscriptions would automatically renew if not cancelled. Accordingly, OnlyFans's supposed failure to communicate that fact did not cause Plaintiffs any injury.

Even if California were an appropriate forum, and this Court had personal jurisdiction, and Plaintiffs had standing (which Defendants refute), the action would still—at a minimum—have to be dismissed as to Fenix Internet, as Fenix Internet does not operate OnlyFans and is not responsible for any disclosures or representations regarding subscription renewal that appear on the site (and which form the basis for Plaintiffs' claims). Indeed, the CAC does not allege that Fenix Internet acted to violate the law; it only claims that Fenix Internet "is, or has been, continuously in possession of money wrongfully taken from Plaintiff." CAC ¶ 19. Possessing Plaintiffs' money is not a violation of any of the statutes cited in Plaintiffs' CAC and is not a basis for maintaining this lawsuit against Fenix Internet.

Plaintiffs' lawsuit should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    FIL, Fenix Internet, and OnlyFans

FIL is a company incorporated and registered in England and Wales, with its headquarters in London. Taylor Decl. ¶ 3. FIL owns and operates the popular international content sharing and social media website, OnlyFans. *Id.* OnlyFans is a leading global platform that allows users (i.e., "Fans") from around the world to

subscribe to and engage with content (such as videos, music, and photographs) produced by content creators ("Creators") located around the world.  Fans can subscribe to their favorite Creators for access to exclusive content and opportunities to interact directly with those Creators.

Fenix Internet is a separate company that is organized under the laws of Delaware, with its registered office in Delaware.  Taylor Decl. ¶ 4.  Fenix Internet does not operate OnlyFans; instead, it performs payment and administrative support services for FIL.  *Id.* ¶¶ 5-6.  Specifically, Fenix Internet collects payments from third-party processors and distributes the money it collects (through other third-party providers) to Creators, as directed by FIL.  *Id.* ¶ 6.

Neither FIL nor Fenix Internet is registered to do business in California.  Taylor Decl. ¶ 10.  Neither has any offices or employees in California.  *Id.* ¶ 7.  Neither engages in marketing, sales, or commercial activity targeted specifically at California residents.  *Id.* ¶ 8.

### B.    The OnlyFans Terms of Service and Forum-Selection Clause

When individuals—including Plaintiffs—sign up for a Fan account on OnlyFans, they must agree to the OnlyFans Terms of Service ("Terms") by clicking a button immediately next to text stating:  "By signing up you agree to our Terms of Service …" CAC ¶ 56.  That same disclosure includes a hyperlink (denoted in bold and in bright blue font) to the Terms, which immediately inform a reader that "**BY USING OUR WEBSITE YOU AGREE TO THESE TERMS – PLEASE READ THEM**

1   **CAREFULLY**.”  Taylor Decl., Ex. D (emphasis in original).[1]

2          The Terms include a forum-selection clause requiring OnlyFans users to file all

3   claims in the United Kingdom (specifically, the courts of England and Wales), where

4   FIL is incorporated and headquartered.  The forum-selection clause that Plaintiffs

5   agreed to when they signed up for their accounts appeared conspicuously in bold text.

6   Taylor Decl., Ex. A at Section 18 (“any dispute … concerning OnlyFans … shall be

7   resolved exclusively in the courts of England and Wales”); Taylor Decl., Ex. B at

8   Section 16 (“any claim arising out of or in connection with your agreement with us …

9   must be brought in the courts of England and Wales”); Taylor Decl., Ex. C at Section

10  17 (“any dispute … concerning OnlyFans … shall be resolved in the courts of England

11  and Wales”).[2]  By accepting the Terms, Plaintiffs also agreed that OnlyFans may make

12  changes to the Terms and site at its sole discretion, and that by continuing to use

13  OnlyFans after such notice, they agree to the modified Terms.  Taylor Decl., Ex. A at

14  Section 1.4; Taylor Decl., Ex. B at Section 4; Taylor Decl., Ex. C at Section 1.4.

15          In December 2021, OnlyFans updated its Terms, which clarified that a user “will

16  _____

17  [1] The four Plaintiffs in this case seem to take different positions on the Terms.  Plaintiffs Muto and
18  Breeze previously conceded that individuals agree to the Terms when they sign up for a Fan account
    on OnlyFans.  Second Amended Complaint (ECF No. 14) (“SAC”) ¶ 8.  The Doe Plaintiffs maintain
19  the opposite, insisting that they “did not see or affirmatively agree to the Terms of Service.”  CAC
    ¶¶ 85, 92.  This difference in positions is ultimately irrelevant, however, as the law is clear that
20  interfaces indistinguishable from OnlyFans’s (sometimes called “sign-in wrap”) bind users to the
    Terms.  *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. 2019).

21  [2] In ruling on a motion to dismiss for lack of personal jurisdiction, for *forum non conveniens*, or for
    lack of standing, this Court may consider matters outside of the pleadings.  *See, e.g.*, *Bostick v. Gen.
22  Motors, LLC*, 2020 WL 13283478, at *2 (C.D. Cal. 2020) (personal jurisdiction); *Graduation Sols.
    LLC v. Luya Enter. Inc.*, 2020 WL 9936697, at *1 (C.D. Cal. 2020) (*forum non conveniens*); *Maya v.
23  Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (standing).  Further, the Court may consider the
    OnlyFans Terms because they are expressly referenced in the CAC.  *See* CAC ¶¶ 36-40; *see also, e.g.*,
24  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC’S MOTION TO DISMISS

1  also be able to rely on mandatory rules of the law of the country where you live."

2  Taylor Decl., Ex. D at Section 16a.  The mandatory forum-selection clause remained:

**TERMS OF SERVICE**

16.  Terms relating to disputes – the law which applies to your agreement with us and where disputes and claims concerning your use of OnlyFans (including those arising from or relating to your agreement with us) can be brought:

    a.  For consumers (Fans):

        •  Consumers - Law:

            • If you are a consumer, your agreement with us is governed by English law and English law will apply to (i) any claim that you have arising out of or in connection with your agreement with us or your use of OnlyFans, and (ii) any claim that we have against you that arises out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims). You will also be able to rely on mandatory rules of the law of the country where you live.

        •  Consumers - where claims must be brought:

            • If you are a consumer resident in the United Kingdom or the European Union, any claim which you have or which we have against you arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) may be brought in the courts of England and Wales or the courts of the country where you live.

            • If you are a consumer resident <u>outside</u> of the United Kingdom or the European Union, any claim which you have or which we have arising out of or in connection with your agreement with us or your use of OnlyFans (including, in both cases, non-contractual disputes or claims) must be brought in the courts of England and Wales.

10  Taylor Decl., Ex. D at Section 16a.  OnlyFans notified all users, including

11  Plaintiffs, of the update on November 14, 2021, a month before it took effect.

12  Taylor Decl. ¶ 20.  Additionally, the first time that any user, including Plaintiffs,

13  logged into their OnlyFans account on or after December 15, 2021, they were

14  presented with the following alert immediately after logging into their account:

Our Terms of Service have been updated on December 15, 2021. To continue using our service, please confirm you have read and agree with our Terms of Service.

ACCEPT

19  Taylor Decl. ¶ 21.  All users had to click "ACCEPT" to continue using OnlyFans

20  and could not have continued to use their OnlyFans account without first

21  agreeing to the updated Terms.  *See id.* ¶ 22.  All Plaintiffs affirmatively accepted

22  the December 15, 2021, amendments and thereafter continued to use their

23  OnlyFans accounts.  *Id.* ¶¶ 23-27, Ex. E-H.

24

DEFENDANTS FENIX INTERNATIONAL LIMITED AND FENIX INTERNET LLC'S MOTION TO DISMISS

1     Additionally, the Terms provide details—labeled clearly in bold

2  ("**Subscriptions and purchases by Fans**")—about how OnlyFans subscriptions

3  work.  Taylor Decl., Ex. D at Section 8 (emphasis in original).  The Terms

4  explain that, in general, "all Subscriptions to a Creator's profile will

5  automatically renew at the end of the relevant subscription period."  *Id.*  But they

6  also note that users have full control.  If a user wishes to opt out of automatic

7  renewals, they can select to "turn[] off the 'Auto-Renew' switch located on the

8  relevant Creator's profile.  This means that if you want to stop subscribing to a

9  Creator's profile and paying continuing monthly subscription charges, you will

10 need to turn off the 'Auto-Renew' switch located on the relevant Creator's

11 profile."  *Id*.  To eliminate any doubt, the Terms explain that "[i]f you cancel a

12 Subscription you will continue to be permitted to view the relevant Creator's

13 Content until the end of the subscription period in which you cancelled, after

14 which no further payments will be taken from your payment card in respect of

15 subscriptions to that Creator's profile (unless you choose to pay for a new

16 Subscription to that Creator's profile), and you will no longer be able to view the

17 relevant Creator's Content."  *Id.*

18     **C.     Plaintiffs' Allegations**

19     Plaintiffs created Fan accounts on OnlyFans and agreed to the Terms through the

20 process described above.  *See* Taylor Decl., ¶¶ 14-27; CAC ¶ 56.  Through those Fan

21 accounts, they purchased—and then cancelled, ***before*** the renewal date—95

22 subscriptions to multiple OnlyFans Creators.  *See* Taylor Decl. ¶¶ 31-52, Ex. I-L.

23     Notwithstanding (a) OnlyFans's clear subscription renewal notice and

24

---

explanation; (b) Plaintiffs' own familiarity with OnlyFans's subscription, renewal, and cancellation process; and (c) their contractual promise to bring any suit relating to their use of OnlyFans in England or Wales, Plaintiffs filed this putative class action lawsuit in California court.  Plaintiffs assert that OnlyFans's automatic subscription renewal was not adequately disclosed to them, causing them to incur unwanted renewal charges. Plaintiffs claim that OnlyFans's supposedly inadequate disclosures violate the California Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ("UCL").

## III.   LEGAL ARGUMENT

### A.   Plaintiffs' Claims Should Be Dismissed Under the Doctrine of *Forum Non Conveniens*.

The Court should dismiss the CAC in its entirety because Plaintiffs agreed that any claim they have arising out of or in connection with their use of OnlyFans, including non-contractual disputes, must be brought in the courts of England and Wales.  The law is clear that where "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."  *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087 (9th Cir. 2018).  However, where (as here) the selected venue is in a foreign country, federal courts must dismiss the action for improper venue under the doctrine of *forum non conveniens*.  *See Brooks v. Sotheby's*, 2013 WL 3339356, at *6 (N.D. Cal. 2013); *see also Yei A. Sun*, 901 F.3d at 1087.

Unlike an ordinary *forum non conveniens* analysis, which balances "the convenience of the parties and various public-interest considerations," the analysis is weighted heavily in favor of dismissal where (as here) there is a valid forum-selection clause.  *Yei A. Sun*, 901 F.3d at 1087 & n.3.  In fact, a plaintiff's desire to litigate in one

forum "merits no weight," *id.* at 1087, after the parties have contracted to litigate in a different forum.  The court must treat the parties' private interests as weighing "entirely in favor of" the forum selected in the clause.  *Id.* at 1088.  For similar reasons, the public-interest, too, "will rarely defeat a transfer motion."  *Id*.  As such, a forum-selection clause will "control except in unusual cases."  *Id*. (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)).

Because there is no dispute that Plaintiffs agreed to a mandatory forum-selection clause in the OnlyFans Terms requiring them to bring their lawsuit in the United Kingdom, *see* CAC ¶ 56; *supra* n.1, Plaintiffs can avoid dismissal only if they show "extraordinary circumstances unrelated to the convenience of the parties" that would render the clause unenforceable.  *Yei A. Sun*, 901 F.3d at 1088.  Here, the CAC offers three reasons that the clause should not be enforced.  None withstands scrutiny.

### a)      Enforcement of the forum-selection clause would not contravene a strong public policy.

First, the CAC claims that "the ARL,[3] and the UCL, are fundamental public policies of the State of California" and that "[t]here are no similar provisions in English law that would afford Plaintiffs and the Class any similar relief in the courts of England or Wales."  CAC ¶ 37.  Neither piece of that argument is correct.  For one thing, "English law provides for at least three corresponding causes of action [to the Plaintiffs' UCL claim], which the Plaintiffs could pursue" if they bring their claims in the United Kingdom.  White Decl. ¶ 31.  Just as important, courts have specifically rejected the contention that the UCL involves such a "strong public policy" of California that it can

---

[3] "ARL" stands for California's Automatic Renewal Law.  Bus. & Prof. Code § 17600.

provide a basis for invaliding a forum-selection clause. *Compound Sols., Inc. v. CoreFX Ingredients, LLC*, 2020 WL 3639663, at *5 (S.D. Cal. 2020). To the contrary, "[e]ven if there is no ... equivalent to the UCL" in the selected forum, there is still no public policy "that could be violated by enforcing the Forum Selection Clause." *Id.* And because the ARL itself has "no private cause of action" but is instead enforced through suit "under the UCL," *Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018), the same is true of the ARL.[4]

### b) The forum-selection clause is not unconscionable.

Next, the CAC claims that the Terms are both procedurally and substantively unconscionable. CAC ¶ 38. Again, neither part of that argument is correct.

Plaintiffs maintain that the forum-selection clause is procedurally unconscionable because it is contained as a provision in the OnlyFans Terms, which: (1) users agree to via a "sign-in wrap" as opposed to a "clickwrap" interface, CAC ¶ 38; and (2) is a "contract of adhesion," *id.* But courts consistently find "sign-in wrap agreements enforceable." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 951 (2022). And, even if the Terms were a contract of adhesion (they are not), courts regularly hold that "[t]he fact that a contract is adhesive" is just the beginning, "not [the] end [of] the inquiry

_____

[4] In any event, even if the UCL or ARL did implicate such fundamental California public policies that they could not be waived, that would still provide no basis for refusing to enforce the forum-selection clause, because the OnlyFans Terms specifically provide that an OnlyFans user will always "be able to rely on mandatory rules of the law of the country where you live." Taylor Decl., Ex. D at Section 16a. Defendants stipulate that if the Court concludes that either the UCL or ARL creates non-waivable rights under California law, Plaintiffs will be able to rely on those statutes once the action is properly filed in the correct forum. Having so "stipulat[ed] that [any unwaivable claim] will apply in the transferee court," there is no "risk of diminishing Plaintiff's statutory rights under California law," and no basis for refusing to apply the forum-selection clause on that basis. *Derosa v. Thor Motor Coach, Inc.*, 2020 WL 6647734, at *4 (C.D. Cal. 2020).

regarding procedural unconscionability." *Cabot Creekside 8 LLC v. Cabot Inv. Props,*

*LLC*, 2011 WL 13223878, at *10 (C.D. Cal. 2011); *see also, e.g.*, *Balboa Cap. Corp. v.*

*Shaya Med. P.C. Inc.*, 2021 WL 6104011, at *3 (C.D. Cal. 2021).  There is no "rule that

an adhesion contract is per se unconscionable." *Poublon v. C.H. Robinson Co.*, 846

F.3d 1251, 1261-62 (9th Cir. 2017) ("[T]he adhesive nature of a contract, without more,

would give rise to a low degree of procedural unconscionability at most.").[5]

Given the "minimal evidence of procedural unconscionability," the forum-

selection clause can be avoided "only on a showing of significant substantive

unconscionability." *Cabot Creekside 8 LLC*, 2011 WL 13223878, at *12. Plaintiffs

primarily assert that the forum-selection clause is "substantively unconscionable"

because "they purport to require individual consumers to waive their right to a jury trial,

to class action relief, and waive the protection of California consumer laws," CAC ¶ 39.

But the OnlyFans Terms purport no such things—they merely require that claims be

brought in England or Wales.

Perhaps realizing that, Plaintiffs fall back to a different, and irrelevant,

argument—that "California consumers" face "burdens" to litigating in the United

Kingdom that "prevent their claims from being presented, heard and resolved on the

merits at all."  CAC ¶ 39.  Courts have been clear that, to avoid enforcement of the

---

[5] The CAC also asserts in passing that the forum-selection clause is unconscionable because it "allow[s] consumers in other countries [to] bring claims against FIL in courts in their countries of residence … but does not afford equal treatment to U.S. consumers."  CAC ¶ 38.  But Plaintiffs cite no authority in support of this contention—and for good reason.  By definition, essentially *every* forum-selection clause will allow some—but not all—consumers to sue in their home jurisdiction.  And so, Plaintiffs' argument amounts to the absurd contention that every forum-selection clause is, by its nature, unconscionable and unenforceable.

forum-selection clause on the ground that it would deprive them of their day in court, Plaintiffs must show that "the contractually selected forum affords [them] no remedies whatsoever." *Yei A. Sun*, 901 F.3d at 1092. The "inconvenience of litigation in" the selected forum—and "a plaintiff's financial ability to bear the [associated] costs"—are irrelevant to the analysis. *LaCross v. Knight Transp., Inc.*, 95 F. Supp. 3d 1199, 1205 (C.D. Cal. 2015). That is because a forum-selection clause is "a contractual obligation" whereby Plaintiffs each willingly agreed to bring suit only in a certain forum, and so there is "no injustice" for holding Plaintiffs to that promise. *Yei A. Sun*, 901 F.3d at 1091. In the words of another court that considered—and enforced—a forum-selection clause in the OnlyFans Terms: Because any difficulties of litigating in the United Kingdom were "clearly foreseeable at the time of contracting," requiring Plaintiffs to bear those expected costs does not deprive them of their day in court. *Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581, at *4 (N.D. Ga. 2021).

### c) Enforcement of the forum-selection clause would not require waiver of public injunctive relief.

Finally, the CAC asserts that the forum-selection clause is "unenforceable because Plaintiffs seek public injunctive relief, which … cannot be waived by contract." CAC ¶ 40. But as an initial matter, given that their lawsuit concerns (at most) OnlyFans users, and not the public as a whole, it is doubtful that the relief they are seeking truly qualifies as "public injunctive relief" at all. *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) (request for injunction that would, in practice, benefit only "rideshare drivers" was not for public injunctive relief even though it was formally directed more broadly); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 755 (2019) (request for injunction "securing an employer's compliance with wage and hour

laws" is not for public injunctive relief, even though the "public certainly has an interest in" such compliance, because the practical benefits redounded primarily to only the employer's employees).  Even if they were seeking a public injunction here, the Terms do not require Plaintiffs to waive their right to that relief—and the CAC does not even attempt to show otherwise.  Here, public injunctive relief—i.e., "relief that by and large benefits the general public"—would amount to an order that has the effect of declaring the renewal disclosures on OnlyFans to be inadequate and requiring them to be changed.  *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021).  If Plaintiffs bring their suit in the courts of England and Wales, as they contractually agreed to do, they could obtain relief there with that same effect.  Specifically, English law permits a plaintiff to sue for a declaration, which in this case would amount to an order from the English court finding the OnlyFans disclosures to be unlawful—not just for these Plaintiffs, but for all users—and requiring those disclosures to be changed. White Decl. ¶¶ 49-56.  Because relief equivalent to "public injunctive relief is available to [Plaintiffs] in" their contractually agreed-upon forum, the forum-selection clause "does not violate" California public policy and "is valid."  *DiCarlo*, 988 F.3d at 1158.

**B.    The CAC Should Be Dismissed for Lack of Personal Jurisdiction.**

Even if the Court were to permit Plaintiffs to circumvent the forum-selection clause and sue here, the Court should dismiss the CAC for lack of personal jurisdiction over the Defendants.  Due process provides that a court may not exercise personal jurisdiction over nonresident defendants (here, FIL and Fenix Internet) unless each defendant has sufficient "minimum contacts" with the forum state (here, California) that the exercise of jurisdiction "does not offend traditional notions of fair play and

substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  Personal jurisdiction may be "general or all-purpose jurisdiction" or only "specific or conduct-linked." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  With either type, though, Plaintiffs bear the burden of establishing that the court may lawfully exercise personal jurisdiction.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  Here, Plaintiffs have failed to carry that burden.

### 1.   Neither FIL nor Fenix Internet is Subject to General Jurisdiction in California.

The "paradigm forum[s]" for the exercise of general jurisdiction over a corporation are "the place of incorporation and principal place of business." *Daimler AG*, 571 U.S. at 137.  General jurisdiction outside of those forums is available "[o]nly in an 'exceptional case,'" *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014), where the defendant's contacts are so "continuous and systematic" as to "approximate physical presence in the forum state," *Schwarzenegger*, 374 F.3d at 801.  That standard is "exacting," and for good reason:  A finding of personal jurisdiction "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011).

California is not the "paradigm forum" for general jurisdiction over either FIL or Fenix Internet.  Both companies' respective places of incorporation and principal places of business are elsewhere.  *See* Taylor Decl. ¶¶ 3-4.  Nor is this the exceptional case where FIL or Fenix Internet is "so heavily engaged in activity in [California] [so] as to render [them] essentially at home." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017).  To the contrary, FIL and Fenix Internet have minimal connections to California.  The

two companies have "no offices or staff in California, [are] not registered to do business in the state," and "ha[ve] no registered agent for service of process." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011) (finding no general jurisdiction for that reason); *CollegeSource*, 653 F.3d at 1074 (finding no general jurisdiction where defendant had no offices or staff in forum state); *see* Taylor Decl. ¶¶ 7-10.  Rather, the "vast majority of [both companies'] employees and business activities are located" elsewhere. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (finding no general jurisdiction for that reason); *see* Taylor Decl. ¶¶ 7-10.  FIL's and Fenix Internet's contacts with California "fall well short of the requisite showing for general jurisdiction." *Mavrix*, 647 F.3d at 1225.

### 2.   Neither FIL nor Fenix Internet is Subject to Specific Jurisdiction in California.

Specific jurisdiction exists over a defendant only when:  (1) the defendant "purposefully direct[s] his activities toward the forum"; (2) the plaintiff's claims "arise[] out of or relate[] to the defendant's forum-related activities"; and (3) the court's exercise of jurisdiction would "comport with fair play and substantial justice, i.e., it [would] be reasonable." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Id.*  A plaintiff "bears the burden to establish the first two prongs." *Id.*

Here, the vast majority of California-related contacts described in the CAC founder on the second prong: they have nothing to do with Plaintiffs' suit because Plaintiffs' claims do not "arise[] out of or relate[] to" them.  *Id.*  As the Ninth Circuit recently made clear, a contact with the forum satisfies that standard only if the contacts

are the "'but for' caus[e]" of the plaintiff's injury, or if there is such a "close connection between contacts and injury" that it "proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-06 (9th Cir. 2023). The smattering of contacts listed in the CAC comes nowhere near that bar: FIL's performing "age-verification" for California Content Creators (which Plaintiffs do not claim to be), CAC ¶ 26; various alleged employees (whom Plaintiffs do not claim to have interacted with) working in California, CAC ¶¶ 27-28, 31; "athletic or other event sponsorships" in the United States generally, CAC ¶ 29; unrelated "conferences and other meetings in California," CAC ¶ 30; sales of unknown quantities of OnlyFans branded "clothing, towels, [and] household goods," CAC ¶ 32; or OnlyFans's compliance with U.S. privacy and tax laws, CAC ¶¶ 33-34. None of these purported contacts relate to Plaintiffs' claims about the adequacy of the disclosures on OnlyFans concerning subscription renewals. Accordingly, virtually all of the alleged contacts with California identified in the CAC should be disregarded.

To the extent the CAC does identify suit-related contacts with California, it fails to allege facts showing that FIL or Fenix Internet purposefully directed such acts at California. To show that a defendant purposefully directed acts at the forum, the plaintiff must show that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

**FIL**. As to FIL, the CAC's basic theory seems to be that personal jurisdiction

---

exists because *Plaintiffs* were in California when they used OnlyFans.  CAC ¶ 22.  But the Supreme Court has emphasized that a finding of purposeful direction "must arise out of contacts that the *defendant himself creates* with the forum State."  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).  Accordingly, allegations that Plaintiffs suffered injury in California as a result of Defendants' actions or omissions, CAC ¶ 22, are insufficient to support specific jurisdiction.  *See Caces-Tiamson v. Equifax*, 2020 WL 1322889, at *3 (N.D. Cal. 2020); *see also In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1161 (S.D. Cal. 2018) ("As the Supreme Court made clear in *Walden v. Fiore*, something more is required than 'imposition of an injury … to be suffered by the plaintiff while she is residing in the forum state.'").  Put simply, *Plaintiffs'* choice to access OnlyFans from California does not demonstrate that *FIL* directed acts at the state.  *See, e.g.*, *In re Packaged Seafood Prods.*, 338 F. Supp. 3d at 1161.

Nor, for similar reasons, is it sufficient that FIL "conduct[s] business with [*other*] California residents."  CAC ¶ 32.  Courts have made clear that a finding of purposeful direction cannot "be based on the mere fact that [a company] provides services to customers nationwide, including but not limited to California"—yet Plaintiffs allege even less since OnlyFans is a global, not just nationwide, business.  *Caces-Tiamson*, 2020 WL 132889, at *3; *see also, e.g.*, *Ariix, LLC v. NutriSearch Corp.*, 2022 WL 837072, at *3 (S.D. Cal. 2022).  That is because, again, the purposeful direction inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden*, 571 U.S. at 285; *see also Caces-Tiamson*, 2020 WL 132889 at *3.  The mere fact that some (or many) people choose to

1    access a globally accessible website from a particular state does not demonstrate that

2    the *defendant* purposefully targeted that state.

3        Applying those principles, the Ninth Circuit has rejected a carbon copy of

4    Plaintiffs' jurisdictional theory, holding that a foreign defendant who operated a

5    globally accessible website did not expressly aim acts at California when 20% of the

6    site's visitors happened to reside there.  *See AMA*, 970 F.3d at 1210-11.  The question is

7    not whether the website's *users* resided in the forum, but whether the website *itself* had

8    a "forum-specific focus."  *Id.* at 1210; *see also, e.g., Elliot v. Cessna Aircraft Co*., 2021

9    WL 2153820, at *3 (C.D. Cal. 2021) ("[O]perating a universally accessible website

10   alone is generally insufficient to satisfy the express aiming requirement."); *Imageline,*

11   *Inc. v. Hendricks*, 2009 WL 10286181, at *5 (C.D. Cal. 2009) (similar).  *AMA* further

12   held that offering "adult content" that consumers can access from the United States fails

13   to show such a focus, because the "market for [such] content is global."  *AMA*, 970 F.3d

14   at 1210-11.  The same conclusion follows here:  the CAC does not allege that OnlyFans

15   has a "California focus"—nor can it.  So, there can be no personal jurisdiction here

16   (regardless of whether Plaintiffs or others choose to access OnlyFans here).

17       **Fenix Internet**.  As to Fenix Internet, the CAC's theory of jurisdiction hinges on

18   its allegation that Fenix Internet "is, or has been, continuously in possession of money

19   wrongfully taken from Plaintiff."  CAC ¶ 19.  Even on its own terms, that allegation

20   fails to show any relationship between Fenix Internet and *California.*  At most, it shows

21   a relationship between Fenix Internet and Plaintiffs—which the Supreme Court has held

22   is insufficient to establish personal jurisdiction.  *See Walden*, 571 U.S. at 285.  In fact,

23   Fenix Internet has not taken—and does not take—any relevant actions specifically

24

directed to California.  Fenix Internet's purpose is to perform payment processing and provide administrative support services for FIL.  Taylor Decl. ¶ 6.  Specifically, at FIL's direction, Fenix Internet collects from third-party processors payments made by Fans and distributes the money it collects through other third-party processors to Creators in the United States.  Taylor Decl. ¶ 6.  Accordingly, there is no basis for holding that Fenix Internet is subject to specific jurisdiction here.

### C.    The CAC Must Be Dismissed for Lack of Constitutional or Statutory Standing.

Article III standing requires a plaintiff to show (among other things) that "he suffered an injury … [that] was likely caused by the defendant." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  So does statutory standing under the UCL.  *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1049 (9th Cir. 2017) ("[P]laintiffs seeking relief under California's [UCL] … must … show that th[eir] economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.").

Here, that causation requirement means that Plaintiffs must show "actual reliance" on false or misleading statements "in order to have standing to pursue" their claim under the UCL.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020).  But Plaintiffs cannot show that requisite causation.  Although Plaintiffs' CAC highlights certain examples of Plaintiffs' transactions on OnlyFans in isolation, Plaintiffs' full transaction histories on OnlyFans paint a very different picture.  Those records show that Plaintiffs already knew of the automatically renewing nature of their OnlyFans subscriptions, because of FIL's clear disclosures.  Plaintiffs acted on this knowledge when they actively managed their OnlyFans subscriptions and repeatedly

1    exercised their rights to cancel and avoided automatic renewal based on the same notice

2    and language which they now say is unclear.[6]  No explanation is offered by the

3    Plaintiffs as to why language which was clear to them in 95 separate prior instances

4    suddenly became unclear.

5        The CAC's allegations relating to Plaintiff Muto, for instance, describe only his

6    subscription to "@taste.of.heaven" in February 2021 (and his supposed failure to

7    understand that that single subscription would renew if not cancelled).  CAC ¶¶ 77-80.

8    But in the year leading up to that subscription, Plaintiff Muto subscribed to—and

9    cancelled—22 subscriptions to other Creators prior to avoid the automatic renewals for

10   which he registered.  Taylor Decl. ¶¶ 33-34, Ex. I.  What is more, Plaintiff Muto often

11   effected these cancellations *within hours of initially subscribing*, making clear that at

12   the time of purchase he not only knew that his subscriptions would renew if not

13   cancelled and that he could cancel his subscriptions prior to the renewal date to avoid

14   future charges, but also that even after he cancelled, he would maintain access to that

15   Creator's content until the end of the subscription period, as disclosed in the OnlyFans

16   Terms.

17       This pattern is evident throughout his subscription history, both before and after

18   his subscription to "@taste.of.heaven."  Indeed, Plaintiff Muto cancelled his *very first*

19   _____

20   [6] In considering a motion to dismiss for lack of standing, courts may consider "extrinsic evidence,

21   apart from the pleadings," and "may resolve factual disputes in order to determine whether it has
     jurisdiction."  *Cal. Hosp. Ass'n v. Maxwell-Jolly*, 2010 WL 11526908, at *2 (C.D. Cal. 2010); *see
     also, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 2012 WL 12861143, at *18 (C.D. Cal. 2012) ("[A]

22   defendant [may] rel[y] on extrinsic evidence to support its attack on standing …. [in a] motion to
     dismiss.").  In any event, as Plaintiffs' own CAC references their OnlyFans transaction history, that

23   history is incorporated by reference, to allow the Court to understand Plaintiffs' allegations in
     "context."  *See Knievel*, 393 F.3d at 1076.

24

***Creator*** subscription ("Camilla Escobar") prior to the renewal deadline, which he subscribed to years before the subscriptions at issue in his CAC (in December 2019). *Id.* He then re-subscribed to "Camilla Escobar" three months later, again cancelling the subscription almost immediately thereafter. *Id.* ¶ 34, Ex. I. Plaintiff Muto repeated this pattern of subscribing to content, cancelling the subscription before it renewed and then re-subscribing and almost immediately cancelling the subscriptions again with ***three*** other Creators. *Id.* This same pattern continued after the subscriptions at issue in the CAC, as well. In the two months following Plaintiff Muto's decision to subscribe to "@taste.of.heaven," Plaintiff Muto subscribed to eight Creators and, in all instances, cancelled his subscription on the very same day. *Id.* ¶ 36, Ex. I. Plaintiff Muto's course of conduct on OnlyFans demonstrates that from the first time he subscribed to a Creator through his decision to describe to "@taste.of.heaven," and continuing well after, he understood the renewal terms of his subscriptions and operated within them. He cannot plausibly allege now that any losses he claims to have suffered from allowing his subscription to "@taste.of.heaven" to renew were caused by alleged renewal compliance shortcomings by FIL.

Plaintiff Breeze's transaction history shows a similar course of conduct. The CAC focuses on a single renewal fee that Plaintiff Breeze incurred in relation to his subscription to "@cheriedeville" on January 24, 2022. CAC ¶¶ 81-83. What it omits, however, is that Plaintiff Breeze had previously purchased—and cancelled—a subscription to that *very same Creator.* Taylor Decl. ¶ 39, Ex. J. In addition, Plaintiff Breeze subscribed to and then cancelled eight other subscriptions to Creators prior to the renewal date (many within minutes of first subscribing). Taylor Decl. ¶¶ 40-43, Ex.

J.  Just like Plaintiff Muto, Plaintiff Breeze's transaction history demonstrates that he understood how OnlyFans subscription renewals—and cancellations—worked.  He cannot now claim (much less demonstrate) that the $14.99 renewal charge he incurred on January 24, 2022, was caused by OnlyFans's failure to adequately disclose that very same knowledge to him.

Plaintiff John Doe 1's subscription activity shows that he, too, understood how OnlyFans subscription renewals and cancellations worked.  Even though he alleges not to have understood OnlyFans's renewal terms with respect to one subscription, *see* CAC ¶¶ 85-91, following that subscription he nonetheless proceeded to subscribe to another OnlyFans Creator and cancel that subscription a mere thirty-three minutes later, demonstrating that he understood OnlyFans's subscription renewal terms and chose to continue operating within them.  Taylor Decl. ¶ 47, Ex. K.  This activity, therefore, undermines any claim of harm now.

While Plaintiff John Doe 2 alleges to have failed to understand OnlyFans's renewal terms with respect to one subscription, *see* CAC ¶¶ 92-98, his full transaction history shows that he subscribed to and then cancelled 56 subscriptions to OnlyFans Creators prior to the renewal date.  Taylor Decl. ¶¶ 51-52, Ex. L.  51 of these subscriptions and cancellations occurred *before* the subscription referenced in the CAC, and 5 of them occurred *after*.  *Id*.  For 42 of these subscriptions, Plaintiff John Doe 2 cancelled the subscription within minutes of subscribing.  *Id*.  Plaintiff John Doe 2, therefore, cannot plausibly claim now that any unwanted charge resulting from the subscription referenced in the CAC was caused by inadequate disclosures on OnlyFans.

### D.     Plaintiffs' Claims Against Fenix Internet Must Be Dismissed for Failure to State a Claim.

Even if the CAC survives all the legal challenges above, Plaintiffs' suit still must be dismissed for failure to state a claim against Fenix Internet, because Plaintiffs do not plead any facts showing that Fenix Internet has violated the UCL or ARL.  Plaintiffs' claim turns on representations that were made (or allegedly failed to be made) on the OnlyFans website.  *See, e.g.*, CAC ¶¶ 59-63.  As explained above, Fenix Internet does not operate OnlyFans, and is not responsible for the representations or disclosures that do or do not appear on the platform.  Instead, Plaintiffs' substantive theory of Fenix Internet's supposed involvement is simply that it "is, or has been, continuously in possession of money wrongfully taken from Plaintiff."  CAC ¶ 19.  But merely possessing Plaintiffs' money is not a violation of the UCL or ARL—and, critically, does not establish that Fenix Internet is responsible for any action or omission that forms the basis for Plaintiffs' claims.  Accordingly, Fenix Internet must be dismissed from this action.

## IV.    CONCLUSION

For the foregoing reasons, FIL and Fenix Internet respectfully request that this Court dismiss Plaintiffs' CAC with prejudice.

Dated:       June 22, 2023                    Respectfully Submitted,

                                              **ORRICK HERRINGTON &
                                              SUTCLIFFE LLP**

                                              By: */s/ Jacob M. Heath*
                                              JACOB M. HEATH (SBN 238959)
                                              jheath@orrick.com
                                              1000 Marsh Road
                                              Menlo Park, CA 94025-1015
                                              Telephone:  +1 650 614 7400
                                              Facsimile:  +1 650 614 7401

                                              THOMAS FU (SBN 325209)
                                              tfu@orrick.com
                                              355 S. Grand Ave., Suite 2700
                                              Los Angeles, CA 90071
                                              Telephone:  +1 213 629 2020
                                              Facsimile:  +1 213 612 2499

                                              JONATHAN A. DIRENFELD (admitted
                                              *pro hac vice*)
                                              jdirenfeld@orrick.com
                                              Columbia Center
                                              1152 15th Street, N.W.
                                              Washington, DC 20005-1706
                                              Telephone:  +1 202 339 8614
                                              Facsimile:  +1 202 339 8500

                                              *Attorneys for Defendants Fenix International
                                              Limited and Fenix Internet LLC*

---

**Certificate of Compliance Pursuant to L.R. 11-6.2**

The undersigned, counsel of record for Fenix International Limited and Fenix Internet LLC, certifies that this brief contains approximately 6,981 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Jacob M. Heath*

Jacob M. Heath